

JUN 20 2017

826    FIFTY-FIRST CONGRESS.  Sess. II.  Chs. 301, 517.  1891.

*Draw.*

SEC. 5. That the draw provided for the bridge herein authorized to be constructed shall be opened promptly upon reasonable signal for the passing of boats ; and said company or corporation shall maintain, at its own expense, from sunset till sunrise, such lights or other signals on said bridge as the Light House Board shall prescribe.

*Lights, etc.*

*Use by telephone and telegraph companies.*

SEC. 6. That all telephone and telegraph companies shall be granted equal rights and privileges in the construction and operation of their lines across said bridge ; and if actual construction of the bridge herein authorized shall not be commenced within one year from the passage of this act, and be completed within three years from the same date, the rights and privileges hereby granted shall cease and be determined.

*Commencement and completion.*

*Use by railroad companies.*

SEC. 7. That all railroad companies desiring the use of said bridge shall have and be entitled to equal rights and privileges relative to the passage of railway trains over the same, and over the approaches thereto, upon payment of a reasonable compensation for such use ; and in case the owner or owners of said bridge and the several railroad companies, or any one of them, desiring such use, shall fail, to agree upon the sum or sums to be paid, and upon rules and conditions to which each shall conform in using said bridge, all matters at issue between them shall be decided by the Secretary of War, upon a hearing of the allegations and proofs of the parties.

*Terms.*

*Joining with other companies authorized.*

SEC. 8. That the said company may associate or join with themselves, in the construction, maintenance, and operation of said bridge, the Kansas City, Watkins and Gulf Railway Company, or any other railway company duly incorporated under the laws of the State of Louisiana.

Approved, March 2, 1891.

CHAP. 517.—An act to establish circuit courts of appeals and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes.

*United States courts. Additional circuit judges to be appointed.*

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That there shall be appointed by the President of the United States, by and with the advice and consent of the Senate, in each circuit an additional circuit judge, who shall have the same qualifications, and shall have the same power and jurisdiction therein that the circuit judges of the United States, within their respective circuits, now have under existing laws, and who shall be entitled to the same compensation as the circuit judges of the United States in their respective circuits now have.

*Qualifications, etc.*

*Circuit court of appeals. Composition.*

SEC. 2. That there is hereby created in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum, and which shall be a court of record with appellate jurisdiction, as is hereafter limited and established. Such court shall prescribe the form and style of its seal and the form of writs and other process and procedure as may be conformable to the exercise of its jurisdiction as shall be conferred by law. It shall have the appointment of the marshal of the court with the same duties and powers under the regulations of the court as are now provided for the marshal of the Supreme Court of the United States, so far as the same may be applicable. The court shall also appoint a clerk, who shall perform and exercise the same duties and powers in regard to all matters within its jurisdiction as are now exercised and performed by the clerk of the Supreme Court of the United States, so far as the same may be applicable. The salary of the marshal of the court shall be twenty-five hundred dollars a year, and the salary of the clerk of the court shall be three thousand dol-

*General powers.*

*Marshal.*

*Clerk.*

*Salaries.*

lars a year, to be paid in equal proportions quarterly. The costs and fees in the Supreme Court now provided for by law shall be costs and fees in the circuit courts of appeals; and the same shall be expended, accounted for, and paid for, and paid over to the Treasury Department of the United States in the same manner as is provided in respect of the costs and fees in the Supreme Court. *Costs, etc.*

The court shall have power to establish all rules and regulations for the conduct of the business of the court within its jurisdiction as conferred by law. *Rules, etc.*

SEC. 3. That the Chief-Justice and the associate justices of the Supreme Court assigned to each circuit, and the circuit judges within each circuit, and the several district judges within each circuit, shall be competent to sit as judges of the circuit court of appeals within their respective circuits in the manner hereinafter provided. In case the Chief-Justice or an associate justice of the Supreme Court should attend at any session of the circuit court of appeals he shall preside, and the circuit judges in attendance upon the court in the absence of the Chief-Justice or associate justice of the Supreme Court shall preside in the order of the seniority of their respective commissions. *Constitution of court.* *Precedence.*

In case the full court at any time shall not be made up by the attendance of the Chief-Justice or an associate justice of the Supreme Court and circuit judges, one or more district judges within the circuit shall be competent to sit in the court according to such order or provision among the district judges as either by general or particular assignment shall be designated by the court: *Provided*, That no justice or judge before whom a cause or question may have been tried or heard in a district court, or existing circuit court, shall sit on the trial or hearing of such cause or question in the circuit court of appeals. A term shall be held annually by the circuit court of appeals in the several judicial circuits at the following places: In the first circuit, in the city of Boston; in the second circuit, in the city of New York; in the third circuit, in the city of Philadelphia; in the fourth circuit, in the city of Richmond; in the fifth circuit, in the city of New Orleans; in the sixth circuit, in the city of Cincinnati; in the seventh circuit, in the city of Chicago; in the eighth circuit, in the city of Saint Louis; in the ninth circuit, in the city of San Francisco; and in such other places in each of the above circuits as said court may from time to time designate. The first terms of said courts shall be held on the second Monday in January, eighteen hundred and ninety-one, and thereafter at such times as may be fixed by said courts. *Service of district judges.* *Proviso.* *No judge to sit on appeal from his court.* *Terms.* *Regular.* *Additional.* *First term.* *Post, p. 1116.*

SEC. 4. That no appeal, whether by writ of error or otherwise, shall hereafter be taken or allowed from any district court to the existing circuit courts, and no appellate jurisdiction shall hereafter be exercised or allowed by said existing circuit courts; but all appeals by writ of error otherwise, from said district courts shall only be subject to review in the Supreme Court of the United States or in the circuit court of appeals hereby established, as is hereinafter provided, and the review, by appeal, by writ of error, or otherwise, from the existing circuit courts shall be had only in the Supreme Court of the United States or in the circuit courts of appeals hereby established according to the provisions of this act regulating the same. *No appeal allowed from district to circuit courts.* *Appeals, etc., from circuit courts.*

SEC. 5. That appeals or writs of error may be taken from the district courts or from the existing circuit courts direct to the Supreme Court in the following cases: *Appeals allowed direct to Supreme Court.*

In any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision. *Jurisdiction questions.*

From the final sentences and decrees in prize causes. *Prize.*

In cases of conviction of a capital or otherwise infamous crime. *Capital crimes.*

828                    FIFTY-FIRST CONGRESS. Sess. II. Ch. 517. 1891.

Constitutional questions.
In any case that involves the construction or application of the Constitution of the United States.

Construction of law, treaty, etc.
In any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question.

Conflict of laws.
In any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States.

Appeals from highest State court.
Nothing in this act shall affect the jurisdiction of the Supreme Court in cases appealed from the highest court of a State, nor the construction of the statute providing for review of such cases.

Jurisdiction of court of appeals.
Sec. 6. That the circuit courts of appeals established by this act shall exercise appellate jurisdiction to review by appeal or by writ of error final decision in the district court and the existing circuit courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law, and the judg-

Judgments final.
ments or decrees of the circuit courts of appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States; also in all cases arising under the patent laws, under the revenue laws, and under the criminal laws and in admiralty cases, excepting that in every such subject within its appellate jurisdiction the circuit court of appeals at any

Certificate for instruction.
time may certify to the Supreme Court of the United States any questions or propositions of law concerning which it desires the in-

Proceedings in Supreme Court.
struction of that court for its proper decision. And thereupon the Supreme Court may either give its instruction on the questions and propositions certified to it, which shall be binding upon the circuit courts of appeals in such case, or it may require that the whole record and cause may be sent up to it for its consideration, and thereupon shall decide the whole matter in controversy in the same manner as if it had been brought there for review by writ of error or appeal.

Certiorari to Supreme Court.
And excepting also that in any such case as is hereinbefore made final in the circuit court of appeals it shall be competent for the Supreme Court to require, by certiorari or otherwise, any such case to be certified to the Supreme Court for its review and determination with the same power and authority in the case as if it had been carried by appeal or writ of error to the Supreme Court.

Appeals and writs of error.
In all cases not hereinbefore, in this section, made final there shall be of right an appeal or writ of error or review of the case by the Supreme Court of the United States where the matter in controversy shall exceed one thousand dollars besides costs. But no such appeal

Limitation.
shall be taken or writ of error sued out unless within one year after the entry of the order, judgment, or decree sought to be reviewed.

Appeal in equity causes.
Sec. 7. That where, upon a hearing in equity in a district court, or in an existing circuit court, an injunction shall be granted or continued by an interlocutory order or decree, in a cause in which an appeal from a final decree may be taken under the provisions of this act to the circuit court of appeals, an appeal may be taken from such interlocutory order or decree granting or continuing such in-

Proviso.
junction to the circuit court of appeals: Provided, That the appeal

To be taken in 30 days.
must be taken within thirty days from the entry of such order or decree, and it shall take precedence in the appellate court; and the proceedings in other respects in the court below shall not be stayed unless otherwise ordered by that court during the pendency of such appeal.

Expenses of attending judges.
Sec. 8. That any justice or judge, who, in pursuance of the provisions of this act, shall attend the circuit court of appeals held at any place other than where he resides shall, upon his written certificate, be paid by the marshal of the district in which the court shall be held his reasonable expenses for travel and attendance, not

to exceed ten dollars per day, and such payments shall be allowed the marshal in the settlement of his accounts with the United States.

SEC. 9. That the marshals of the several districts in which said circuit court of appeals may be held shall, under the direction of the Attorney-General of the United States, and with his approval, provide such rooms in the public buildings of the United States as may be necessary, and pay all incidental expenses of said court, including criers, bailiffs, and messengers: *Provided, however*, That in case proper rooms can not be provided in such buildings, then the said marshals, with the approval of the Attorney-General of the United States, may, from time to time, lease such rooms as may be necessary for such courts. That the marshals, criers, clerks, bailiffs, and messengers shall be allowed the same compensation for their respective services as are allowed for similar services in the existing circuit courts.

*Court rooms in public buildings.*

*Expenses.*
*Proviso.*
*Rent.*

*Compensation to officers.*

SEC. 10. That whenever on appeal or writ of error or otherwise a case coming directly from the district court or existing circuit court shall be reviewed and determined in the Supreme Court the cause shall be remanded to the proper district or circuit court for further proceedings to be taken in pursuance of such determination. And whenever on appeal or writ of error or otherwise a case coming from a circuit court of appeals shall be reviewed and determined in the Supreme Court the cause shall be remanded by the Supreme Court to the proper district or circuit court for further proceedings in pursuance of such determination. Whenever on appeal or writ or error or otherwise a case coming from a district or circuit court shall be reviewed and determined in the circuit court of appeals in a case in which the decision in the circuit court of appeals is final such cause shall be remanded to the said district or circuit court for further proceedings to be there taken in pursuance of such determination.

*Remanding causes reviewed by Supreme Court.*

*From circuit courts of appeals.*

*Review in circuit court of appeals.*

SEC. 11. That no appeal or writ of error by which any order, judgment, or decree may be reviewed in the circuit courts of appeals under the provisions of this act shall be taken or sued out except within six months after the entry of the order, judgment, or decree sought to be reviewed: *Provided however*, That in all cases in which a lesser time is now by law limited for appeals or writs of error such limits of time shall apply to appeals or writs of error in such cases taken to or sued out from the circuit courts of appeals. And all provisions of law now in force regulating the methods and system of review, through appeals or writs of error, shall regulate the methods and system of appeals and writs of error provided for in this act in respect of the circuit courts of appeals, including all provisions for bonds or other securities to be required and taken on such appeals and writs of error, and any judge of the circuit courts of appeals, in respect of cases brought or to be brought to that court, shall have the same powers and duties as to the allowance of appeals or writs of error, and the conditions of such allowance, as now by law belong to the justices or judges in respect of the existing courts of the United States respectively.

*Appeals, etc., to be brought in six months.*

*Proviso.*
*Less time in certain cases.*

*Rules and regulations, etc.*

SEC. 12. That the circuit court of appeals shall have the powers specified in section seven hundred and sixteen of the Revised Statutes of the United States.

*Issue of writs.*
*R.S., sec. 716, p. 138.*

SEC. 13. Appeals and writs of error may be taken and prosecuted from the decisions of the United States court in the Indian Territory to the Supreme Court of the United States, or to the circuit court of appeals in the eighth circuit, in the same manner and under the same regulations as from the circuit or district courts of the United States, under this act.

*Appeals, etc., from Indian Territory Court.*

SEC. 14. That section six hundred and ninety-one of the Revised Statutes of the United States and section three of an act entitled "An act to facilitate the disposition of cases in the Supreme Court, and for other purposes," approved February sixteenth, eighteen hundred

*Appeals to Supreme Court.*
*R.S., sec. 691, p. 128, repealed.*
*Vol. 18, p. 316, repealed.*

830    FIFTY-FIRST CONGRESS. Sess. II. Chs. 517-519. 1891.

Inconsistent laws repealed.
and seventy-five, be, and the same are hereby repealed. And all acts and parts of acts relating to appeals or writs of error inconsistent with the provisions for review by appeals or writs of error in the preceding sections five and six of this act are hereby repealed.

Jurisdiction in cases from Territorial supreme courts.
SEC. 15. That the circuit court of appeal in cases in which the judgments of the circuit courts of appeal are made final by this act shall have the same appellate jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the supreme courts of the several Territories as by this act they may have to review the judgments, orders, and decrees of the district court and circuit courts; and for that purpose the several Territories shall, by orders of the Supreme court, to be made from time to time, be assigned to particular circuits.

Approved, March 3, 1891.

---

March 3, 1891.
CHAP. 518.—An act to provide American registers for the steamers Montauk and Mineola.

"Montauk" and "Mineola."
American registers granted to
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Commissioner of Navigation is hereby authorized and directed to cause the foreign-built steamers Montauk and Mineola, purchased and wholly owned by American citizens and repaired by them, to be registered as vessels of the United States.

Inspection, etc.
SEC. 2. That the Secretary of the Treasury be, and hereby is, authorized and directed to authorize and direct the inspection of said vessel, steam boiler, steam pipes, and the appurtenances of said boiler, and cause to be granted the register and usual certificate issued to steam vessels of the merchant marine, without reference to the fact that said steam boiler, steam pipes, and appurtenances were not constructed pursuant to the laws of the United States, and were not constructed of iron stamped pursuant to said laws; and the tests to be applied in the inspection of said boiler, steam pipes, and appurtenances will be the same in all respects as to strength and safety as are required in the inspection of boilers constructed in the United States for marine purposes, save the fact that said boiler, steam pipes, and appurtenances not being constructed pursuant to the requirements of the laws of the United States, and are of unstamped iron, shall not be an obstacle to the granting of the usual certificate if said boiler, steam pipes, and appurtenances are found to be of sufficient strength and safety.

Received by the President February 19, 1891.

[NOTE BY THE DEPARTMENT OF STATE.—The foregoing act having been presented to the President of the United States for his approval, and not having been returned by him to the house of Congress in which it originated within the time prescribed by the Constitution of the United States, has become a law without his approval.]

---

March 3, 1891.
CHAP. 519.—An act to provide for ocean mail service between the United States and foreign ports, and to promote commerce.

Mail steamship contracts.
On American vessels.
Ports.
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Postmaster-General is hereby authorized and empowered to enter into contracts for a term not less than five nor more than ten years in duration, with American citizens, for the carrying of mails on American steamships, between ports of the United States and such ports in

## CHAPTER THIRTEEN.

### GENERAL PROVISIONS.

Chapter 13.

General provisions.

Sec.
289. Circuit courts abolished; records of to be transferred to district courts.
290. Suits pending in circuit courts to be disposed of in district courts.
291. Powers and duties of circuit courts imposed upon district courts.
292. References to laws revised in this act deemed to refer to sections of act.

Sec.
293. Sections 1 to 5, Revised Statutes, to govern construction of this act.
294. Laws revised in this act to be construed as continuations of existing laws.
295. Inference of legislative construction not to be drawn by reason of arrangement of sections.
296. Act may be designated as "The Judicial Code."

SEC. 289. The circuit courts of the United States, upon the taking effect of this Act, shall be, and hereby are, abolished; and thereupon, on said date, the clerks of said courts shall deliver to the clerks of the district courts of the United States for their respective districts all the journals, dockets, books, files, records, and other books and papers of or belonging to or in any manner connected with said circuit courts; and shall also on said date deliver to the clerks of said district courts all moneys, from whatever source received, then remaining in their hands or under their control as clerks of said circuit courts, or received by them by virtue of their said offices. The journals, dockets, books, files, records, and other books and papers so delivered to the clerks of the several district courts shall be and remain a part of the official records of said district courts, and copies thereof, when certified under the hand and seal of the clerk of the district court, shall be received as evidence equally with the originals thereof; and the clerks of the several district courts shall have the same authority to exercise all the powers and to perform all the duties with respect thereto as the clerks of the several circuit courts had prior to the taking effect of this Act.

*Circuit courts abolished.*
*R. S., secs. 605–672, pp. 107–124.*
*Transfer of all records, etc., to clerks of district courts.*

*Delivery of moneys.*

*To become part of files, etc., of district courts.*

*Powers transferred to district court clerks.*

SEC. 290. All suits and proceedings pending in said circuit courts on the date of the taking effect of this Act, whether originally brought therein or certified thereto from the district courts, shall thereupon and thereafter be proceeded with and disposed of in the district courts in the same manner and with the same effect as if originally begun therein, the record thereof being entered in the records of the circuit courts so transferred as above provided.

*Pending suits to be continued in district courts.*

SEC. 291. Wherever, in any law not embraced within this Act, any reference is made to, or any power or duty is conferred or imposed upon, the circuit courts, such reference shall, upon the taking effect of this Act, be deemed and held to refer to, and to confer such power and impose such duty upon, the district courts.

*Circuit courts' powers, etc., conferred upon district courts.*

SEC. 292. Wherever, in any law not contained within this Act, a reference is made to any law revised or embraced herein, such reference, upon the taking effect hereof, shall be construed to refer to the section of this Act into which has been carried or revised the provision of law to which reference is so made.

*References to laws revised in this act.*

SEC. 293. The provisions of sections one to five, both inclusive, of the Revised Statutes, shall apply to and govern the construction of the provisions of this Act. The words "this title," wherever they occur herein, shall be construed to mean this Act.

*Construction of words, etc.*
*R. S., secs. 1–5, p. 1, 2.*

SEC. 294. The provisions of this Act, so far as they are substantially the same as existing statutes, shall be construed as continuations thereof, and not as new enactments, and there shall be no implication of a change of intent by reason of a change of words in such statute, unless such change of intent shall be clearly manifest.

*Existing laws continued by this act.*

SEC. 295. The arrangement and classification of the several sections of this Act have been made for the purpose of a more convenient and orderly arrangement of the same, and therefore no infer-

*Legislative construction not presumed from arrangement of sections.*

**1168**          SIXTY-FIRST CONGRESS. Sess. III. Ch. 231. 1911.

ence or presumption of a legislative construction is to be drawn by reason of the chapter under which any particular section is placed.

*Title of Act.*

Sec. 296. This Act may be designated and cited as "The Judicial Code."

*Chapter 14.*

**CHAPTER FOURTEEN.**

*Repealing provisions.*

**REPEALING PROVISIONS.**

| Sec. | Sec. |
|---|---|
| 297. Sections, acts, and parts of acts repealed. | 300. Offenses committed, and penalties, forfeitures, and liabilities incurred, how to be prosecuted and enforced. |
| 298. Repeal not to affect tenure of office, or salary, or compensation of incumbents, etc. | 301. Date this act shall be effective. |
| 299. Accrued rights, etc., not affected. | |

*Laws repealed. Revised Statutes.*

Sec. 297. The following sections of the Revised Statutes and Acts and parts of Acts are hereby repealed:

*Secs. 560-563, pp. 89-94.*
*Secs. 562-564, pp. 94-96.*
*Secs. 647-627, pp. 97-108.*
*Secs. 629-647, pp. 110-117.*
*Secs. 650-697, pp. 115-130.*
*Sec. 699, p. 130.*
*Secs. 700-714, pp. 131-135.*
*Secs. 716-720, pp. 136, 137.*
*Sec. 723, p. 137.*
*Secs. 725-749, pp. 137-141.*
*Secs. 800-832, pp. 150-163.*
*Secs. 1049-1092, pp. 194-200.*
*Secs. 1091-1093, p. 200.*

Sections five hundred and thirty to five hundred and sixty, both inclusive; sections five hundred and sixty-two to five hundred and sixty-four, both inclusive; sections five hundred and sixty-seven to six hundred and twenty-seven, both inclusive; sections six hundred and twenty-nine to six hundred and forty-seven, both inclusive; sections six hundred and fifty to six hundred and ninety-seven, both inclusive; section six hundred and ninety-nine; sections seven hundred and two to seven hundred and fourteen, both inclusive; sections seven hundred and sixteen to seven hundred and twenty, both inclusive; section seven hundred and twenty-three; sections seven hundred and twenty-five to seven hundred and forty-nine, both inclusive; sections eight hundred to eight hundred and thirty-two, both inclusive; sections ten hundred and forty-nine to ten hundred and eighty-eight, both inclusive; sections ten hundred and ninety-one to ten hundred and ninety-three, both inclusive, of the Revised Statutes.

*Removals from State courts.*
*Vol. 18, p. 470.*

"An Act to determine the jurisdiction of circuit courts of the United States and to regulate the removal of causes from State courts, and for other purposes," approved March third, eighteen hundred and seventy-five.

*Juries in polygamy trials.*
*Vol. 22, p. 31.*
*Exceptions.*
*Vol. 24, pp. 636, 641.*

Section five of an Act entitled "An Act to amend section fifty-three hundred and fifty-two of the Revised Statutes of the United States, in reference to bigamy, and for other purposes," approved March twenty-second, eighteen hundred and eighty-two; but sections six, seven, and eight of said Act, and sections one, two, and twenty-six of an Act entitled "An Act to amend an Act entitled 'An Act to amend section fifty-three hundred and fifty-two of the Revised Statutes of the United States, in reference to bigamy, and for other purposes,' approved March twenty-second, eighteen hundred and eighty-two," approved March third, eighteen hundred and eighty-seven, are hereby continued in force.

*Bowman Act.*
*Vol. 22, p. 485.*

"An Act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government," approved March third, eighteen hundred and eighty-three.

*Appeals from District of Columbia and Territorial courts.*
*Vol. 23, p. 443.*

"An Act regulating appeals from the supreme court of the District of Columbia and the supreme courts of the several Territories," approved March third, eighteen hundred and eighty-five.

*Tucker Act.*
*Vol. 24, p. 505.*
*Exceptions.*

"An Act to provide for the bringing of suits against the Government of the United States," approved March third, eighteen hundred and eighty-seven, except sections four, five, six, seven, and ten thereof.

*Removals from State courts, etc.*
*Vol. 25, p. 433.*
*Vol. 28, p. 666.*
*Vol. 18, p. 470.*

Sections one, two, three, four, six, and seven of an Act entitled "An Act to correct the enrollment of an Act approved March third, eighteen hundred and eighty-seven, entitled 'An Act to amend sections one, two, three, and ten of an Act to determine the jurisdiction of

the circuit courts of the United States, and to regulate the removal of causes from State courts, and for other purposes,' approved March third, eighteen hundred and seventy-five," approved August thirteenth, eighteen hundred and eighty-eight.

"An Act to withdraw from the Supreme Court jurisdiction of criminal cases not capital and confer the same on the circuit courts of appeals," approved January twentieth, eighteen hundred and ninety-seven.

"An Act to amend sections one and two of the Act of March third, eighteen hundred and eighty-seven, Twenty-fourth Statutes at Large, chapter three hundred and fifty-nine," approved June twenty-seventh, eighteen hundred and ninety-eight.

"An Act to amend the seventh section of the Act entitled 'An Act to establish circuit courts of appeals and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes,' approved March third, eighteen hundred and ninety-one, and the several Acts amendatory thereto," approved April fourteenth, nineteen hundred and six.

All Acts and parts of Acts authorizing the appointment of United States circuit or district judges, or creating or changing judicial circuits, or judicial districts or divisions thereof, or fixing or changing the times or places of holding court therein, enacted prior to February first, nineteen hundred and eleven.

Sections one, two, three, four, five, the first paragraph of section six, and section seventeen of an Act entitled "An Act to create a commerce court, and to amend an Act entitled 'An Act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, as heretofore amended, and for other purposes," approved June eighteenth, nineteen hundred and ten.

Also all other Acts and parts of Acts, in so far as they are embraced within and superseded by this Act, are hereby repealed; the remaining portions thereof to be and remain in force with the same effect and to the same extent as if this Act had not been passed.

SEC. 298. The repeal of existing laws providing for the appointment of judges and other officers mentioned in this Act, or affecting the organization of the courts, shall not be construed to affect the tenure of office of the incumbents (except the office be abolished), but they shall continue to hold their respective offices during the terms for which appointed, unless removed as provided by law; nor (except the office be abolished) shall such repeal affect the salary or fees or compensation of any officer or person holding office or position by virtue of any law.

SEC. 299. The repeal of existing laws, or the amendments thereof, embraced in this Act, shall not affect any act done, or any right accruing or accrued, or any suit or proceeding, including those pending on writ of error, appeal, certificate, or writ of certiorari, in any appellate court referred to or included within, the provisions of this Act, pending at the time of the taking effect of this Act, but all such suits and proceedings, and suits and proceedings for causes arising or acts done prior to such date, may be commenced and prosecuted within the same time, and with the same effect, as if said repeal or amendments had not been made.

SEC. 300. All offenses committed, and all penalties, forfeitures, or liabilities incurred prior to the taking effect hereof, under any law embraced in, amended, or repealed by this Act, may be prosecuted and punished, or sued for and recovered, in the district courts, in the same manner and with the same effect as if this Act had not been passed.

SEC. 301. This Act shall take effect and be in force on and after January first, nineteen hundred and twelve.

Approved, March 3, 1911.

| 80th Congress | HOUSE OF REPRESENTATIVES | Report |
|---|---|---|
| 1st Session | | No. 308 |

# REVISION OF TITLE 28, UNITED STATES CODE

APRIL 25, 1947.—Ordered to be printed

Mr. ROBSION, from the Committee on the Judiciary, submitted the
following

# REPORT

[To accompany H. R. 3214]

THE Committee on the Judiciary submits the following report in
explanation of the bill (H.R. 3214) to revise, codify, and enact into
law title 28 of the United States Code entitled "Judicial Code
and Judiciary," and recommends that the bill do pass. The present
bill has been substituted for an earlier bill (H.R. 2055) on which hear-
ings were held and contains changes recommended by the subcom-
mittee.

## PRELIMINARY STATEMENT
### SCOPE OF REVISION

The source material of this revision was the Judicial Code of 1911
constituting, in part, title 28 of the United States Code. To this were
added appropriate sections from other titles which could be trans-
ferred without impairing the framework of the official United States
Code prepared by the former Committee on Revision of the Laws of
the House and enacted by Congress in 1926.

This revision includes all applicable laws in effect March 10, 1947.[1]

Before actual revision was begun a scientific plan was assembled.
This included:

1. The complete text of title 28, United States Code, 1940 edition,
and the latest supplement thereto.[2]

2. Pertinent provisions from other titles of the code.

3. Complete text of original acts set out in the Statutes at Large.

4. Applicable constructions by the courts.

5. Notes based upon a careful examination of the Code of Federal
Regulations and law reviews.

[1] As finally enacted into law, the revision includes all applicable laws in effect
January 5, 1948.
[2] References throughout this report are to the 1940 edition of the United States
Code. As finally enacted, the revised title, as it included all 1946 and 1947 laws af-
fecting Title 28, superseded all corresponding sections of the United States Code,
1946 edition.

1692

## TITLE 28, UNITED STATES CODE

6. Exhaustive historical notes.

7. Notes on the Rules of Civil Procedure and Rules of Criminal Procedure promulgated by the Supreme Court.

8. Suggestions from the bench and bar.

Revision, as distinguished from codification, required the substitution of plain language for awkward terms, reconciliation of conflicting laws, repeal of superseded sections, and consolidation of related provisions.

### HISTORY OF THE JUDICIAL CODE

The first law establishing the Federal courts and regulating their jurisdiction and procedure was enacted at the first session of the First Congress. This law of September 24, 1789 (ch. 21, 1 Stat. 73), is popularly known as the Judiciary Act of 1789.

This first judicial code was very brief. It comprised only 35 sections. But the Nation itself was small, with a population of only 3,000,000.

From the beginning the body of the law relating to the courts and judicial officers and their procedure developed gradually by unrelated acts, without any real effort to reconcile conflicting provisions of successive enactments. At the outbreak of the Civil War the Statutes at Large numbered 12 volumes. That war and the reconstruction period which followed gave impetus to Federal legislation.

The whole of the expanding body of Federal law was carefully examined by the commissioners empowered by Congress in 1866 to prepare the Revised Statutes of the United States. Obsolete and superseded provisions, which had accumulated during the 88-year period from 1789 to the date of the final approval of the Revised Statutes in 1877, were repealed. Inconsistent provisions were reconciled and all existing laws relating to the courts were analyzed, revised, and consolidated into title XIII, of the Revised Statutes, entitled "The Judiciary," comprising 21 chapters and 564 sections.

The Judicial Code of 1911 was enacted into law by act March 3, 1911 (ch. 231, 36 Stat. 1152), after long and exhaustive study by the same commission that drafted the Criminal Code of 1909.

In preparing the Judicial Code of 1911 the commissioners discarded the analysis and arrangement used in the Revised Statutes. Statutes were revised and consolidated, obsolete laws were repealed and improvements were introduced. The old circuit courts were abolished and their jurisdiction transferred to the district courts.

Thirty-six years have passed since the enactment of the Judicial Code of 1911. That is a longer time than elapsed between the revisions of 1878 and 1911. It comprises a period which witnessed unprecedented changes on the national scene. During those years the population of the United States leaped from 91,000,000 to 140,000,000 and the Nation twice experienced the tremendous social changes that accompany world wars. It is a tribute to Congress and to the draftsmen of the Judicial Code of 1911 that our judicial system has withstood the impact of these terrific changes. However, there is little doubt that the changes of the past 36 years make imperative this revision of the Judicial Code.

1693

## LEGISLATIVE HISTORY—HOUSE

### STAFF OF EXPERTS ASSEMBLED

The former Committee on Revision of the Laws obtained the services of the West Publishing Co. of St. Paul, Minn, and the Edward Thompson Co. of Brooklyn, N. Y., thus bringing to this undertaking the combined editorial resources and experiences of the two leading law publishing firms. These are the companies which, under the supervision of that committee, prepared the original United States Code in 1926 and have edited the Code and its supplements for the Congress since that time.

In addition to their staffs of editors, these companies engaged as chief reviser, W. W. Barron, Esq., former Chief of the Appellate Section of the Criminal Division of the Department of Justice and also secured the services of Frank J. Parker, assistant United States attorney for the eastern district of New York.

The former Committee on Revision of the Laws exercised close and constant supervision over this work through its general counsel, Charles J. Zinn, of the New York and District of Columbia bars, and its special counsel, John F. X. Finn, member of the Law Revision Commission of New York and recognized expert on procedure. The work has been continued and completed under the supervision of the Committee on the Judiciary.

### ADVISORY COMMITTEE

An impartial advisory committee composed of outstanding men with years of practical experience at the bar and on the bench materially assisted in the work of revision with their wise counsel and advice. This public-spirited group consisted of Judge Floyd E. Thompson, former chief justice of the Illinois Supreme Court and former president of the Chicago Bar Association; Hon. Justin Miller, former associate justice of the United States Court of Appeals for the District of Columbia; Judge John B. Sanborn, judge of the United States Circuit Court of Appeals for the Eighth Circuit; Hon. Walter P. Armstrong, of the Memphis bar and former president of the American Bar Association; and Hon. John Dickinson, of the Philadelphia bar, former assistant Attorney General of the United States.

This advisory committee was ably assisted by Judge John J. Parker, senior circuit judge of the United States Circuit Court of Appeals for the fourth circuit, who rendered valuable service as a judicial consultant. The committee was also assisted by two special consultants each an expert in the field of Federal procedure: Judge Alexander Holtzoff, United States district judge, District Court for the District of Columbia; and Prof. James W. Moore, of Yale University. Besides the invaluable assistance these special consultants were able to render as a result of their years of experience in Federal jurisprudence, they materially assisted in the technical task of singling out for repeal or revision statutory provisions made obsolete by the Federal Rules of Civil Procedure.

### JUDICIAL CONFERENCE COMMITTEE

The Judicial Conference Committee on the Revision of the Judicial Code, appointed by Hon. Harlan Fiske Stone, late Chief Justice of

**1694**

## TITLE 28, UNITED STATES CODE

the United States, worked in close cooperation in preparation of this bill. This committee consisted of Judge Albert B. Maris, judge of the United States Circuit Court of Appeals for the third circuit; Judge Clarence G. Galston, United States district judge for the eastern district of New York; and Judge William F. Smith, United States district judge for the district of New Jersey. These judges are entitled to high commendation for their unselfish and able assistance.

### SUPREME COURT COMMITTEE

The work of revision was greatly facilitated and advanced through the cooperation of a committee of Supreme Court justices appointed by the Chief Justice. This committee consisted of the late Chief Justice Stone and Associate Justices Frankfurter and Douglas. It was most cooperative in the solution of problems of concern to that Court.

The afternoon sessions of the advisory committee meetings at Washington on December 5, 1945, and again on April 3, 1946, were honored by visits of this committee.

### COMMITTEE MEETINGS

Four times during the course of revision the advisory committee met with the committee of the Judicial Conference, consultants, members of the revision staff and counsel for the former Committee on Revision of the Laws—once at Brooklyn, N. Y.; again at Hershey, Pa.; and twice at Washington, D. C. At each meeting the revision staff submitted a draft of the proposed text of this bill, supported by reviser's notes explaining in detail each change and the reasons therefor. This procedure assured careful examination of every section. At each meeting some sections were recommitted to the reviser for further study and each member of both committees and the staffs of consultants and counsel actively cooperated in procuring a final draft acceptable to all. The former Committee on Revision of the Laws had these preliminary drafts printed and distributed to the Federal bench and bar for its criticisms and suggestions.

### COOPERATION WITH BENCH AND BAR

When work first began on title 28, letters were mailed to all Federal judges, United States attorneys, deans of law schools, and presidents of bar associations, explaining the revision and asking for suggestions and criticisms. Many letters received by the committee in response contained recommendations for the improvement of the judicial code. These were catalogued, studied and made available to the revision staff. They were invaluable in making possible a thorough revision.

### COOPERATION WITH FEDERAL AGENCIES

As the work of the revision progressed, the advice of Government officials was sought regarding problems affecting particular departments or agencies. It was found advisable to submit the text of proposed sections and prepare inquiries concerning them. The officials in charge of the respective department or agency which might be affected

6 U.S.Cong.Serv. '48—16     **1695**

## LEGISLATIVE HISTORY—HOUSE

by this revision were kept fully informed. Copies of the several drafts were sent to them from time to time.

The committee is especially grateful to the former counsel of the House Committee on the Judiciary, Charles E. Long, Jr., and to the Director of the Administrative Office of the United States Courts, Hon. Henry P. Chandler, and his assistant, Hon. Elmore Whitehurst, each of whom attended several of the advisory committee meetings and cooperated to the fullest. It is also most appreciative of the gracious assistance rendered by Hon. Charles Elmore Cropley and Thomas E. Waggaman, Clerk and Marshal of the United States Supreme Court, respectively, for arranging accommodations for the advisory committee in the Supreme Court Building and for constructive suggestions regarding the revision.

### CLASSIFICATION AND NUMBERING

The first step in revision was the preparation of a preliminary analysis—the framework upon which to build the new title. In drafting this outline the old system of classification was discarded and a modern subject matter arrangement was substituted. The material was divided into six major categories. Part I provides for organization of courts; part II treats of the attorneys and marshals; part III covers court officers and employees; part IV sets forth the provisions on jurisdiction and venue; part V deals with procedure; and part VI takes up particular proceedings.

Within these parts, the subject matter was arranged under appropriate chapter heads. The numbering system adopted makes adequate provisions for future legislation. Chapters were given odd numbers, leaving the even numbers available for related chapters containing future acts. Sufficient section numbers were left between chapters to accommodate such growth.

### STYLE

A clear and uniform style was an important aim of this revision. Concise, clear, and direct expressions were preferred to verbose, redundant and circuitous language. This is fully indicated in the reviser's notes in the appendix to this report.

### CONSOLIDATION OF SECTIONS

In many instances similar sections were consolidated without making fundamental changes. For example three short sections in chapter 43 consolidate 51 sections of existing law. Section 507 consolidates 14 sections and sections 456 and 553 consolidate 8 sections each.

By such consolidations bulk was reduced and repetitious overlapping provisions telescoped with a resulting improvement of style and substance.

### EXAMPLES OF CHANGES IN LAW

The District of Columbia is included as a judicial circuit of the United States in section 41 and as a judicial district in section 88. Under sections 43 and 132 its court of appeals and district court are, in all cases, made equal as to jurisdiction and powers with corresponding courts in other circuits and districts respectively.

The name United States Court of Appeals was substituted for

**1696**

**TITLE 28, UNITED STATES CODE**

United States Circuit Court of Appeals as a more accurate descriptive title. See section 43. The title "chief judge" was substituted for "senior judge" with reference both to circuit and district judges as more descriptive of their administrative functions. See sections 45 and 136. Similar nomenclature is used with reference to the Court of Claims, sections 171 and 172; Court of Customs and Patent Appeals, sections 211 and 212; Customs Court, sections 251 and 252; and Tax Court, section 273.[3]

Hawaii and Puerto Rico are included as judicial districts of the United States since in matters of jurisdiction, powers, and procedure they are in all respects equal to other United States district courts. See sections 91 and 119.

The annual October term of the Supreme Court is preserved by the revision but as to all other courts the time, terms, and sessions are to be fixed by rule or order of court. The orderly and convenient dispatch of judicial business will not, under this revision, be circumscribed by artificial requirements for holding terms at arbitrary times having no relation to the condition of the calendar, the needs of the district or circuit or the volume of business.

The provisions of title 16, United States Code, 1940 edition, Conservation, relating to appointment, powers and duties of national park commissioners, are incorporated in chapter 43 of the revision. These commissioners are United States commissioners in all respects. Those who are appointed on a salary basis are continued on that basis. (See sec. 634.)

Some minor changes of existing law were necessary in revising provisions relating to jurisdiction of district courts. These are noted in the reviser's notes under sections 1332, 1335, 1338, 1344, 1346, 1352, and 1359.

So also, minor changes were made in the provisions regulating the venue of district courts in order to clarify ambiguities or to reconcile conflicts. These are reflected in the reviser's notes under sections 1391–1406.

The procedure for removal of causes from State courts to Federal courts is greatly simplified. (See secs. 1441–1450.) Under existing law the removal petition must be filed with the State court which has no discretion to pass upon it but must forward the record to the Federal court. Revised section 1446 provides for the filing of the removal petition in the United States district court in the first instance. This is in accordance with recommendations of United States District Judges Calvin W. Chesnut and T. Waties Waring and approved by the Committee of the Judicial Conference on the Revision of the Judicial Code.

The Tax Court, for the first time, is brought into the Judicial Code. (See sections 271–275, 911, 1621, 2551–2559.)[4]

Qualifications of jurors in Federal courts are made uniform in all districts by section 1861 in conformity with recommendations of the Judicial Conference of the United States.

[3] Section 273, which related to the Tax Court, was eliminated by Senate amendment. See Senate Report No. 1559.
[4] All provisions relating to the Tax Court were eliminated by Senate amendments. See Senate Report No. 1559.

1697

LEGISLATIVE HISTORY—HOUSE

The principal changes in provisions relating to fees of United States commissioners or marshals were made in sections 633 and 1921. The fee list of each is considerably simplified and abbreviated.

The reviser's note under section 1871 contains the following recommendation of the advisory committee to Congress:

The advisory committee to the former House Committee on Revision of the Laws in revision of this title recommended a careful study of the compensation of witnesses and jurors. Furthermore, provision should be made for the subsistence of jurors and witnesses serving at such distance from their homes as precludes daily travel to and from the court.

The Supreme Court of the United States under section 2076 is given the same power to make Admiralty Rules which it has with respect to Rules of Civil and Criminal Procedure.

Important changes in the mechanics of procedure for review were necessary for good revision. The most important of these is the provision of section 2109 for disposition of cases in the Supreme Court where a quorum of qualified Justices is not available. This section is in part adapted from section 29 of title 15, Commerce and Trade, and section 45 of title 49, Transportation, of the United States Code.

The second paragraph of the revised section provides for the disposition of cases for which a quorum is not available and in which one appellate review has been had by affirmance of the judgment below with the same effect as upon affirmance by a divided court. This will facilitate disposition of such litigation.

The habeas corpus chapter has been rewritten to conform with legislation pending in Congress and approved by the Judicial Conference of the United States. (See H.R. 4232, 4233, and S. 1451, 1452, 79th Cong.)

AMENDMENTS AND REPEALS

The text of the revision of title 28 of the United States Code is entirely comprised in section 1 of the bill.

Section 2 (p. 165 of the bill) is a saving provision which preserves the status of the chief justices of the United States Court of Appeals for the District of Columbia and the Court of Claims, and the presiding judge of the Court of Customs and Patent Appeals as chief judges of their respective courts.[5]

Sections 3–31 are amendments of sections in titles other than title 28, which will make such sections conform with provisions of this revision.

Section 32 makes applicable the terms, United States court of appeals, United States district court, chief judge, chief justice, and presiding judge to all statutes in which the older terminology still remains.[5]

Section 33 provides against any inference of a legislative construction by reason of the classification of any section in a particular chapter or by reason of the captions or catch lines used throughout the title.

[5] As amended by the Senate, section 2 contains a similar provision with reference to the chief justice of the United States District Court for the District of Columbia, and contains other saving provisions; section 33 also renames the Circuit Courts of appeals in accordance with the revision; section 36 repeals two sections of the Canal Zone Code; section 36 amends a section of the Internal Revenue Code; section 37 amends a specified Act relating to the determination of war claims; section 38 provides for an effective date of September 1, 1948; and section 39 provides for repeals. See Senate Report No. 1559.

1698

TITLE 28, UNITED STATES CODE

Section 34 is the usual separability provision.

Section 35 and 36 provide for the specific repeal of all laws incorporated in the revision and other superseded and obsolete provisions relating to the courts. The schedule was carefully checked and rechecked many times. This method of specific repeal will relieve the courts of the burdensome task of ferreting out implied repeals.[5]

## REVISER'S NOTES AND TABLES

The reviser's notes are keyed to sections of the revision and explain in detail every change made in text. References to court decisions are supplied wherever necessary or appropriate.

To facilitate the work of all those interested in the revision, reference tables are incorporated. These show the distribution of sections from the United States Code, Judicial Code, Revised Statutes, Statutes at Large, District of Columbia Code, and other sources of this revision.

## REPORT BY THE ATTORNEY GENERAL

The following letter from the Attorney General was received by the chairman of the committee:

OFFICE OF THE ATTORNEY GENERAL,
*Washington, D. C., April 17, 1947.*

Hon. EARL C. MICHENER,
*Chairman, Committee on the Judiciary,*
*House of Representatives, Washington, D. C.*

MY DEAR MR. CHAIRMAN: This is in response to your request for my views concerning a bill (H. R. 2055) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The present United States Code, consisting of 50 titles, is a compilation of permanent statutory law of the United States. While it is presently extensively valuable for practical purposes, its usefulness is somewhat circumscribed by the fact that all of it has never been codified. Accordingly, the bulk of its text establishes only *prima facie* the text of the statutory law of the United States.

The bill under consideration is part of the plan for the enactment of the United States Code into law. The bill would take this step with respect to title 28 of the code. While the Judicial Code of 1911 (36 Stat. 1087) has had some amendments since its enactment, many of the provisions now contained in title 28 are not part of the Judicial Code.

The bill would eliminate much of the archaic language employed in the old statutes. By substituting plain language for awkward terms, reconciling laws, omitting superseded sections, and consolidating provisions which deal with the same subject, the bill would modernize and bring up to date the laws relating to the judiciary and to judicial procedure in much the same manner as the Federal Rules of Civil Procedure have done in their field. In addition, as has frequently been pointed out, title 28 would become a law itself instead of only *prima facie* law, so that lawyers would be spared the work of going to the original statute when it is essential to have the exact text of a particular law. Each of these objectives is commendable and desirable.

[5] As amended by the Senate, section 2 contains a similar provision with reference to the chief justice of the United States District Court for the District of Columbia, and contains other saving provisions; section 32 also renames the circuit court of appeals in accordance with the revision; section 35 repeals two sections of the Canal Zone Code; section 36 amends a section of the Internal Revenue Code; section 37 amends a specified Act relating to the determination of war claims; section 38 provides for an effective date of September 1, 1948; and section 39 provides for repeals. See Senate Report No. 1559.

1699

Case: 17-60335    Document: 00514043940    Page: 17    Date Filed: 06/20/2017

LEGISLATIVE HISTORY—HOUSE

You will remember the discussions between members of the staff of the committee and of the Department last month at which the Department made some suggestions with reference to minor corrections of errors and omissions then in the draft of the bill being considered by your committee.

I am advised that this conference agreed upon a number of corrections and changes and that these corrections and changes have now been incorporated in the bill with the one exception of the portion declaring the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Further consideration of the problem relating to the Tax Court leads me to the conclusion that the incorporation in chapter 13, section 271, et seq., of the bill declaring the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to "constitute a court of record known as the United States Tax Court" is not objectionable.

You are therefore advised that the Department of Justice has no objection to the incorporation in the bill of appropriate language declaring the Tax Court of the United States to be a court of record.

Sincerely,

TOM C. CLARK, *Attorney General.*

1700

✓

# Calendar No. 324

| 96TH CONGRESS<br>1st Session | SENATE | REPORT<br>No. 96-304 |
|---|---|---|

## FEDERAL COURTS IMPROVEMENT ACT OF 1979

---

AUGUST 3 (legislative day, JUNE 21), 1979.—Ordered to be printed

---

Mr. KENNEDY, from the Committee on the Judiciary,
submitted the following

# REPORT

### [To accompany S. 1477]

The Committee on the Judiciary, to which was referred the bill (S. 1477) to provide for improvements in the structure and administration of the Federal courts, and for other purposes, having considered the same, reports favorably thereon, with amendments, and recommends that the bill as amended do pass.

#### PURPOSE OF THE AMENDMENT

The amendments were technical and clarifying in nature. The purpose of the bill as amended is identical to the purpose of the bill as introduced.

#### PURPOSE OF THE BILL

The purpose of S. 1477 is to resolve some of the myriad structural administrative and procedural problems that have impaired the ability of our Federal courts to deal with the vast range of controversies among our citizens and to respond promptly and meaningfully to their demands for justice. Those problems—which include the inability of our present system to provide a prompt, definitive answer to legal questions of nationwide significance—have been long debated by judges, lawyers, legal scholars, and those members of the general public concerned with the administration of the Federal justice system.

The Courts Improvement Act is one of a series of court reform bills that the committee will consider during the 96th Congress as part of a comprehensive program designed to improve the quality of our Federal court system and to enhance citizen access to justice.

#### EXPLANATION OF THE BILL

On March 15, 1979, Senate bills S. 677, the Judicial Improvement Act of 1979, and S. 678, the Federal Courts Improvement Act of 1979,

39-010 O    Attachment 4 - page 1 of 42

**2**

were introduced and subsequently referred to the Committee on the Judiciary. The two bills were substantially identical except that S. 678 included some additional reforms absent from S. 677. Seven days of hearings were held on the bills and as a result the original bills were significantly revised. To avoid confusion, the committee decided to take the revised bills and introduce them as a new bill. S. 1477, is the product of the evolution of S. 677 and S. 678.

## Title I—Governance and Administration

Title I recognizes that our courts must be properly governed and administered if the goals of fairness and efficiency in the administration of justice are to be achieved.

*Chief judge tenure.*—Under existing law, the chief judge of each Federal court of appeals or district court is the judge who is most senior in commission and under age 70. Depending on the relative ages and seniority of the judges in a given circuit or district, a court may have a single chief judge for many years, or it may have a rapid turnover in the chief judge's position if several judges on the court reach age 70 within a relatively short period. Either extreme may result in administrative inefficiencies that are a needless additional burden on the already overworked courts. Part A of title I retains seniority as the basis for the appointment of a chief judge but avoids the extreme of either too lengthy or too short a term by fixing seven years as the maximum term of service and by precluding appointment of a chief judge who is 65 or older at the time of his appointment. Thus, both a minimum and maximum term is established, thereby striking a sound balance between continuity and rotation. As a transitional measure, these changes will not take effect until one year after the date of enactment and will not apply to anyone serving as a chief judge on that effective date.

*Precedence and composition of panel.*—Part B of title I requires that Federal appellate panels be composed of at least three judges, at least a majority of whom shall be judges of the circuit court, and that the presiding judge be a judge of that court in regular active service. Current law seems to permit appellate courts to sit in panels of less than three judges, and some courts have used panels of two judges for motions and for disposition of cases in which no oral argument is permitted because the case is classified as insubstantial. In order for the Federal system to preserve both the appearance and the reality of justice, such a practice should not become institutionalized. The disposition of an appeal should be the collective product of at least three minds. Moreover, this section would permit the courts of appeals to sit in panels of three or more judges but less than a full en banc court for cases in which authoritativeness of opinion is particularly useful or in which the issues are especially difficult or important. The circuit courts could continue to adopt local rules permitting the disposition of an appeal in situations in which one of the three judges dies or becomes disabled and the remaining two agree on the disposition; but, in the first instance, all cases would be assigned to panels of at least three judges.

With a substantial number of judges from outside the circuit sitting by designation, and with district judges sitting regularly on the courts of appeals, it is not infrequent that there will be only one circuit judge

**Attachment 4 - page 2 of 42**

3

on a panel or that the presiding judge will be a senior judge or a judge
from another circuit. Such situations lead to doctrinal instability and
unpredictability in the law of the circuit because district court and
court of appeals judges from outside the circuit may not know or may
not feel bound by the law of that circuit. In addition, a strong argu-
ment can be made that the law of a particular circuit should be deter-
mined by an appellate court, the majority of which should be judges
of that circuit. The Bill discourages any unnecessary borrowing of
judges and promotes stability and predictability by requiring a major-
ity of each panel to be composed of judges of the circuit court.

   *Judicial Councils.*—Established over forty years ago to help ad-
minister and manage the court within each circuit,[1] the judicial coun-
cils have a mixed record of success. Each judicial council is currently
composed of the active circuit judges of the circuit. It is presided over
by the chief judge of the circuit and is required to meet at least twice
annually. Its duties are to consider reports from the Administrative
Office and "make all necessary orders for the effective and expeditious
administration of the business of the courts within its circuit." [2] The
district judges of the circuit are directed to "promptly carry into effect
all orders" of the judicial council.[3]

   To numerous observers, these regional councils have never suc-
ceeded to the degree originally intended.[4] In 1959, for example, the
Senate Appropriations Committee concluded that there existed "a
grave lack of administrative direction in the operation of the business
of the United States courts" and that this defect resulted in "serious
and, in some cases, shocking conditions of delay and neglect of cases
on court dockets." [5] The committee laid a major share of the blame on
the judicial councils.[6]

   The ongoing controversy over the nature and functions of the
judicial councils has raised important issues meriting examination by
the committee. S. 1477 addresses council problems relating to organiza-
tion and responsibilities. These responsibilities, in theory, are nu-
merous: assigning judges to congested districts and to particular types
of cases, directing judges to assist infirm judges, ordering judges to de-
cide cases long held under advisement, urging judges to clear congested
court dockets, and setting standards of judicial ethics and behavior.

   With the creation of 152 new judgeships, the sponsors of S. 1477
recognize the need to once again reexamine the basis for judicial
council organization. S. 1477 is designed to make councils more
effective and efficient by changing their membership and structure.
The bills, as originally introduced as S. 677 and S. 678 limited the size
of such councils to a maximum of seven appellate judges and pro-
vided—for the first time—membership of up to four district court
judges. By reducing their size, increasing their administrative respon-
sibilities (in the area of judicial discipline) and mandating district

---

[1] The Administrative Office Act of 1939, 28 U.S.C. §§ 601, 603, 606, 608 (1964). (53
Stat. 1223.)
[2] 28 U.S.C. § 332(d) (1976).
[3] *Id.*
[4] See, e.g., P. Fish, "The Circuit Councils: Rusty Hinges of Federal Judicial Adminis-
tration," 37 Univ. of Chi. L. Rev. 203 (1970); J. Wallace, "Judicial Administration in
a System of Independents: A Tribe With Only Chiefs," 1 Brigham Young Univ. L. Rev.
39 (1978); see also, Administrative Office of the United States Courts, Survey of the
Legal Profession Containing Critical Comments on the Judicial Councils and Judicial
Conferences of the Circuits in the Federal System, Memorandum No. 3, Mar. 15, 1958.
[5] Staff of Senate Committee on Appropriations, 86th Cong. 2d sess., Field Study of
the Operations of United States Courts, p. 1 (Committee Print 1959).
[6] *Id.* at 84-84b.

4

court representations, S. 1477 makes a concerted effort to give the councils a more important role in court administration and management.

As a result of extensive testimony, the committee is now of the view that the bills should be modified. Although S. 1477 will continue to mandate that the councils permanently include district court judges for the first time, the committee believes that the size and nature of the councils, as well as the method of selecting council members, should better be left to the judges themselves. Specifically, the committee has decided to conform S. 1477 to reflect the March, 1979 Judicial Conference Resolution of the Court Administration Committee calling for modifications in the structure and governance of the councils. This Resolution has been adopted almost verbatim by the committee which is of the opinion that such modifications should best be left to the judges themselves. Thus, the judges should be given the opportunity to determine, in their best judgment, what the optimum size of the council should be and what percentage of council membership should consist of district court judges (within limits set out in the statute). Accordingly, S. 1477 mandates that the district judges be given permanent membership status on the councils but leaves most other questions for individual judicial council resolution based on the needs of the particular circuit.

This is not to say that the committee has not formulated strong views as to the best approach to be taken concerning these problems; rather, the committee would first give the judiciary—a coequal branch of government—the first opportunity to deal with the important issues raised during Senate hearings. For example:

1. *Representation by circuit judges and district judges.*—Although the bill requires that district judges be members of the council, it does not state the nature and scope of that membership. Rather it leaves the issue to the councils themselves in accordance with the Judicial Conference Resolution. Hearing witnesses were divided on this point. Judge Clifford Wallace of the ninth circuit called for councils composed equally of district and circuit judges; Chief Judge John Brown of the fifth circuit urged that all circuit judges occupy a place on the council, with district judges having some form of symbolic representation. The committee is of the view that since the councils have important administrative responsibilities in areas such as judicial discipline, it is important that district court judges be given a strong voice in council deliberations. The committee concluded that it is unwise to provide for district judge membership only when the matter at issue involves the district courts. District judges should be members of the council for all purposes; not only is it often difficult to distinguish district court matters from other matters affecting the administration of the entire circuit, but the committee is convinced that the district judges could bring an additional perspective and understanding which is lacking today. It is important to bear in mind that the role of the judicial council is to administer the business of the circuit as a whole; it is not to administer the courts of appeals.

2. *The size of the councils.*—The committee decided that S. 677 and S. 678, as introduced, placed an arbitrary limitation on the size of the circuit councils by permitting no more than seven circuit judges and four district court judges. The committee reaffirms

**Attachment 4 - page 4 of 42**

**5**

S. 677 and S. 678 insofar as they provided that a reduction in the
overall size of the council is imperative because of the recent un-
precedented growth of the Federal judiciary. With the mandated
addition of district court judges, the committee is also of the view
that continuing the current practice of including all circuit judges
as members of the council is likely to result in the creation of an
ungovernable, unwieldy council body. This is so, particularly in
the fifth and ninth circuits which each have more than twenty
appellate judges. The committee is mindful, however, of the testi-
mony of Chief Judge Brown, who testified that all of the circuit
judges should continue to serve on the council. Accordingly, the
committee leaves to the judges themselves the ultimate responsi-
bility for deciding this issue in accordance with the Judicial Con-
ference Resolution. Questions pertaining to the size of the council
should be dealt with in the context of deciding the nature and ex-
tent of district court representation and the method of selecting
council members. The goal must be the development of a body that
has both district and circuit judges as members but that is not so
large and unwieldy as to become ineffective.

3. *Method of selection.*—As introduced, S. 677 and S. 678 man-
dated that membership on the circuit councils would be determined
on the basis of seniority of commission. Committee hearings have
convinced the members that election of council members is the
preferable course to take; however, once again, the committee is
of the view that the judges should first be given the opportunity
to resolve this issue. A distinguished group of witnesses—for
example, Judge Wallace, Judge Newman, and Judge Friendly—
were of the opinion that election of members was to be preferred
over mere seniority. Recognizing the concern of some that election
of members would unwisely interject politicking into the selection
of council members, the witnesses concluded that this danger is
outweighed by the need to place the most interested, informed and
dedicated judges on the councils. The witnesses pointed out that
the administration of the circuit workload is a time-consuming,
important task better left to those eager to shoulder the responsi-
bility. There can be no question that the judges of the circuit
are in the best position to know those most qualified to serve in an
administrative capacity. The committee acknowledges the risk of
an election procedure but concludes that it is overstated; the
judges of the circuit are likely to recognize that it is in their own
best interest to choose as their representatives on the council those
who have demonstrated administrative ability and temperment.
In any event, the committee does not believe that the risks accom-
panying election compare with those of ineffective administra-
tion—and likely congressional intervention—which are inherent in
a system which leaves the selection process completely to chance.
Once again, however, the committee gives the judges themselves
the first opportunity to resolve this difficult issue.

*Retirement and pensions.*—Part D of title I addresses the issue of
judicial resignation and retirement and also the pension of a govern-
ment employee who leaves judicial office to serve in other government
service.

Section 131 conforms paragraphs (a) and (b) of section 371 of title
28, United States Code, by providing that in order to retain full salary

**Attachment 4 - page 5 of 42**

6

after either resignation or retirement, a judge must serve at least fifteen years and attain the age of 65, or serve ten years and attain the age of 70. Existing law permits the continuation of full salary after resignation only if a judge has served ten years and attained the age of 70.

Section 132 requires the Administrative Office of the United States Courts to pay a deposit into the civil service retirement fund for article III judges who resign to accept executive branch positions. Such Federal judges give up a lifetime salary mandated by the Constitution, even though they have not been able to accrue pension benefits for their years of Federal service under the civil service retirement program. Under existing law, such judges are credited for their years of service on the Federal bench but receive a sharply reduced retirement annuity since contributions to the fund were not made during those years. The Act requires the Administrative Office to deposit into the fund an amount sufficient to provide a full retirement annuity for former Federal judges who have foregone their lifetime salaries to accept other employment by the Federal Government.

This amendment is designed to prevent injustice and to avoid penalizing judges who leave the bench to accept Executive appointments.

*Temporary assignment of judges to administrative positions.*—Part E of title I authorizes an active or retired justice or judge of the United States to be assigned temporarily to the position of Administrative Assistant to the Chief Justice, Director of the Administrative Office of the United States Courts, or Director of the Federal Judicial Center. Such service would be without additional compensation.

This provision makes available to the judiciary the talents of administratively able judges and thereby strengthens the administration of the Federal judiciary. Presently, the Office of the Chief Justice is administratively overloaded; this proposal makes it possible for the Chief Justice to delegate a larger array of his routine administrative duties. This section was first proposed by the Chief Justice of the United States almost a decade ago; the committee is of the opinion that the appropriate appointing bodies should have the flexibility and authority to staff these positions with especially competent and talented members of the Federal judiciary.

The committee is, of course, aware that it may not be necessary to invoke this section in filling the various vacancies. Certainly, the Federal Judicial Center, Administrative Office and Administrative Assistant positions have not suffered in the past from the failure of a sitting judge to be appointed. But the committee is of the view that there should be the option of filling these vacancies with competent appointments from the Federal judiciary. Although the committee considers this Part to be a very useful measure, it is not designed to provide the ultimate solution to the problems of administering a greatly enlarged Federal judiciary. As the Chief Justice has continuously pointed out, those problems require further study and legislative attention.

*Publication of rules.*—Part F of title I amends chapter 131 of title 28 of the United States Code by adding a new section 2077.

Paragraph (a) calls for the publication of rules governing conduct of the business of the court.

Paragraph (b) requires each court of appeals to create an advisory committee to make recommendations to the judges in formulat-

**7**

ing rules of practice and of internal operating procedures. This would provide valuable assistance to the judges in developing sound rules and would provide practitioners with useful information and a better understanding concerning the court's business.

### TITLE II—JURISDICTION AND PROCEDURE

*Interlocutory appeals.*—Part A of title II amends 28 U.S.C. section 1292(b) to permit the courts of appeals to entertain appeals from interlocutory orders in civil actions, if, after a refusal by a district judge to certify the matter for appeal in accordance with the provisions of existing law, the court of appeals determines that an appeal "is required in the interests of justice and because of the extraordinary importance of the case." This eliminates the possibility of a recurrence of the unseemly situation in the *Socialist Workers* case, *In re United States*, 565 F. 2d 19(2d Cir. 1977), *cert. denied*, 436 U.S. 962 (1978) ; cf. *In re Attorney General of the United States*, 596 F. 2d 58 (2d Cir. 1979) in which the Attorney General was compelled to incur a civil contempt citation before bringing a matter of this nature before the court of appeals.

The committee is aware that this section undercuts to some extent the prevailing "rule of finality," which encourages litigants to complete trials in the district courts before appealing to a Federal circuit court. Some witnesses expressed the fear that amending section 1292 (b) would lead to a flood of increased, piecemeal appeals causing unnecessary delay.

Nevertheless, the committee has approved this section, noting particularly the language found in existing law prohibiting a stay in the district court proceedings "unless the district judge or the court of appeals or a judge thereof shall so order." This helps to insure that frivolous appeals taken to the appellate court will not result in unnecessary delay in the completion of the trial below. It should also be pointed out that the committee is of the opinion that most of the applications made pursuant to this new section could easily and quickly be resolved by a member of the court of appeals without requiring the type of full-blown hearing that would likely delay the work of the district and circuit courts alike.

Nor should the "rule of finality" be used to undercut the argument that this new section—while, perhaps, increasing the initial burden on the courts of appeals—will result in economies for judicial administration. Trials might be greatly expedited, rather than delayed, by preliminary final determinations of one or more issues of law. Often, extended pretrial discovery proceedings and trials themselves can be made unnecessary by preliminary determinations of issues which district court judges refused to certify under existing section 1292(b). The committee believes that this new section can, in the long run, foster not inhibit judicial efficiency.

*Transfer of cases.*—In recent years, much confusion has been engendered by provisions of existing law that leave unclear which of two or more Federal courts have subject matter jurisdiction over certain categories of civil actions. The problem has been particularly acute in the area of environmental law where misfilings and dual filings have become commonplace. Part B of Title II cures this problem by au-

8

thorizing any court of the United States that finds it lacks subject matter jurisdiction in a civil action to transfer the case to any Federal court in which the case could have been brought if the transferor court finds that the interests of justice warrant such a transfer.

*Interest.*—Under current law, the interest rate on judgments in the Federal courts is based on varying State laws and frequently falls below the contemporary cost of money. Part C of title II sets a realistic and nationally uniform rate of interest on judgments in the Federal courts that would be keyed to the prime interest rate as determined by the Internal Revenue Service. This eliminates an economic incentive which exists today for a losing defendant to appeal a judgment and accumulate interest on the judgment award at the commercial rate during the pendency of the appeal.

There are presently no generally applicable guidelines concerning the award of prejudgment interest in Federal courts. Yet such interest may be essential in order to compensate the plaintiff or to avoid unjust enrichment of the defendant. For instance, a plaintiff who is unlawfully deprived of the use of $20,000 in 1976, and who does not receive a judgment until 1979, could have obtained $4,500 in those three years by investing the money at seven percent compounded interest. The bill provides that, where a defendant knew of his liability, interest be awarded for the prejudgment period at a rate that is keyed to the prime interest rate, where this is necessary to compensate the plaintiff. The imposition of such interest would be left to the discretion of the district judge in each case.

Finally, the Committee took this opportunity to consolidate into one statute the three provisions of Title 28 of the United States Code dealing with the award of interest on judgments. Consequently the provisions of this bill for prejudgment interest and a new interest rate on judgments will apply uniformly to suits between private litigants and to suits against the government.

TITLE III—TRIAL AND APPELLATE STRUCTURE FOR GOVERNMENT CLAIMS, PATENTS, AND OTHER MATTERS

Title III has three purposes: to fill a void in the judicial system by creating an appellate forum capable of exercising nationwide jurisdiction over appeals in areas of the law where Congress determines there is a special need for nationwide uniformity; to improve the administration of the patent law by centralizing appeals in patent cases; and to provide an upgraded and better organized trial forum for government claims cases. To achieve these goals, the bill establishes a new Federal court of appeals, to be called the United States Court of Appeals for the Federal Circuit. This is accomplished by merging the Court of Claims and the Court of Customs and Patent Appeals. The bill also creates a new article I trial forum known as the United States Claims Court, which would inherit the trial jurisdiction of the Court of Claims.

*Court of Appeals for the Federal Circuit.*—The bill creates an article III court that is similar in structure to the eleven other courts of appeals. It is composed of the twelve judgeships of the Court of Claims and the Court of Customs and Patent Appeals, which become United States circuit judgeships; those courts are abolished by the

Attachment 4 - page 8 of 42

9

merger. The new court is on line with other Federal courts of appeals; that is, it is not a new tier in the judicial structure.

The Court of Appeals for the Federal Circuit differs from other Federal courts of appeals, however, in that its jurisdiction is defined in terms of subject matter rather than geography. The new court inherits, in appellate form, substantially all of the jurisdiction of the two courts abolished in the merger. This includes appeals in suits against the government and appeals from the Customs Court, the Patent and Trademark Office, and other statutorily defined agencies. One major exception is in the area of civil tax refund suits; under the act, these appeals will be within the exclusive jurisdiction of the new United States Court of Tax Appeals. However, the federal circuit also has expanded and exclusive jurisdiction of patent appeals from district courts throughout the Nation.

Contemporary observers recognize that there are certain areas of Federal law in which the appellate system is malfunctioning. A decision in any one of the eleven regional circuits is not binding on any of the others. As a result, our Federal judicial system lacks the capacity, short of the Supreme Court, to provide reasonably quick and definitive answers to legal questions of nationwide significance. The Supreme Court now appears to be operating at—or close to—full capacity; therefore, in the future the Court cannot be expected to provide much more guidance on legal issues than it now does. Yet the number and complexity of unsettled controversies in the law continues to grow.

Consequently, there are areas of the law in which the appellate courts reach inconsistent decisions on the same issue, or in which—although the rule of law may be fairly clear—courts apply the law unevenly when faced with the facts of individual cases. The difficulty here is structural. Since the Supreme Court's capacity to review cases cannot be enlarged significantly, the remedy lies in some reorganization at the intermediate appellate level. This matter has been the subject of intense study over the last decade.[1] Although enactment of the Omnibus Judgeship Act of 1978,[2] which authorized 152 new federal judgeships, meets some compelling problems of the judicial system, it fails to cure the basic weaknesses that have arisen in judicial structure.

The creation of a new Court of Appeals for the Federal Circuit through a merger of the Court of Claims and the Court of Customs and Patent Appeals (CCPA) addresses these structural problems. The Act provides a new forum for the definitive adjudication of selected categories of cases. At the same time, it improves the administration of the system by reducing the number of decision-making entities within the federal appellate system.

Testimony on S. 677 and S. 678 supported the premise that the capacity of the federal appellate courts to provide a nationwide answer to legal questions could be expanded through the establishment

[1] To increase the capacity of the federal judicial system for definitive adjudication of issues of national law, various proposals for restructuring the federal appellate courts have been considered in recent years by lawyers, jurists, and academicians. Detailed recommendations have been developed by the Study Group on the Caseload of the Supreme Court (the Freund Commission), the Committee on Revision of the Federal Court Appellate System (the Hruska Commission), and the Advisory Council for Appellate Justice chaired by Professor Maurice Rosenberg. See Federal Judicial Center, Report of the Study Group on the Caseload of the Supreme Court (1972); Commission on Revision of the Federal Court Appellate System, Structure and Internal Procedures: Recommendations for Change, reprinted in 67 F.R.D. 195 (1975); and Advisory Council for Appellate Justice, Recommendations for Improving the Federal Intermediate Appellate System (1975).
[2] Pub. L. No. 95-486.

**Attachment 4 - page 9 of 42**

**10**

of new courts of appeals whose jurisdiction is defined on a topical rather than a geographical basis.[9] The creation of the Court of Appeals for the Federal Circuit provides such a forum for appeals from throughout the country in areas of the law where Congress determines that there is special need for national uniformity. The absence of such a court in the present Federal judicial system has compelled Congress from time to time in the past to create special courts to handle a narrow category of cases.[10] Although the jurisdiction of the federal circuit is presently delineated in the manner outlined above, the creation of a Federal appellate court with jurisdiction that is defined in terms of subject matter rather than territory provides an institutional structure which the Federal judicial system, as it is presently constituted, lacks. The committee has determined that an adequate showing has been made for nationwide subject matter jurisdiction in the areas of patent and claims court appeals. It must be understood, however, that it is not the committee's judgment that broader subject matter jurisdiction is intended for this court. A proposal that would provide just such broader jurisdiction—a National Court of Appeals—has been expressly considered by the committee, and rejected. It must therefore be noted that any additional subject matter, or geographic jurisdiction, for the United States Court of Appeals for the Federal Circuit will require not only serious future evaluation, but new legislation.[11]

Although the committee desires to make any changes in the judicial structure that are necessary to help the system function well, it is mindful of the need to avoid doing things that do not need doing. Originally, S. 677 and 678 included trademark appeals within the jurisdiction of the new court. However, the United States Trademark Association and other witnesses who appeared on this subject indicated there was no need for centralization of trademark appeals from the district courts.[11] The committee has accepted this judgment.

Throughout the development of this legislation, the committee and its staff have worked closely with the Department of Justice and the judges of the Court of Claims and the Court of Customs and Patent Appeals to assure that the merger of these two courts is both desirable and feasible. The committee is indebted to the judges of these courts, and particularly to Chief Judge Friedman and to Chief Judge Markey, for their testimony and assistance in understanding the impact of the proposal on their courts. The committee is satisfied that the merger of these courts would, in fact, produce significant improvements in the federal judicial structure. Testimony on S. 677 and S. 678 supported this proposition. Chief Judge Friedman of the Court of Claims testified at some length as to the substantial benefits that would result from the consolidation of these two courts into a new court of appeals.[12] Furthermore, the proposal was expressly endorsed by President Carter in a message to the Congress on February 17, 1979.[13]

From a practical standpoint, a merger of the Court of Claims and the CCPA can be accomplished with virtually no disruption to the

---

[9] Written statement of Erwin N. Griswold, former Solicitor General (May 7, 1979) 7; written statement of Professor Paul D. Carrington (May 9, 1979) 2.
[10] For example, the Temporary Emergency Court of Appeals, Pub. L. No. 92–210, and the United States Foreign Intelligence Surveillance Court, 50 U.S.C. 1801 et seq.
[11] Written statement of Marie Driscoll on behalf of the United States Trademark Association (May 7, 1979) 2–6; written statement of Judge Henry J. Friendly (June 18, 1979) 25.
[12] Oral statement of Chief Judge Daniel M. Friedman (May 7, 1979).
[13] 125 Cong. Rec. H911 (daily ed., Feb. 27, 1979).

**Attachment 4 - page 10 of 42**

11

people involved. The existing courts already jointly occupy almost all
of the Courts Building at Lafayette Square in Washington, D.C.
They already share the same library, and court personnel share the
same dining facilities. The Court of Claims trial judges (who become
judges of the new United States Claims Court) are also located in this
building. Furthermore, there is already a standing order of the Judi-
cial Conference allowing the interchange of judges between the two
courts.[14]

Indeed, the creation of a single new appellate entity through a
merger of these courts has considerable advantages in terms of basic
efficiencies and economics. The Court of Claims and the Court of Cus-
toms and Patent Appeals were historically justified at the time they
were created, and those courts have performed well with the cases
that have been assigned to them through the years. But the merger of
these two courts reduces overlapping functions and provides for more
efficient court administration. For example, there should be consider-
able savings through the maintenance of one clerk's office instead of
two.

At the same time, the consolidation of the two courts brings them
administratively into the mainstream of the federal judiciary and up-
grades the status of their judges and functions. Although both courts
participate in the Judicial Conference [15] and are among the courts
within the jurisdiction of the Administrative Office of the United
States Courts,[16] their integration into the judicial budgetary and ad-
ministrative process has been far from total. On budgetary matters,
for example, the proposed budgets for the two courts are routed to
the Office of Management and Budget through the Administrative
Office, along with the proposed budgets for the district and circuit
courts; but, unlike the other courts that are serviced by the Admin-
istrative Office, representatives of each of these courts appear directly
before the appropriation committees of the Congress to justify their
budget requests, in much the same fashion as the Supreme Court.
Whatever the historical reason for this practice, there is little
justification today for having two courts (other than the Supreme
Court) out of the entire Federal judiciary appear separately to ex-
plain their budgetary submissions. The merger of the two courts would
permit them to be fully integrated into the budgetary process. Thus,
merging these two courts into a single court, as a regularized part of
the intermediate appellate tier, would assure more effective and ra-
tional administration of the Federal judiciary as a whole.

The establishment of the Court of Appeals for the Federal Circuit
also provides a forum that will increase doctrinal stability in the
field of patent law. Based on the evidence it had compiled, the Hruska
Commission singled out patent law as an area in which the applica-
tion of the law to the facts of a case often produces different out-
comes in substantially similar cases.[17] Further-
more, in a Commission survey of practitioners, the patent bar indi-
cated that uncertainty created by the lack of national law precedent

[14] See, Report of the Proceedings of the Judicial Conference of the United States, Sep-
tember 25-26, 1975, at 53.
[15] 28 U.R.C. 331.
[16] 28 U.S.C. 610.
[17] Commission on Revision of the Federal Court Appellate System. Structure and Internal
Procedures: Recommendations for Change, 15, 144-57, reprinted at 67 F.R.D. 195, 214,
361-76 (1975) [hereinafter cited as Commission].

Attachment 4 - page 11 of 42

12

was a significant problem, and the Commission singled out patent law as an area in which widespread forum-shopping is particularly acute.[18]

Although the proposal to centralize patent appeals in a single court is not without its critics, the issue was amply addressed in the hearings held earlier this year on S. 677 and S. 678. The great weight of the testimony, which included statements from distinguished jurists, patent practitioners, and representatives of major technologically-oriented business enterprises, confirmed the findings of the Hruska Commission that patent cases are inconsistently adjudicated. The testimony received by the committee also supported the basic objective of providing for uniformity of doctrinal development in the patent area. The committee found particularly persuasive the testimony of the users of the patent system. For example, Industrial Research Institute is a private, non-profit corporation with a membership of approximately 250 industrial companies that conduct a major portion of the industrial research and development carried on in the United States. It polled its membership and found them overwhelmingly in favor of centralizing patent appeals in a single court.[19]

The creation of the Court of Appeals for the Federal Circuit will produce desirable uniformity in this area of the law. Such uniformity will reduce the forum-shopping that is common to patent litigation. The Hruska Commission's patent law consultants, James B. Gambrell and Donald R. Dunner, concluded that forum-shopping on the scale that occurs in patent law increases the cost of litigation and "demeans the entire judicial process and the patent system as well."[20] Removing the incentive to forum-shop thus will reduce costs to litigants and will also be a positive improvement from the standpoint of the judicial system. Moreover, as the new court brings uniformity to this field of law, the number of appeals resulting from attempts to obtain different rulings on disputed legal points can be expected to decrease.

Likewise, uniformity in the law will be a significant improvement from the standpoint of the businesses that rely on the patent system. Business planning will become easier as more stable and predictable law is introduced. This can have important ramifications upon our economy as a whole. For example, Harry F. Manbeck, Jr., General Patent Counsel of the General Electric Company, testified that stability in the patent law has an effect on technological innovation:

> Patents, in my judgment, are a stimulus to the innovative process, which includes not only investment in research and development but also a far greater investment in facilities for producing and distributing the goods. Certainly, it is important to those who must make these investment decisions that we decrease unnecessary uncertainties in the patent system.[21]

While the suggestion has been made that this objective might be accomplished simply by expanding the jurisdiction of the CCPA, the

---

[18] *Id.* at 144–157, 67 F.R.D. at 361–76.
[19] Written statement of Richard C. Witte, Chief Patent Counsel for the Procter and Gamble Company, on behalf of the Industrial Research Institute, Inc. (May 7, 1979).
[20] Commission, *supra,* at 153, 67 F.R.D. at 370. Mr. Dunner, who is now in private practice, testified in favor of the Court of Appeals for the Federal Circuit. See written statement of Donald R. Dunner (May 7, 1979).
[21] Written statement of Harry F. Manbeck, Jr., General Patent Counsel of the General Electric Company (May 7, 1979) 2; see also, written statement of Donald R. Dunner (May 7, 1979) 7–9.

Attachment 4 - page 12 of 42

13

committee rejected such an approach as being inconsistent with the imperative of avoiding undue specialization within the Federal judicial system. Consequently, the Act adheres to the original philosophy of S. 677 and S. 678 which, in the words of Judge Jon O. Newman, represents "a sensible accommodation of the usual preference for generalist judges and the selective benefit of expertise in highly specialized and technical areas."[22]

The Court of Appeals for the Federal Circuit will not be a "specialized court," as that term is normally used. The court's jurisdiction will not be limited to one type of case, or even to two or three types of cases. Rather, it will have a varied docket spanning a broad range of legal issues and types of cases. It will handle all patent appeals, plus government claims cases and all other appellate matters that are now considered by the CCPA or the Court of Claims—cases which contain a wide variety of issues.

This rich docket assures that the work of the proposed court will be broad and diverse and not narrowly specialized. The judges will have no lack of exposure to a broad variety of legal problems. Moreover, the subject matter of the new court will be sufficiently mixed to prevent any special interest from dominating it.

It is important that the docket of the new court be not only varied but also manageable. An analysis of the proposed workload discloses that a merger of the courts will produce a reasonable caseload. The dockets of both existing courts are current. Set out below are tables showing the sources of cases for the proposed court.

CASELOAD IN THE COURT OF CUSTOMS AND PATENT APPEALS, FISCAL YEAR 1978

| Type of case | Filed | Terminated |
|---|---|---|
| Customs, commerce, and international trade | 20 | 26 |
| Patent and trademarks | 133 | 173 |
| Total CCPA cases | 153 | 199 |

The docketing of cases in the Court of Claims presents a confusing statistical picture to the uninitiated. Some cases appear on the trial judges' docket and others' appear on the docket of the article III judges, while some cases are placed on both dockets. For purposes of projecting the new court's caseload, the relevant statistics are not those that reveal the total caseload of the Court of Claims but rather those that reflect the caseload of the article III judges on the Court. The following table contains those figures.

*Appellate caseload in the Court of Claims, fiscal year 1978*

Total dispositions by article III judges:
| | |
|---|---|
| In chambers | 150 |
| Calendar | 151 |
| Requests for review | 50 |
| Total article III judge workload | 351 |

In addition to inheriting the jurisdiction of the CCPA and of the Court of Claims, the new appellate court will also receive all patent appeals and all appeals in federal contract cases brought against the United States that are presently heard in the regional courts of ap-

[22] Written statement of Judge Jon O. Newman (March 20, 1979) 8.

Attachment 4 - page 13 of 42

14

peals. On the basis of 1978 figures, the new court will handle approximately 153 cases that otherwise would have been heard by the CCPA, 351 cases that would have been heard by the Court of Claims, and 372 patent or federal contract cases coming directly from the district courts that would have been heard by the regional courts of appeals. This will provide an adequate but not burdensome workload for a court of twelve judges.

Although the workload per judgeship will be lighter here than in the other circuits, a reduced number of appeals is desirable for this court. The Court of Appeals for the Federal Circuit will be considering cases that are unusually complex and technical. Consequently, its cases will be extraordinarily time-consuming, and fewer of them will be appropriate for summary disposition than is true of the cases that make up the dockets of the regional courts of appeals. In addition, for at least two reasons, it is important that a newly created court with nationwide jurisdiction not be initially overloaded. First, because decisions of this court will have precedential effect throughout the country, it is important for the judges of the court to have adequate time for thorough discussion and deliberation. Second, because a major purpose of this bill is to create a forum to which Congress can route cases where there is a felt need for uniformity in the national law, it is important for the new court to retain some flexibility in its docket so that there is capacity available when the Congress seeks to use it in the future.

In summary, the consolidation of the Court of Claims and the Court of Customs and Patent Appeals is desirable. It is logistically feasible. Indeed, it makes maximum use of facilities and personnel that are already a part of the federal system. As Chief Judge Frank M. Coffin noted, the proposal "has the merit of avoiding any net increase in courts."[33] Thus, the bill makes only a modest change in federal appellate court structure. It does, however, create a permanent forum that is capable of exercising nationwide jurisdiction of appeals in categories of cases where there have been special problems of inconsistency in the law. It also provides for increased stability in the patent law by channelling appeals in those cases to a single forum.

*United States Claims Court.*—The bill also creates a new article I trial forum known as the United States Claims Court. The Claims Court inherits substantially all the trial jurisdiction of the Court of Claims, which under present practice is exercised largely by the commissioners of that court. The Court is composed of sixteen article I judges who will be appointed by the President, with the advice and consent of the Senate, for a term of fifteen years. As a transitional measure, persons who were in active service as trial judges of the Court of Claims on the effective date of the Act become article I judges of the Claims Court. Like the present Court of Claims and the Tax Court, the Claims Court is authorized to sit nationwide. In organization and procedure it resembles the United States Tax Court.

Changes in the existing structure of the Court of Claims have been advocated by practitioners with extensive experience before the court

[33] Written statement of Judge Frank M. Coffin (March 20, 1979) 9.

and by the commissioners themselves.[24] The establishment of the Claims Court accomplishes a much needed reorganization of the current system by assigning the trial function of the court to trial judges whose status is upgraded and who are truly independent. Presently, the commissioners of the Court of Claims are appointed by the article III judges of that court and do not have the power to enter dispositive orders; final judgment in a case must be made by the article III judges after reviewing findings of fact and recommendations of law submitted by a commissioner. The creation of the United States Claims Court will reduce delay in individual cases and will produce greater efficiencies in the handling of the court's docket by eliminating some of the overlapping work that has occurred as a result of this process.

### Title IV—Tax Appellate Structure

COMMITTEE NOTE: S. 1477, as reported by the Committee on the Judiciary, contains provisions creating a new tax appellate structure. Since it is anticipated that these provisions will be sequentially referred in a separate bill to the Senate Finance Committee, they are retained in S. 1477, as reported, solely for the purpose of providing a comprehensive overview of the entire court reform package.

S. 1477 provides for the creation of a new United States Court of Tax Appeals, a tribunal at the same level as the existing Federal circuit courts of appeals. This new court would have exclusive intermediate appellate jurisdiction over all civil tax appeals.

As introduced, the bill provided for a court of twelve judges to be designated by the Chief Justice for staggered three-year terms from among the current courts of appeals judges. The bill also provided that the judges would normally hear argument in panels of three and would sit throughout the various circuits; when any six judges of the court agreed that it was warranted, the court would sit en banc. S. 678 would have also eliminated all tax jurisdiction from the existing Court of Claims.

For more than forty years the inadequacies of the present civil tax appellate system have been criticized and debated.[25] Yet, until now, little has been done to deal with these inadequacies. Under the present system, a taxpayer usually has a choice of three trial forums in which to litigate a tax issue—the United States Tax Court, the United States Court of Claims, or the appropriate United States district court. Decisions of the Tax Court and district courts can then be appealed to one of the eleven United States circuit courts of appeals. There is then the possibility—rather remote—that the case will be heard by the United States Supreme Court. Court of Claims decisions are appealable only to the Supreme Court itself.

---

[24] Written statement of Thomas M. Gittings, Jr., Chairman, Court of Claims Committee of the Bar Association of the District of Columbia (May 9, 1979); written statement of Chief Judge Daniel M. Friedman (May 9, 1979) 14–16.

[25] See, e.g., Traynor, "Administrative and Judicial Procedure for Federal Income, Estate and Gift Taxes—a Criticism and a Proposal," 38 Colum. L. Rev. 1393 (1938); Surrey, "Some Suggested Topics in the Field of Tax Administration," 25 Wash. U.L.Q. 399 (1940); Griswold, "The Need for a Court of Tax Appeals," 57 Harv. L. Rev. 1153 (1944). The debate has not diminished in recent years. See e.g., Miller, "A Court of Tax Appeals Revisited," 85 Yale L. J. 228" (1975); Caplin and Brown, "A New United States Court of Tax Appeals: S. 678," 57 Taxes: The Tax Magazine, 380 (June 1979).

16

The committee recognizes that the real problem in today's system of tax litigation is the long period of uncertainty engendered by delay in getting a final decision on a particular tax issue. Current law—determined in various forums and subject to disparate appellate consideration—lacks a practical and reliable method of authoritatively resolving tax questions. In addition, as Judge Friendly and others pointed out during the hearings, current tax law is so complex and requires such special understanding that resolution of tax issues should be better left to a central tribunal established for that purpose alone. To Judge Friendly and other authorities tax cases are a luxury which the existing Federal appellate courts—already confronted with mushrooming dockets—can no longer afford.[26] Under the current system the likelihood of unfairness and delay is obvious: not only may the taxpayer wait many years without a final determination of the issue in question, but taxpayers whose circumstances are in all other respects identical may lawfully pay different amounts of tax solely because they are residents of different circuits. The overall logic and fairness of our tax system is brought into question. Inconsistency and lack of certainty place a heavy burden on the administrative process through which the vast majority of tax disputes are settled.

To solve the problems surrounding the resolution of civil tax issues, S. 1477 proposes two major changes in present law:

1. The creation of a United States Court of Tax Appeals with exclusive jurisdiction over civil tax appeals from the district court and the Tax Court; and

2. The elimination of Court of Claims jurisdiction over tax cases.

By virtue of these changes, all civil tax cases would be initiated in either the United States Tax Court or district courts and all civil tax appeals would be heard by the newly created Court of Tax Appeals. Although the decisions of the new court would be subject to review by the Supreme Court on certiorari, it is anticipated that such review would be a rare occurrence.[27] For all practical purposes, the new Court of Tax Appeals would become the final authority in the judicial interpretation of the Federal internal revenue laws.

In endorsing this new court, the committee has concluded that the following benefits will result from the proposal:

1. Speedier, more definitive resolution of complex tax issues.

2. A small but important reduction in the existing caseload of the Federal courts of appeals.

3. Less burden on the Supreme Court to resolve tax conflicts among the circuits.

[26] H. Friendly. *Federal Jurisdiction: A General View.* 153 et seq. (1973).
[27] U.S. Supreme Court review of tax cases is a rare occurrence under existing law. The following Supreme Court statistics were obtained from the Appellate Section of the Tax Division of the Department of Justice. The term "petitions" likely includes a very small number of direct appeals:

(Continued)

17

4. A reduction in trial level litigation and IRS administrative proceedings as the new, centralized court issues definitive decisions binding on all the trial courts.

5. Creation of a new court well versed in the complexities of tax law.

During the course of committee hearings various witnesses testified concerning the strengths and limitations of the tax court proposal. Wide ranging support for the new court was voiced throughout the hearings. Former Solicitor General Erwin Griswold—considered by many the father of the concept of a centralized court of tax appeals— was joined by members of the Federal judiciary, representatives of the Internal Revenue Service and Department of the Treasury, and, perhaps most importantly, private tax practitioners, in supporting the need for a centralized court of tax appeals. Indeed, with very few exceptions, the witnesses were enthusiastic in their support of the proposal. The committee notes that, because of the structure and organization of the proposed new court, it enjoys the type of broad, bipartisan support that previous tax court proposals often lacked.

The committee hastens to add that the proposal needed further improvement. A panel of former IRS Commissioners, while endorsing

(Continued)

|  | October term | |
|---|---|---|
|  | 1976 | 1977 |
| 1. Cases on merits pending at close of prior term | 8 | 5 |
| 2. Petitions pending at close of prior term | 27 | 17 |
|     (a) Taxpayer | 24 | 14 |
|     (b) Government | 3 | 3 |
| 3. Petitions filed during term | 111 | 100 |
|     (a) Taxpayer | 107 | 98 |
|     (b) Government | 4 | 2 |
| 4. Petitions: | | |
|     (a) Denied | 113 | 90 |
|         (i) Taxpayer | 113 | 90 |
|         (ii) Government | 0 | 0 |
|     (b) Granted | 8 | 11 |
|         (i) Taxpayer | 4 | 6 |
|         (ii) Government | 4 | 5 |
| 5. Cases decided | 10 | 11 |
|     (a) Taxpayer | 6 | 3 |
|     (b) Government | 4 | 8 |
| 6. Cases pending on merits at end of term | 5 | 5 |
| 7. Petitions pending at end of term | 17 | 26 |
|     (a) Taxpayer | 14 | 26 |
|     (b) Government | 3 | 0 |

18

the proposal, urged that certain modifications be made. Similarly, the tax section of the New York State Bar Association and the Bar Association of the City of New York—representing the practicing tax bar—endorsed the proposal but also expressed reservations with certain sections. The committee took into account the suggestions of these and other witnesses and modified the bill accordingly.

The major issues raised during the course of Senate hearings concerned the composition of the proposed court and the selection of its members. S. 678, as introduced, would have established an article III court to be composed of twelve judges chosen by the Chief Justice from among those circuit judges already sitting on other Federal courts of appeals. After a transitional period designed to stagger vacancies, the twelve judges would have served for three-year terms. The Chief Justice would also have been empowered to designate judges currently sitting on the district courts or the Tax Court to serve temporarily on the new court. Sessions of the court would have been held in each of the circuits at least once a year and more often as the court's workload required. Current estimates are that, initially, between 400 and 500 cases a year would be handled by the new court.[22]

---

[22] The following statistics demonstrate the number and nature of tax appeals during the past four years:

*Tax cases filed and opinions issued 1975 to present—Court of Claims*

I. New tax cases filed:
    July 1, 1974 to June 30, 1975......................................................... 140
    July 1, 1975 to June 30, 1976......................................................... 157
    July 1, 1976 to Sept. 30, 1976........................................................ 30
    Oct. 1, 1976 to Sept. 30, 1977........................................................ 290
    Oct. 1, 1977 to Sept. 30, 1978........................................................ 286
    Oct. 1, 1978 to Apr. 1, 1979.......................................................... 62
II. Opinions in tax cases (does not include dispositive orders):
    1975................................................................................. 19
    1976................................................................................. 25
    1977................................................................................. 23
    1978................................................................................. 29
    Jan. 1 to Apr. 12, 1979.............................................................. 11

*Appeals from a judgment of a district court*

| Fiscal year [23] | Government appeals | Taxpayer appeals | Total | Adjusted total [24] |
|---|---|---|---|---|
| 1975 | 117 | 227 | 344 | 299 |
| 1976 | 105 | 220 | 325 | 283 |
| Transitional quarter | 0 | 6 | 6 | 4 |
| 1977 | 111 | 342 | 353 | 307 |
| 1978 | 205 | 392 | 597 | 519 |
| (6 mo) 1979 | 111 | 134 | 245 | 213 |

*Appeals from a decision of the tax court*

| Fiscal year [23] | Government appeals | Taxpayer appeals | Total | Adjusted total [24] |
|---|---|---|---|---|
| 1975 | 25 | 262 | 287 | 250 |
| 1976 | 33 | 276 | 309 | 269 |
| Transitional quarter | 0 | 9 | 9 | 8 |
| 1977 | 44 | 200 | 234 | 209 |
| 1978 | 23 | 227 | 250 | 217 |
| 1979 (6 mo) | 19 | 137 | 156 | 136 |

[23] July 1 to June 30 for 1975–78; Oct. 1 to Sept. 30 for 1977 and thereafter.
[24] The statistical source for the figures in this report reflects taxpayer-litigants rather than an actual case load. Since a court case may involve several such taxpayer-litigants, the committee has provided this adjusted total which converts taxpayers to cases, based on a conversion factor of 87 percent arrived at by a small sampling on an actual count. It is at best a rough adjustment and may well be wide of the mark but the result is probably a more accurate picture of actual caseload than the raw statistical figures.

Attachment 4 - page 18 of 42

19

The committee notes that the scheme underlying the structure and composition of the new court was designed with two purposes in mind—to assure that the new court would not be viewed as a "tax specialty" court headquartered in Washington and that the court would not be labeled a permanent court requiring the nomination and confirmation of additional article III judges just one year after the passage of the Omnibus Judgeship Act creating 152 new Federal judgeship vacancies. The bill is designed to provide for the reassignment of judges already sitting and focuses on the need to avoid the creation of a new "specialist" court out of touch with other general areas of law. The committee further notes that these two concerns—a permanent Washington-based court and a specialty court consisting solely of tax experts—have largely been responsible for the failure of previous proposals. The proposal to assign sitting circuit court judges to the new court for terms of three years is, in the view of the committee, a wise attempt to avoid the passions and pitfalls of past debate. By virtue of their concurrent service on the Federal circuit courts, each judge selected will have a generalist background. Moreover, depending on the new court's workload, the judges may be able to continue to participate in other types of cases in their home circuits during the three-year period they serve on the new tax court. At the same time, judges appointed to the new court will have the opportunity to develop a special understanding and appreciation of tax law issues. The committee views the tax court proposal in S. 1477 as a balanced proposal designed to deal with the problems which plague the development of a consistent body of tax law while assuring that the problems' will be dealt with by a truly national court consisting of generalist judges.

The committee has heard extensive, detailed testimony on all aspects of the S. 1477 proposal. In an effort to assure that the new court meets the intent of the drafters and effectively deals with problems raised during the course of the hearings, certain modifications have been made to the original proposal:

1. *Geographic distribution of appointments.*—The committee adopts the recommendation of the Tax Section of the New York State Bar Association urging that the bill be amended to reduce the number of judges comprising the new tax court from twelve to eleven and providing that at least one judge from each of the eleven judicial circuits be a member of the Court of Tax Appeals at all times. This amendment is designed to assure that the new court will truly be national in scope. In the event that the Chief Justice is unable to designate a circuit judge for the new court—such as in the case where no circuit judge desires to serve on the tax court—the bill has been amended to allow for the designation of a district court judge of that circuit.

2. *Concurrent appointments.*—To make clear that judges of the new tax court need not relinquish their current status as Federal circuit court judges, the bill is amended expressly to provide that a judge appointed to the Court of Tax Appeals will continue to remain a judge of the circuit from which he was appointed. The judge's primary duties will be to the Court of Tax Appeals but workload requirements will determine

20

precisely how much time can realistically be spent on each
court.

3. *Location of the court.*—Again, to assure a truly national
Court of Tax Appeals, S. 1477 is amended to provide that any
appeal from a lower court decision in a civil tax case will nor-
mally be heard by the Court of Tax Appeals in the judicial
circuit in which the taxpayer is domiciled or, if the taxpayer
is a corporation or other association, has its principal place of
business or, in the case of a cooperative or an organization
claiming tax exemption, its principal place of activity.

4. *Selection of judges.*—Designation of judges to get on the
new tax court will be made by the Chief Justice. The bill
would mandate that one judge be chosen from each of the
eleven circuits, thus reducing the number of judges on the
new tax court from twelve to eleven. S. 678, as introduced,
provided that the Chief Justice of the United States would
appoint the circuit judges. The subcommittee, however, when
considering this provision, concluded that a more pluralistic
court, representing various views and opinions, would be as-
sured if the chief judge of each circuit designated a circuit
judge for the tax court. Upon further reflection, the full com-
mittee has opted for the original approach of allowing the
Chief Justice to select the members of the new court. Recog-
nizing that the issue can be resolved either way, it is the view
of the committee that designation by the Chief Justice will
assure that the most competent and capable judges will be
chosen for this important assignment.

5. *Judges sitting by designation.*—Although the committee
believes that the provision of S. 678 allowing for the tem-
porary designation of district judges to sit on the new tax
court is sound. the same cannot be said for the designation of
Tax Court judges. The latter designation raises serious con-
stitutional questions since the Tax Court has been established
under article I of the Constitution rather than under article
III. In order to eliminate the possibility of any controversy
surrounding designation, the committee has struck the provi-
sion in S. 1477 permitting judges of the Tax Court to sit by
designation on the Court of Tax Appeals.

6. *En Banc Rehearing.*—The most frequent criticism leveled
at the proposed new court during the hearings concerned the
fear by some witnesses that a central court of tax appeals
would stifle the benefits flowing from successive consideration
of the same tax issue by different circuits. For example, dur-
ing the course of the committee hearings, Assistant Attorney
General M. Carr Ferguson noted that:

> Part of the genius of our system of circuit appel-
> late courts is the opportunity for reconsideration of
> an issue already decided by one circuit by another ap-
> pellate court free of the constraints of the doctrine
> of *stare decisis.* This opportunity for an issue to be
> ventilated in more than one circuit seems to me espe-

21

cially important in tax cases. The first appellate re-
view of a tax issue may be shortsighted, distorted by
the particular record or omission of an argument,
or simply mistaken.[31]

According to this argument, such "ventilation" of tax issues
is a valuable benefit of the current system—to be preserved
even at the price of some interim uncertainty. Although the
committee respects this view, it is inclined to agree with the
majority of witnesses who testified during the hearings that
such a consideration pales before the needs of certainty and
finality. For example, former Solicitor General Griswold
noted that:

> The result is continuing uncertainty, encourage-
> ment to litigation, and a premium on continued liti-
> gation. I am sure that the burden on the courts in this
> country would be considerably reduced if we only
> had a system which would enable lawyers, both pri-
> vate and public, and judges of the lower courts, to
> know somewhat more definitely than is now the case
> what the law is.[32]

And Mortimer Caplin, a former Commissioner of the Inter-
nal Revenue Service, testified that:

> To increase the likelihood of reaching correct de-
> cisions, an appellate system which provides for par-
> ticularly well-qualified judges to decide the issues at
> hand seems preferable to one which relies mainly
> upon successive decisions by different panels.[33]

Nevertheless, the committee believes that steps should be
taken to assure that the first decision of the new tax court
concerning a particular tax matter not preclude further
evolution and modification of the issue at hand. Accordingly,
the committee believes that S. 1477 should encourage the prac-
tice of *en banc* rehearing by providing specific machinery for
initiating such rehearing. The bill specifically provides some
of the factors to be taken into account in deciding whether or
not to endorse a petition for rehearing in a particular case.
These factors—which are not exhaustive—include:

> . . . whether the question presented in the case was
> thought to be novel and unlikely to recur or was
> likely to apply to many taxpayers;
> . . . whether there has or has not been unanimity
> in the panel which decided the case;
> . . . whether any of the judges who composed the
> panel which heard the case have suggested that it be
> reheard;
> . . . whether the case presents issues of first
> impression.

[31] Written Statement of M. Carr Ferguson, Assistant Attorney General, Tax Division
(May 7, 1979). p. 8.
[32] Written statement of Erwin N. Griswold (May 7, 1979). p. 5.
[33] Written Statement of Mortimer Caplin (May 10, 1979). p. 16.

22

## TITLES V AND VI

Title V of the bill makes technical and conforming amendments outside of title 28 relating to the United States Court of Appeals for the Federal Circuit and the United States Court of Tax Appeals.

Title VI contains two sections, the first of which sets the general effective date of the bill as two years after the enactment date. The second provision addresses the issue of the effect of this bill on pending cases.

## REGULATORY IMPACT EVALUATION

In compliance with Rule 29.5 of the Standing Rules of the Senate, the Committee finds that no significant regulatory impact as defined by that subsection will result from the enactment of S. 1477.

## CHANGES IN EXISTING LAW

In the opinion of the Committee on the Judiciary, it is necessary in order to expedite the business of the Senate to dispense with the requirements of subsection 4 of rule XXIX of the Standing Rules of the Senate (relating to the showing of changes in existing laws made by the bill, as reported).

### COST ESTIMATE OF CONGRESSIONAL BUDGET OFFICE

A cost estimate of the Congressional Budget Office is on request but was not available at the time of this report.

## SECTION-BY-SECTION ANALYSIS

### TITLE I—GOVERNANCE AND ADMINISTRATION OF THE FEDERAL COURTS

#### CHIEF JUDGE TENURE

*Sections 101–103*

Under current law, the person who serves as chief judge of a Federal court of appeals or a district court is the judge who is most senior in commission. The chief judge may hold office until age 70. As a result, a judge who becomes chief judge of a Federal court at age 50 may serve as chief judge for twenty years, while a judge who becomes chief judge at age 69 will serve for only one year.

A statute that bases the chief judgeship position solely on seniority, without a minimum or maximum term, produces two potential difficulties: it may require the retention for decades of a chief judge who may or may not have the interest or ability to be an enthusiastic administrator; at the same time, it requires rapid rotation among chief judges when the consecutive incumbents take office at an advanced age, thereby creating instability in the chief administrative office of the court. In recent history, this provision has resulted in the anomalous situation that one Federal court had a chief judge who served for seventeen years, while another Federal court had three chief judges within two years.

Sections 101–103 resolve this problem by amending 28 U.S.C. 45 and 136 to set a maximum term of office for chief judges of seven years

23

and to permit no one to become a chief judge of a district or circuit court after reaching age 65. However, once becoming a chief judge prior to age 65, a chief judge could serve for seven years, or until reaching the age of 70. These provisions insure a constant seven year term for the chief judge unless death, resignation or retirement shortens the term. These amendments also provide for the continuation of a judge's service as chief judge after the expiration of his seven year term until another judge is qualified to serve in that capacity.

The sections also provide for the situation in which no judge meets the statutory requirements for the chief judgeship. In such a case, the most senior active judge would preside until some other judge became eligible.

As a transitional measure, the section also contains a provision that continues the present system for one year after the effective date of the bill. Moreover, the bill would not apply to anyone who was a chief judge on the date it becomes effective.

PRECEDENCE AND COMPOSITION OF PANEL

*Section 111*

Under current law the presiding judge of a three-judge panel of a court of appeals is the judge who is senior in commission, unless the chief judge or a circuit justice is a member of the panel. This policy permits senior judges and judges from other circuits to be the presiding judge of a panel and to assign opinions. In order to insure greater stability in the law of the circuit, section 111 amends 28 U.S.C. 45(b) to require that the presiding judge be a judge of that circuit in regular active service.

*Section 112*

Current law permits a panel of a Federal appellate court to be composed of any combination of active, senior, designated, or district court Federal judges. With a substantial number of judges sitting by designation from outside the circuit, and with district judges sitting regularly on the courts of appeals, it is not infrequent that there is only one active circuit judge on a panel. Such a situation leads to instability in circuit law because district court and court of appeals judges from outside the circuit may not know or may not feel bound by the law of that circuit. This section amends 28 U.S.C. 46(b) to require that each appellate panel have a majority of judges from the circuit court of that circuit. This provision would provide greater stability and predictability in the law being applied in any given area of the country. However, the bill does provide for an exception from the majority requirement when it is impossible to constitute a panel of a court of appeals composed of a majority of judges of that court because of judicial recusal or disqualification. For example, if all the judges of a court of appeals were disqualified under 28 U.S.C. § 455 (1976), it is essential that the chief justice retain the authority to designate and assign judges from other circuits in accordance with 28 U.S.C. § 291 (a) (1976) or 28 U.S.C. § 292 (e) (1976) to hear the case.

Current law permits appellate courts to sit in panels of less than three. As a result, some Federal appellate courts have used panels of two judges for motions and for disposition in cases in which no oral

24

argument is permitted because the case is classified as insubstantial. Because of apprehensions that decisions at the appellate level by fewer than three judges carry the risk of being less sound or less balanced, there is a widespread belief that every decision of an appeal should be the collective product of at least three minds. The bill amends 28 U.S.C. 46 (b) and (c) to require that all decisions be reached by at least three judges. Moreover, the bill provides the appellate courts with the flexibility to experiment with panels of more than three judges but less than a full en banc court when larger panels are deemed desirable.

JUDICIAL COUNCILS

*Section 121*

Section 121(a) governs the makeup of judicial councils. For the first time, it is provided that district court judges will be members of the council. The exact number of members and their method of selection is left to the judges of the various circuits. However, it is specifically provided that if the number of court of appeals judges is six or less, then the number of district court judges shall be no less than two. If the number of court of appeals judges is six or more, the number of district court judges may be no less than three. Members will serve for terms established by a majority vote of all judges of the circuit in regular active status.

The council is officially designated as the Judicial Council of the circuit.

The chief judge is required to submit the semiannual reports of the Director of the Administrative Office of the United States Courts to the council for such action as it may take.

The judicial council is empowered to make all necessary and appropriate orders for the effective and expeditious administration of justice within a circuit, hold hearings, take sworn testimony and issue subpoenas.

Subsection (b) adds a new subsection (g) to 28 U.S.C. 332 providing that the judicial council of the newly created Federal Circuit shall consist of all judges of the Court of Appeals for the Federal Circuit in regular active service and the chief judges of the United State Customs Court and the United States Claims Court. Subsection (g) also provides that there will be no circuit executive in the newly created Federal judicial circuit. The committee anticipates that in this small circuit the appointment of a circuit executive would be unnecessary. The court of appeals for the Federal judicial circuit can rely on its clerk of court and the Director of the Administrative Office for any necessary services. Neither the Court of Claims nor the Court of Customs and Patent Appeals has a circuit executive. Finally, this subsection clarifies that sections 332 and 333, concerning judicial conferences of the circuits, judicial councils of the circuits, and the appointment of circuit executives, do not apply to the United States Court of Tax Appeals. Each judge of this court will continue to be a judge of a court of appeals for a geographical circuit. The committee believes it would be unwise to burden these judges with additional and unnecessary administrative responsibilities.

Section 122 amends section 3006A(h)(2)(A) of title 18 of the United States Code by providing for the appointment of Federal

Public Defenders by the Court of Appeals rather than the judicial council. This is a technical amendment necessitated by the addition of district court judges to the judicial council, thus foreclosing the use of the legal fiction that councils are just the administrative extension of the court of appeals. Clause 2 in section 2 of United States Constitution Article II provides that Congress can vest the power to appoint inferior officers only in the President alone, the heads of [Executive] Departments, and the Courts of Law. Since Federal Public Defenders possess significant authority and exercise that authority generally without review by other officers of the Federal Government, it is essential that each defender be an "inferior officer" as distinguished from an "employee." *See* 5 U.S.C. §§ 2104, 2105 (1976).

<center>RETIREMENT AND PENSIONS</center>

*Section 131*

Section 131 conforms sections (a) and (b) of 28 U.S.C. 371 to provide the same standard for judicial resignation or retirement. A judge must now meet the criteria of having attained age 65 with fifteen years of service or age 70 with ten years of service, to be entitled to retire or resign at the salary of the office.

*Section 132*

The Federal judiciary includes a large number of capable and talented people whose skills, from time to time, may be needed in the executive branch. During recent years, several Federal judges have left the bench to serve in significant positions in the executive branch. Article III judges who resign or retire before the time limitations described in current 28 U.S.C. 371 give up a lifetime salary mandated by the Constitution, even though they had not been able to accrue funded pension benefits for these years of Federal service under the civil service program. As a result, for these former Federal judges, the acceptance of an executive branch position leaves them with potentially serious financial consequences.

Section 132 amends 5 U.S.C. 8332 to restate existing law that permits years of service on the Federal bench to be counted in computing civil service retirement benefits and amends 5 U.S.C. 8334 to allow the Administrative Office of the United States Courts to pay a deposit into the civil service retirement fund for Federal judges who resign to accept executive branch positions. These deposits will insure that these employees receive civil service pensions that take account of the years that such persons had served as Federal judges. The resulting pensions will still be considerably less than the salaries the judges would have received by remaining on the bench; nonetheless, this provision should help alleviate financial distress and would recognize the value of their years of judicial service. Although the annuity the Gov- will pay to the resigned judge after his executive branch service will constitute taxable income to him, the amendments this section makes ensure that the lump-sum deposit the Administrative Office makes to the Civil Service Retirement and Disability Fund will not constitute income in the year the deposit is paid. Such a consequence would distort the official's income and potentially subject him to unnecessary adverse income tax consequences.

TEMPORARY ASSIGNMENT OF JUSTICES AND JUDGES

*Section 141*

Section 141 authorizes an active or retired justice or judge of the United States to be assigned temporarily to the position of Administrative Assistant to the Chief Justice, Director of the Administrative Office of the United States Courts, or Director of the Federal Judicial Center, such service to be without any additional compensation.

Upon the appointment of an active judge to one of these positions, the President, by and with the advice and consent of the Senate, shall appoint a successor to fill the vacancy created by the temporary assignment. After the appointment of a successor, any further vacancy created by the death, resignation, or retirement of the judge who is temporarily assigned shall not be filled. If the judge temporarily assigned resumes active service, the first vacancy created on such court after his return to active service shall not be filled if a successor had been appointed and confirmed to fill the vacancy created by the temporary assignment.

The official station of any judge assigned a temporary position is the District of Columbia for the duration of his temporary assignment.

A judge who was in active service at the time of his temporary assignment may either resume his active service upon vacating his temporary assignment or assume active service as a judge in the circuit of the District of Columbia. For purposes of seniority and precedence, a judge who resumes active service on the original court shall be considered to have been in continuous active service as a judge of that court.

RULES OF PRACTICE

*Section 151*

Section 151(a) adds a new section 2077 to title 28 providing that rules for the conduct of business of each court of appeals, including the operating procedures of such court, shall be published.

Subsection (b) also requires that advisory committees be appointed to make recommendations to each court of appeals concerning its rules and internal operating procedures. It also requires the publication of these rules. The composition of these advisory committees is left for each court of appeals to determine. The use of these committees to assist the courts in developing their rules provides a means for the court to take into account the concerns of the bar and the public. Such committees will also provide a useful means of increasing the understanding of the bar and the public concerning the functioning of the courts. Although persons who serve on the advisory committees will receive no compensation for their services, except an individual who is otherwise an employee of the Government of the United States, the Director of the Administrative Office, in accordance with his travel regulations, may pay such persons travel expenses. In accordance with 5 U.S.C. § 5703 (1976), these expenses will include transportation expenses and a per diem in lieu of subsistence, or actual subsistence expenses under 5 U.S.C. § 5702(c), whenever the person is away from his home or regular place of business. Such committees will not require charters inasmuch as the Federal Advisory Committee Act, Pub. L. No. 92-463, 86 Stat. 770 (1972), applies only to the executive branch.

27

### TITLE II—JURISDICTION AND PROCEDURE

#### INTERLOCUTORY APPEALS

*Section 201*

Section 201 amends 28 U.S.C. 1292(b) to permit the circuit courts of appeals to entertain appeals from interlocutory orders in civil actions if, after a refusal by a district judge to certify the matter in accordance with the provisions of existing law, the court of appeals determines that an appeal "is required in the interests of justice and because of the extraordinary importance of the case."

#### TRANSFER OF CASES

*Section 211*

Because of the complexity of the Federal court system and of special jurisdictional provisions, a civil case may on occasion be mistakenly filed in a court that does not have jurisdiction. By the time the error is discovered, the statute of limitations or a filing period may have expired. Moreover, additional expense is occasioned by having to file the case anew in the proper court.

Section 211 adds a new chapter to title 28 that would authorize the court in which a case is improperly filed to transfer it to a court where subject matter jurisdiction is proper. The case would be treated by the transferee court as though it had been initially filed there on the date on which it was filed in the transferor court. The plaintiff will not have to pay any additional filing fees.

#### INTEREST

*Section 221*

Under current law, the interest rate granted on judgments during appeal is based on varying State laws and frequently falls below the contemporary cost of money. As a consequence, a losing defendant may have an economic incentive to appeal a judgment solely in order to retain his money and accumulate interest on it at the commercial rate during the pendency of the appeal.

Section 221 amends 28 U.S.C. 1961 by setting a realistic and nationally uniform rate of interest on judgments in the Federal courts. The provision would tie the postjudgment interest rate to the rate used by the Internal Revenue Service for delinquent taxes under 26 U.S.C. 6621. That rate is a composite of prime rates from throughout the country that is reviewed and revised periodically. Furthermore, by consolidating all the provisions for interest on judgments of Title 28 into this section, this rate becomes uniformly applicable to all litigation in the Federal courts.

There are presently no generally applicable guidelines concerning the award of prejudgment interest by Federal courts. Yet such interest may be essential in order to compensate the plaintiff or to avoid unjust enrichment of the defendant. For instance, a plaintiff who was unlawfully deprived of the use of $20,000 in 1976, and who did not receive a judgment until 1979, could have obtained $4,500 in the three-year intervening period by investing the money at seven percent compounded interest.

28

Section 221 amends 28 U.S.C. 1961 to permit interest for the prejudgment period to be awarded in cases in which it is necessary to compensate the plaintiff for his losses or to avoid unjust enrichment of the defendant. The award of such interest would be in the discretion of the district judge where the facts of the controversy and the manner in which the case was litigated indicate such an award would be appropriate. It is the view of the Committee that these qualifications on the discretion of the judge will afford the judge adequate flexibility in the award of prejudgment interest while ensuring that prejudgment interest will not be awarded automatically, but only where justified.

The section provides that interest be awarded from the time that the defendant became aware of his liability; if the defendant avoided formal knowledge of his liability, interest would run from the time of avoidance. In no case, however, would prejudgment interest run for more than five years, since even with current civil case backlogs, a delay of more than five years to judgment implies some delay on the part of the plaintiff which should not be rewarded with interest payments. The legislation also provides that interest on losses that do not occur until after judgment (for example, loss of future wages) and interest that would be duplicative of some other award would not be permitted. These provisions for prejudgment interest will serve not only to compensate plaintiffs more fairly but also to provide positive incentives to defendants to settle meritorious claims without delay.

TITLE III—APPELLATE STRUCTURE FOR PATENT, TRADEMARK, CUSTOMS, AND TRADE APPEALS

COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*Section 301*

Section 301(a) amends section 41 of title 28 of the United States Code by creating a twelfth judicial circuit of the United States, the United States Court of Appeals for the Federal Circuit, to review orders and judgments in selected categories of cases. The Federal Judicial Circuit comprehends all 95 judicial districts, including those of courts in the territories created by Act of Congress which are invested with any jurisdiction of a district court of the United States.

Section 301(b) amends section 44(a) of title 28, United States Code, by authorizing the President, with the advice and consent of the Senate, to appoint twelve judges for the United States Court of Appeals for the Federal Circuit. Tenure, residence, and salary provisions of section 44 that apply to Federal courts of appeals judges apply also to the judges of the Federal circuit, except that judges of that court must reside within fifty miles of the District of Columbia while in active service.

Section 301(c)(1) clarifies the language setting out where regular sessions of the courts of appeals may be held. Subsection (c)(2) designates the District of Columbia as the statutorily-prescribed place where regular sessions of the court of appeals for the Federal circuit shall be held. Subsection (c)(3) allows a court of appeals to hold special sessions at any place within its circuit as the nature of the business may require.

Attachment 4 - page 28 of 42

*Section 302*

As a transitional provision, section 302(a) provides that the judges of the United States Court of Claims and the United States Court of Customs and Patent Appeals on the effective date of the Act will continue in office as judges of the United States Court of Appeals for the Federal Circuit. Senior judges of the present Court of Claims and of the Court of Customs and Patent Appeals will be deemed for all purposes to be senior judges of the Court of Appeals for the Federal Circuit.

As a further transitional provision, section 302(b) provides that the first chief judge of the United States Court of Appeals for the Federal Circuit will be the chief judge of the Court of Claims or the chief judge of the Court of Customs and Patent Appeals, whoever has served longer as chief judge of the respective court. After the first chief judge of the Federal circuit vacates that position, the chief judge will be chosen by seniority of commission, in the manner prescribed for other United States courts of appeals under section 45 of title 28, United States Code.

Sections 302(c), 302(d), and 302(e) are technical amendments providing for the consistent usage of the term "panel" throughout 28 U.S.C. 46.

ESTABLISHMENT OF UNITED STATES CLAIMS COURT

*Section 311*

Under existing law, chapter 7 of title 28, United States Code, pertains to judges of the Court of Claims. Section 311 of the bill amends this chapter to apply instead to the judges of a newly constituted trial court, which will assume the functions of the trial division of the current Court of Claims. The current trial judges are much like magistrates and are appointed by the Court of Claims. The amended chapter is titled "United States Claims Court," and it provides as follows:

Subsection (a) of section 171 of title 28 authorizes the President to appoint, by and with the advice and consent of the Senate, sixteen judges who will constitute a court of record known as the United States Claims Court. The court will be established under article I of the Constitution of the United States. Because 28 U.S.C. 2509 of existing law gives the trial judges of the Court of Claims jurisdiction to hear congressional reference cases, which are not "cases and controversies" in the constitutional sense, and because the cases heard by the Claims Court are in many ways essentially similar to the limited jurisdiction cases considered by the tax court, judges of the Claims Court are made article I judges rather than article III judges.

Subsection (b) of section 171 of title 28 requires the Claims Court, at least biennially. to designate a judge to act as chief judge. This provision parallels procedure in the United States Tax Court. See 26 U.S.C. 7444(b).

Section 172 of title 28 fixes the tenure of the judges of the United States Claims Court as a term of fifteen years. The section also provides that the salary of the judges be determined under section 225 of the Federal Salary Act of 1967. subject to an annual cost of living adjustment in accordance with the Executive Salary Cost-of-Living Adjustment Act, 28 U.S.C. 461. Salaries of the current Court of Claims

30

commissioners and judges are determined under the Federal Salary Act of 1967.

Section 173 of title 28 authorizes the Claims Court to hold court anywhere within the jurisdiction of the United States, but it requires the court to establish the times and places of its sessions with a view toward minimizing inconveniences and expense to citizens. This latter provision is similar to the statutory requirement that the United States Tax Court set the times and places of its sessions in such a way as to expedite citizen access. See 26 U.S.C. 7446.

Section 174 of title 28 permits the judicial power of the Claims Court to be exercised by a single judge and requires the decisions of the Claims Court to be preserved and open for inspection. These provisions are identical to requirements governing the Customs Court. See 28 U.S.C. 254, 257. Although these will no longer be a published official reporter series, the committee anticipates that legal publishers who currently publish commercially the decisions of the Court of Claims will continue to publish the decisions of the new Claims Court.

Section 175 of title 28 sets the duty station of a judge of the United States Claims Court as the District of Columbia and provides that while in active service judges shall live within fifty miles of the District of Columbia.

Section 176 provides for removal from office of a judge of the Claims Court by a majority of the judges of the judicial council of the Federal judicial circuit.

Section 177 provides that a judge removed from office in this manner may not later practice law before the Claims Court. This provision parallels a similar section in the statute governing the tax court. See 26 U.S.C. 7443(g).

*Section 312*

Section 312 provides that, as a transitional measure, the persons who on the effective date of the Act are serving as commissioners of the United States Court of Claims will be judges of the United States Claims Court. Their initial terms of office will expire on September 30, 1985, at which time the President shall make appointments to such vacancies as exist in the court, by and with the advice and consent of the Senate. Currently, Congress has invested the United States Claims Court with the power to appoint 16 trial commissioners. 28 U.S.C. 792. Currently, there are 17 trial commissioners, including one re-employed annuitant. Although this one commissioner may be an annuitant, the committee intends that only the 16 commissioners in regular active service be folded in as judges of the Claims Court.

*Section 313*

Under existing law, chapter 9 of title 28, United States Code, concerns the Court of Customs and Patent Appeals (CCPA). As provided in section 302 of this Act, the judges and functions of the CCPA are transferred to the United States Court of Appeals for the Federal Circuit. The provisions of chapter 9 of title 28 will be no longer necessary since similar provisions found in chapter 3 of title 28 are applicable to the new court. Section 313 of the Act therefore repeals chapter 9 of title 28.

## Section 314

Under existing law, section 256(b) of title 28, United States Code, permits the chief judge of the Customs Court to authorize a judge of the court to preside in an evidentiary hearing in a foreign country. The subsection also permits an interlocutory appeal to be taken from such an order, subject to the discretion of the Court of Customs and Patent Appeals. Section 314(a) of the Act provides that the United States Court of Appeals for the Federal Circuit may, in its discretion, consider an interlocutory appeal from such an order.

Under existing law, section 219(b) of title 28, United States Code, authorizes the Chief Justice of the United States to designate and assign temporarily any circuit judge to serve as a judge of the Court of Claims or the Court of Customs and Patent Appeals, if the need arises. Because the Act transfers the judges and functions of these courts to the U.S. Court of Appeals for the Federal Circuit and the United States Claims Court, section 314(b) deletes existing subsection (b). Because the Court of Appeals for the Federal Circuit will be in all respects a United States court of appeals, the Chief Justice will be authorized under section 291(a) to designate a judge of that court to sit temporarily as a circuit judge in another circuit, or to assign temporarily a judge of another circuit to the Court of Appeals for the Federal Circuit.

Section 292(e) of title 28, United States Code, currently authorizes the Chief Justice of the United States to designate and assign temporarily any district judge to serve as a judge of the Court of Claims, the Court of Customs and Patent Appeals, or the Customs Court. Section 314(c) of the bill conforms this section to the other changes made by the bill.

Section 293 of title 28, United States Code, currently provides for temporary assignment of a judge from the Court of Claims to the Court of Customs and Patent Appeals or vice versa, and from the Court of Customs and Patent Appeals to the Customs Court or vice versa, and from the Customs Court to a district court. Section 314(d) amends section 293 of title 28 by deleting subsections (a), (c), and (d) which deal with the interchange of judges between the Court of Claims and the Court of Customs and Patent Appeals and between the Customs Court and the Court of Customs and Patent Appeals. The Act retains the provisions of subsections (b) and (e).

Section 314(e) amends section 331 of title 28, United States Code, which deals with the Judicial Conference of the United States, by deleting references to the Court of Claims and the Court of Customs and Patent Appeals. The Court of Appeals for the Federal Circuit is structurally similar to the regional courts of appeals, and, as such, becomes part of the Judicial Conference.

Section 372 of title 28, United States Code, concerns retirement of judges for disability and appointment of a substitute judge upon failure of a disabled judge to retire. Section 314(f) amends this section of the Code by deleting all references to the Court of Claims and the Court of Customs and Patent Appeals. The new appellate court is covered by the retained language.

32

Section 314(g) repeals section 415 of title 28, United States Code, which concerns distribution of copies of Court of Claims decisions, and amends the analysis at the beginning of chapter 19 of title 28, United States Code, to conform with the changes made by the previous sections. The committee believes that the dissemination of opinions in the publications of "quasi-official" publishers results in adequate distribution of decisions. The discontinuance of the nonessential "official reporter" will result in substantial cost savings to the Government.

Section 314(h) amends section 451 of title 28, United States Code, which defines certain terms used in title 28, by deleting all references to the Court of Claims and the Court of Customs and Patent Appeals. The retained language would cover the Court of Appeals for the Federal Circuit but not the article I Claims Court.

Section 314(i) amends section 456 of title 28, United States Code, concerning travel expenses of justices and judges, to clarify the provisions relating to official duty stations and to update references to obsolete laws. The clarification establishes our official duty stations for Article III judges and ensures that the official duty station will be that place where the Director provides chambers for the judge.

Section 314(j)(1) of the bill adds a new section 460 that makes sections 452 through 459 and section 462 of title 28, United States Code, applicable to the United States Claims Court and to certain territorial courts. These sections deal with general matters and provide that courts shall be deemed always open for certain procedural purposes; judges must take a prescribed oath before performing the duties of office; judges are prohibited from engaging in the practice of law; judges may be disqualified from participation in a proceeding in certain circumstances; records of the courts must be kept in a prescribed manner; relatives of a judge are ineligible for appointment to any office in the court in which the relative is a judge; and judges may administer oaths. Claims Court judges also will receive the same travel allowances as Article III judges.

"460. Application to other courts."

Section 314(k) amends chapter 21 of title 28, U.S.C., by adding a new section 462 concerning court accommodations and providing for necessary space for the Claims Court and the Court of Appeals for the Federal Circuit.

*Section 316*

Under existing law, suits in the Supreme Court and the Court of Claims are conducted and argued by the Attorney General and the Solicitor General, unless in a particular case the Attorney General directs otherwise. See 28 U.S.A. 518(a). Section 351(a) of the bill amends section 518(a) of title 28, United States Code, by deleting the reference to the Court of Claims and providing for argument by the Attorney General and Solicitor General in suits against the United States in the United States Court of Appeals for the Federal Circuit or in the United States Claims Court, unless the Attorney General directs otherwise.

Under current law, section 520 of title 28, United States Code, concerns transmission of copies of petitions in suits against the United States in the Court of Claims to the affected government department or

33

agency by the Attorney General. Section 315(b)(1) of the Act amends this section by deleting references to the Court of Claims and substituting a reference to suits against the United States in the United States Claims Court or in the United States Court of Appeals for the Federal Circuit. Section 315(b)(2) amends the section heading of section 520 of title 28 to reflect this change.

*Section 316*

Section 316(a) amends section 610 of title 28, United States Code, which defines "courts" for purposes of chapter 41 of title 28 concerning the Administrative Office of the United States Courts, by deleting references to the Court of Claims and the Court of Customs and Patent Appeals. The section inserts a reference to the United States Claims Court, thereby providing, among other things, that the budget of the Claims Court, its financial transactions, and its needs for personal property will be handled by the Administrative Office.

Section 316(b) amends 28 U.S.C. 713 to the appointive authority for librarians and their assistants for each court of appeals, including methods of removal.

Section 316(c) amends chapter 47 of title 28 by clarifying the language used to employ criers, messengers, and bailiffs.

It also provides for the first time for the appointment of staff attorneys and technical assistants in a new section 715. In recent years, many of the regional courts of appeals have found it necessary to utilize central staff attorneys, but they have done so without specific statutory authorization. Similarly, despite a lack of explicit statutory authorizations, the judges of the present Court of Customs and Patent Appeals have found it necessary to hire technical advisers to assist them in resolving cases. These advisers are lawyers who have technical degrees and experience in a scientific or engineering field or in patent law in addition to their legal training. The service of these advisers is identical to that of a law clerk, except that they confer with the judges on technical as well as legal matters. Judges of the United States Court of Appeals for the Federal Circuit need a similar system of technical advisers when they review patent cases, and judges of other United States courts of appeals could frequently benefit from the use of technical advisers. It is anticipated that the judges of the Court of Appeals for the Federal Circuit will receive technical assistance at least as great as the type and quality currently being given to the Court of Customs and Patent Appeals.

For several years, annual appropriation acts have invested the chief judge of each court of appeals with the authority to appoint a senior law clerk. *See, e.g.,* Judiciary Appropriation Act, 1979, Pub. L. No. 95-431, title IV, 92 Stat. 1037. However, Congress has not invested the Courts of Appeals with authority to appoint additional staff attorneys. Unlike the executive branch, there is no general statute granting courts appointive authority. *Cf.* 5 U.S.C. 3101. The Committee notes that the courts continue to make appointments in the absence of a Congressional grant of authority. See 5 U.S.C. 5502(a). While the Committee proposes to invest the officers of the court with the authority to appoint staff attorneys and technical assistants subject to certain restrictions, it is not its intent to ratify the actions of the courts in purporting to appoint employees in the absence of the requisite statutory authority not found in an appropriation act.

Attachment 4 - page 33 of 42

34

*Section 317*

Section 317 provides a retirement system for judges of the United States Claims Court. It is modeled after the bankruptcy judges' retirement provisions and would provide an annuity for a Claims Court judge with respect to his service as a judge of the United States Claims Court, and his military service not exceeding five years, by multiplying 2½ percent of his average pay by years of that service. This represents a substantial increase over existing civil service retirement provided to Commissioners of the Court of Claims, but falls below the retirement provisions accorded article III, life tenure judges.

COURT OFFICERS AND EMPLOYEES OF THE UNITED STATES CLAIMS COURT

*Section 321*

Under existing law, chapter 51 of title 28, United States Code, concerns Court of Claims staff and reporting procedures. Section 321 of the Bill amends chapter 51 to establish staff and reporting procedures for the United States Claims Court. Chapter 51 of title 28 provides as follows:

Section 791 of title 28 would authorize the Claims Court to appoint a clerk, deputy clerk, and such other employees as may be necessary for the effective conduct of the business of the court. Each of these employees would be subject to removal by the court.

Section 792 of existing 28 U.S.C. relates to the appointment of commissioners by the Court of Claims. As a corollary to the abolishment of the Court of Claims, section 792 is repealed.

Section 794 of title 28 would authorize the judges of the Claims Court to appoint necessary law clerks, subject to any aggregate salary ceilings imposed by law and the regulations of the Judicial Conference of the United States. This provision is similar to section 752 of title 28 which concerns law clerks and secretaries for district court judges.

Section 795 of title 28 concerns the appointment and duties of bailiffs and messengers for the Claims Court and is similar to existing law concerning the Court of Claims.

Section 796 of title 28 concerns the reporting of Claims Court proceedings and is identical to existing law concerning the reporting of Court of Claims proceedings.

Section 797 of existing 28 U.S.C. relates to the recall of retired commissioners of the Court of Claims. Because the Court of Claims is abolished, section 797 is repealed.

*Section 322*

Section 322(a) of the Bill repeals chapter 53 of title 28 which, under existing law, concerns appointment and duties of employees of the Court of Customs and Patent Appeals.

Section 957 of title 28, United States Code, provides that certain employees of the district court are not eligible for certain offices in the court's administrative structure. Section 322(b) amends this section by deleting subsection (b), which concerns the clerk or assistant clerks of the Court of Customs and Patent Appeals, and by striking subsection designation "(a)".

35

*Section 323*

Section 323 repeals sections 1255 and 1256 of title 28, United States Code, which under existing law provide for Supreme Court review of cases in the Court of Claims and the Court of Customs and Patent Appeals. Review of cases in the new appellate court is covered by 28 U.S.C. 1254, which establishes procedures for Supreme Court review of cases in the circuit courts of appeals.

Section 323 also amends the analysis at the beginning of chapter 81 of title 28, United States Code, to conform with the repeal of sections 1255 and 1256, and conforms 28 U.S.C. section 1336 relating to Interstate Commerce Commission orders.

*Section 324*

Section 1291 of title 28, United States Code, is amended to make explicit that the jurisdiction of the Court of Appeals for the Federal Circuit and of the United States Court of Tax Appeals is limited to the jurisdiction set forth in sections 1295 and 1296, respectively.

Section 1294 of title 28, United States Code, sets forth the regional courts of appeals to which appeals from reviewable decisions of the district and territorial courts are to be taken. Section 324(b) of the Act amends this section by providing an exception from these provisions for the cases covered by new sections 1295 and 1296; those appeals will be assigned exclusively to the Court of Appeals for the Federal Circuit and the United States Court of Tax Appeals, respectively.

*Section 325*

Section 1292 of title 28, United States Code, currently gives the regional courts of appeals jurisdiction of interlocutory orders of the district courts concerning injunctions and of judgments in civil actions for patent infringement which are final except for an accounting. Section 325 of the Bill amends this section to give the Court of Appeals of the Federal Circuit jurisdiction of interlocutory appeals in cases that will otherwise come to it on appeal.

*Section 326*

Section 326(a) of the Act adds a new section 1295 to chapter 83 of title 28, United States Code. Section 1295 establishes the jurisdiction of the United States Court of Appeals for the Federal Circuit as follows:

Subsection (1) of new section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal in which district court jurisdiction was based, in whole or in part, on section 1338 of title 28 (which confers on the district court original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks), except that appeals of district court decisions in cases involving copyrights or trademarks and none of the other issues will continue to go to the regional appellate courts, pursuant to section 1294 of title 28.

Subsection (2) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal from a district court

**Attachment 4 - page 35 of 42**
859

36

where the jurisdiction of the district court was based, in whole or in part, on section 1346 of title 28, United States Code, except that an appeal in a case brought in a district court under sections 1346(a) and (f) (tax appeals) will go to the new Court of Tax Appeals, and an appeal in a case brought under section 1346(c) (Tort Claims Act) will continue to go to the regional courts of appeals. The Bill modifies section 1346 to bring all other civil cases in which the United States is a defendant under centralized appellate review. Because cases brought under the Federal Tort Claims Act frequently involve the application of State law, those appeals will continue to be brought to the regional courts of appeals.

Subsection (3) of section 1295 of title 28 gives the United States Court of Appeals for the Federal Circuit jurisdiction of any appeal from the United States Claims Court. As provided in the Bill, the jurisdiction of the claims court would be identical to the trial jurisdiction of the existing court of claims, except that it would no longer have authority to handle tax refund cases or cases brought under the Federal Tort Claims Act. Only one case under the Federal Tort Claims Act has ever been filed in the Court of Claims, and that case was dismissed pursuant to 28 U.S.C. 1504 because the appellees failed to consent to the filing of the suit in the Court of Claims.

Subsection (4) of section 1295 of title 28 gives the United States Court of Appeals for the Federal Circuit jurisdiction of appeals from decisions of the Board of Appeals and the Board of Patent Interferences of the Patent and Trademark Office as to patent applications and interferences; from decisions of the Commissioner of Patents and Trademarks as to trademark applications and proceedings; and of appeals in patent and trademark cases brought in a Federal district court under 35 U.S.C. 145 or 146. Under existing law, jurisdiction of appeals from these decisions is in the Court of Customs and Patent Appeals. See 28 U.S.C. 1542. The purpose of placing jurisdiction of these appeals in the United States Court of Appeals for the Federal Circuit is to centralize patent appeals in a single forum and, as a result, to promote uniformity in the application of the law. The provisions of existing law entitling litigants in trademark and patent matters to de novo review in the district court remain unchanged.

Subsection (5) of section 1295 would transfer jurisdiction of appeals from decisions of the United States Customs Court to the new court. Currently, jurisdiction of such appeals is in the Court of Customs and Patent Appeals, pursuant to section 1541 of title 28, United States Code.

Subsection (6) of section 1295 of title 28, gives the United States Court of Appeals for the Federal Circuit jurisdiction to review, by appeal on questions of law only, findings of the United States International Trade Commission as to unfair trade practices in import trade. Jurisdiction of these appeals is in the Court of Customs and Patent Appeals under existing law. See 28 U.S.C. 1543.

Subsection (7) of section 1295 of title 28 gives the United States Court of Appeals for the Federal Circuit jurisdiction to review, by appeal on questions of law only, certain findings of the Secretary of Commerce. Currently, jurisdiction of these appeals is in the Court of Customs and Patent Appeals, pursuant to section 1544 of title 28, United States Code.

37

Subsection (8) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of appeals under section 71 of the Plant Variety Protection Act (7 U.S.C. 2461). Under existing law, the Court of Customs and Patent Appeals has jurisdiction of these appeals, pursuant to section 1545 of title 28, United States Code.

Subsection (9) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal from a final order or final decision of the Merit Systems Protection Board. Currently, jurisdiction of these appeals is in the Court of Claims or a United States court of appeals, pursuant to sections 7703(b)(1) and 7703(d) of title 5, United States Code.

UNITED STATES AS DEFENDANT

*Section 331*

Under existing law, section 1346 of title 28, United States Code, gives the district courts original jurisdiction, concurrent with the court of claims, of civil tax refund cases and of other civil actions or claims against the United States, under $10,000 in amount, and founded on the Constitution, an Act of Congress, a regulation of an executive department, an express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. Section 331 of the bill eliminates the jurisdiction over civil tax refund cases, but otherwise continues this concurrent jurisdiction over other matters, while changing the reference to the Court of Claims to a reference to the United States Claims Court.

*Section 332*

Section 1398(b) of current title 28 provides that a civil action to enforce, enjoin, or suspend any order of the Interstate Commerce Commission made pursuant to a referral of a question or issue by a district court to the Court of Claims must be brought in the court which referred the question or issue. Section 332(a) of the Bill amends this subsection by deleting the reference to the Court of Claims and substituting a reference to the Claims Court.

Section 1406(b) of title 28, United States Code, provides that if a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall transfer the case to the Court of Claims. Section 332(b) of the Bill amends this provision by removing references in the section to the Court of Claims and substituting references to the claims court, thereby permitting similar transfers from the district courts to the newly constituted trial court.

UNITED STATES CLAIMS COURT; JURISDICTION AND VENUE

*Section 341*

Section 341 of the Act amends chapter 91 of title 28, United States Code. Under existing law, this chapter sets forth the jurisdiction of the Court of Claims. With the exception of civil tax refund cases noted above and Federal Tort Claims Act cases noted below, claims court jurisdiction is identical to Court of Claims jurisdiction.

One provision of existing law has not been included in amended chapter 91. Under current section 1504 of title 28, United States Code, the Court of Claims has jurisdiction to review Federal Tort Claims

38

Act cases with the consent of both parties. According to the Administrative Office of the United States Courts, the only such appeal ever filed was summarily dismissed because the appellee had not consented to have the appeal heard in the Court of Claims. Section 1504 was therefore omitted.

In addition, section 341 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in controversies within its jurisdiction. This provision will for the first time give the court specializing in certain claims against the Federal Government the ability to grant litigants complete relief. The committee concluded that this provision will avoid the costly duplication in litigation presently required when a citizen seeks both damages and equitable relief against the Government.

*Section 342*

Under existing law, chapter 93 of title 28, United States Code, establishes the jurisdiction of the Court of Customs and Patent Appeals. Because these functions are being transferred to the United States Court of Appeals for the Federal Circuit, section 342 of the Act repeals chapter 93 of title 28 and amends the analysis at the beginning of Part IV of title 28 so that it is conformed accordingly.

*Section 343*

Section 343 of the Bill repeals section 1926 of title 28, United States Code, which deals with fees and costs in the Court of Customs and Patent Appeals, and amends the analysis at the beginning of chapter 123 of title 28 so that it is conformed accordingly.

*Section 344*

Section 344 of the Bill repeals section 2110 of title 28, United States Code, which deals with the time for appeal to the Court of Claims in tort claims cases, because of the omission from amended chapter 91 of current section 1504 of title 28. The analysis at the beginning of chapter 133 of title 28 is amended to reflect this repeal.

*Section 345*

Section 345 repeals 28 U.S.C. 2353 since jurisdiction over such appeals is vested exclusively in the Court of Appeals for the Federal Circuit.

UNITED STATES CLAIMS COURT PROCEDURE

*Section 351*

Under existing law, chapter 165 of title 28 establishes procedures for the Court of Claims. Section 351 amends this chapter to make the provisions applicable to the United States Claims Court. With the exception of technical changes made to convert the name of the court from the Court of Claims to the Claims Court and to eliminate references to the trial commissioners of the Court of Claims, these provisions are identical to existing law.

*Section 352*

Section 352 of the bill repeals chapter 167 of title 28, United States Code, which under existing law establishes procedures for the Court of Customs and Patent Appeals. The repeal of this chapter will re-

39

quire certain changes in the procedure of taking an appeal from decisions of the Customs Court. Under current practice, pursuant to section 2601 of chapter 167 of title 28, an appeal is made by filing a notice of appeal in the Court of Customs and Patent Appeals. On the other hand, appeals from a decision of the district courts is made by filing a notice of appeal in the district court. Upon the repeal of chapter 167 of title 28, appeal from a decision of the Customs Court will be made by filing a notice of appeal in the Customs Court. The clerk of the Customs Court will then be required to transmit to the United States Court of Appeals for the Federal Circuit the record of the case and evidence taken, together with either the findings of fact and the conclusions of law or the opinion.

*Section 353*

Under existing law, section 2638(b) of title 28, United States Code, states that decisions of the Customs Court are to be appealed to the Court of Customs and Patent Appeals within the time and in the manner prescribed by section 2601 of title 28, which deals with procedures in the Court of Customs and Patent Appeals. Section 353 of the Bill amends section 2638(b) of title 28 to provide that appeal of a decision of the Customs Court is to be made to the United States Court of Appeals for the Federal Circuit within sixty days after entry of the judgment or order. Further procedures governing appeals from decisions of the Customs Court will be determined by the Court of Appeals for the Federal Circuit by rule of court.

*Section 354*

Section 354 conforms the Federal Rules of Evidence to refer to the Claims Court.

TITLE IV—TAX APPELLATE STRUCTURE

*Section 401*

Section 401(a) creates the United States Court of Tax Appeals and declares that such court should be national, encompassing all eleven Federal judicial circuits.

Section 401(b) provides the procedure by which the members of the new tax court will be chosen. The bill provides that the new court shall consist of eleven Federal circuit judges, with one judge being designated from each circuit. The Chief Justice of the United States designates one of the circuit judges from each circuit court. In any case where the Chief Justice is unsuccessful in designating a circuit judge, this section provides the option of designating a district court judge from the circuit. The bill also provides—in express terms—that a circuit judge who serves on the new tax court continues to remain a judge of the circuit court from which he was designated. The committee intends that each judge designated to serve on the Court of Tax Appeals will maintain his chambers and his official duty station in his home circuit or district. The committee also anticipates that each designated judge will continue to carry such caseload from his court of appeals or district court as he is capable of doing, consistent with his caseload from the Court of Tax Appeals.

Section 401(c) provides that the new tax court shall hold at least one term or session per year in each of the circuits. The bill also pro-

40

vides that the court should hear appeals in the judicial circuit where the tax payer is domiciled, or, in the case of corporations, in the circuit where the corporation has its principal place of business, or, in the case of a cooperative or organization claiming a tax exemption, in the circuit which constitutes its principal place of activity.

*Section 402*

Section 402(a) provides that the first chief judge of the new Tax Court shall be appointed by the Chief Justice of the United States from the eleven members of the new court. Thereafter, seniority of commission will determine subsequent chief judges of the new tax court.

Section 402(b) provides that tax court panels shall consist of at least three judges but that the court may decide on panels of more than three. In addition, six of the eleven judges of the court can call for an en banc rehearing if they determine "that it is in the interest of justice." At least nine judges are required to hear a case en banc. In considering whether or not to hear a case en banc, the bill provides that the judges should consider—but need not limit their consideration to—

> 1. whether the question presented in the case was thought to be novel and unlikely to recur or was likely to apply to many taxpayers;
> 2. whether there was unanimity in the panel which decided the case;
> 3. whether any of the judges who composed the panel which heard the case suggested that it be reheard; and
> 4. whether the case presented issues of first impression.

Section 402(c) provides that the Chief Justice of the United States may—in a particular case—designate and temporarily assign a Federal district judge to serve on the United States Court of Tax Appeals. This section also provides that the Director of the Administrative Office of the United States Courts shall file a report with the President and the two Judiciary Committees of the Senate and the House of Representatives "concerning the implementation and effectiveness of the United States Court of Tax Appeals." Such report shall be filed on or about January 1, 1985, and is designed to provide the President and the Congress with an update as to the effectiveness and success of the new tax court structure.

*Section 403*

Section 403 provides that appeals from the Court of Tax Appeals may be reviewed by the Supreme Court of the United States by writ of certiorari.

*Section 404*

Section 404 provides that the jurisdiction of the United States Court of Tax Appeals is exclusive over any civil tax appeal from a district court or the United States Tax Court.

*Section 405*

Section 405 precludes the United States Court of Tax Appeals from exercising any appellate jurisdiction over orders of Federal agencies.

Section 406 amends chapter 47 of title 28 of the United States Code by adding a new section 716 enumerating the officers and employees of the Court of Tax Appeals.

**Attachment 4 - page 40 of 42**

41

Section 407 amends section 462 of title 28, U.S.C., by adding a new subsection instructing the Director of the Administrative Office of the United States Courts to provide permanent accommodations for the United States Court of Tax Appeals in the District of Columbia. Inasmuch as the judges of the Court of Tax Appeals will be maintaining their chambers and official duty stations in their home circuits and districts, the need for new accommodations will be mineral. However, section 407 provides that any permanent accommodations will be in the District of Columbia, which is the location of the court's clerk.

TITLE V—TECHNICAL AND CONFORMING AMENDMENTS OUTSIDE OF TITLE 28 RELATING TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT AND THE UNITED STATES COURT OF TAX APPEALS

*Section 501*

Section 501 amends section 356(c) of title 2, United States Code, which concerns salaries for judges under the Federal Salary Act of 1967, by including the judges of the United States Claims Court within the provisions of that subsection.

*Sections 502 through 508 and 510 through 514—Technical amendments*

Sections 502 through 508 and 510 through 514 of the Act amend sections of the United States Code outside title 28 by changing references to the Court of Claims, the Court of Customs and Patent Appeals, or the courts of appeals of the United States to references to the United States Claims Court, the United States Court of Appeals for the Federal Circuit, or the United States Court of Tax Appeals, whichever is appropriate in a specific context. The sections also delete references to the Court of Claims, the Court of Customs and Patent Appeals, or the trial commissioners or chief judge of the Court of Claims, wherever that is appropriate. Among other things, these amendments make clear that cases coming previously to the former Indian Claims Commission will be heard by the Claims Court, in accord with recent congressional action.

Section 7456(c) of the Internal Revenue Code of 1954 (26 U.S.C. section 7456(c)) under existing law provides that commissioners of the tax court receive the same compensation and travel and subsistence allowances as that provided by law for commissioners of the court of claims. Because the Bill abolishes the position of commissioner of the Court of Claims, section 508(c) amends this section to provide that each Tax Court commissioner receives pay at an annual rate determined under section 225 of the Federal Salary Act of 1967 (2 U.S.C. sections 351–361), as adjusted, and be reimbursed for all necessary traveling expenses in accordance with chapter 57 of title 5, United States Code.

*Section 509—Amendment conforming section 713 of title 44*

Section 713 of title 44, United States Code, concerns the printing and distribution of Journals of the Senate and House of Representatives. Under present law, 822 copies of the Journals are printed, and two copies of the Journals are distributed to the Court of Claims. Section 514 of the Bill reduces the number of Journals printed to 820 and deletes the reference to the court of claims.

Attachment 4 - page 41 of 42

42

## TITLE VI—MISCELLANEOUS PROVISIONS

*Section 601—Effective date*

This section provides that the Bill—other than the provisions of title I, parts A and D—shall take effect two years after enactment. The delay is intended to provide time for planning the transition and for permitting the bar to become familiar with the provisions.

*Section 602—Effect on pending cases*

This section provides for the orderly disposition of cases pending on the effective date of the Bill.

O

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| UNITED STATES,<br>      Plaintiff-Appellee | ) ) ) | |
| v. | ) ) | No. 17-1713 |
| WILEY R. KUYRKENDALL,<br>      Defendant-Appellant | ) ) ) ) ) | |
| GREENBRIAR HOLDINGS, *et al.*,<br>      Defendants | ) ) ) | |

## APPELLEE'S MOTION TO TRANSFER APPEAL TO THE FIFTH CIRCUIT AND HOLD BRIEFING IN ABEYANCE

The United States, appellee herein, by its undersigned counsel, moves this Court to transfer this appeal to the United States Court of Appeals for the Fifth Circuit, where jurisdiction and venue properly lie. The Government also requests that briefing be held in abeyance while the Court considers this motion. The reasons for this motion are set forth below.

15233991.6

-2-

## STATEMENT

This is an appeal brought by Wiley R. Kuyrkendall from the November 21, 2016, final judgment of the United States District Court for the Southern District of Mississippi.    (Doc. 68.[1])

Prior to this civil action, in August 2009, a jury convicted Kuyrkendall of four counts of failing to file federal income tax returns, under I.R.C. § 7203, for tax years 2002 through 2005.    *United States v. Kuyrkendall*, No. 3:09-cr-18 (S.D. Miss.).    In a related case, he pleaded guilty, in October 2009, to two counts of criminal contempt, under 18 U.S.C. § 401(3).    *United States v. Kuyrkendall*, No. 3:09-cr-117 (S.D. Miss.).    He was sentenced to a total of 46 months in prison.

On September 25, 2014, the United States filed its complaint in this case (Doc. 1), seeking to reduce to judgment (pursuant to I.R.C. § 7402) Kuyrkendall's unpaid federal tax liabilities for tax years 2001 and 2002, and to foreclose the federal tax liens on certain parcels of real

---

[1]    "Doc." references are to the documents in the original record, as numbered by the Clerk of Court for the Southern District of Mississippi in Case No. 3:14-cv-751.    "I.R.C." references are to the Internal Revenue Code, 26 U.S.C.

152339991.6

-3-

property.    The Government filed an amended complaint on October 15,
2014.    (Doc. 3.)    Pursuant to I.R.C. § 7403, the Government named as
defendants people and entities, in addition to Kuyrkendall, who may
have claimed an interest in the properties at issue.    The other
defendants in this action did not join in the notice of appeal.    (*See* Doc.
70.)

In due course, the Government filed a motion for summary
judgment.    (Docs. 44-45.)    Kuyrkendall thereafter filed a motion to
dismiss, in which he appeared to argue that the District Court lacked
subject-matter and personal jurisdiction.    (Docs. 48-49; *see* Doc. 64 at 3.)
The court denied Kuyrkendall's motion and granted summary judgment
in the Government's favor.    (Doc. 64.)    The court concluded that it had
personal jurisdiction over Kuyrkendall because he is a resident of the
State of Mississippi, and the court observed that Kuyrkendall's
"challenge to subject matter jurisdiction is based on frivolous tax defier
arguments, much of which are unintelligible."    (*Id.* at 3.)

With respect to the Government's motion for summary judgment,
the court noted that Kuyrkendall admitted that he did not file a federal

152339916

-4-

income tax return for 2001 or 2002.  (*Id.* at 4.)  The Internal Revenue Service assessed his income tax liabilities for those years, and satisfied its burden of demonstrating the validity of the tax assessments.  (*Id.* at 5.)  Kuyrkendall "[did] not dispute the validity of the assessments," and instead "advance[d] meritless tax defier contentions."  (*Id.* at 5.)  Inasmuch as there was no genuine issue of material fact regarding whether Kuyrkendall was liable for the unpaid tax liabilities for 2001 and 2002, the court entered judgment in favor of the United States in the amount of $434,050.44, plus interest and statutory additions.  (*Id.* at 5; Doc. 68.)  One parcel of real property listed in the Government's amended complaint was sold during the District Court proceedings, and the court ordered foreclosure of the federal tax liens against the remaining parcel.  (Doc. 64 at 5-7; Doc. 69.)  On November 21, 2016, the court entered final judgment (Doc. 68), as well as a decree of foreclosure and order of sale (Doc. 69).

Kuyrkendall filed a notice of appeal on a form that the District Court provided for appeals to this Court.  (Doc. 70.)  The District Court Clerk's Office understandably transmitted the notice of appeal to the

-5-

Fifth Circuit, where this appeal should proceed.   But an annotation on the District Court docket, entered February 2, 2017, stated that the appeal was transmitted to the Fifth Circuit "in error," and that the case was "being re-transmitted to the U.S. Court of Appeals for the Federal Circuit."   On that same day, however, the Fifth Circuit Office of the Clerk issued a letter to Kuyrkendall, advising him that his appeal would continue in that court, unless he filed a motion to dismiss.   The Fifth Circuit docketed the appeal as No. 17-60031, and issued a briefing schedule.

Kuyrkendall thereafter moved to dismiss the appeal in the Fifth Circuit, stating that he viewed this Court as the only appellate court with jurisdiction over the appeal.   The Fifth Circuit accordingly dismissed the appeal, and this Court docketed the instant appeal on March 1, 2017.   But, as discussed *infra*, this Court lacks jurisdiction to review the District Court's decision, and the appeal should be transferred to the Fifth Circuit, where the appeal may be heard.

152339991.6

-6-

## DISCUSSION

### The Fifth Circuit has jurisdiction, and is the proper venue for this appeal.

This Court's jurisdiction to review final decisions and certain interlocutory orders of the federal district courts is limited to review of those decisions and orders set forth in 28 U.S.C. §§ 1292(c) and (d), and 1295.  28 U.S.C. § 1291.  This Court lacks jurisdiction to review Kuyrkendall's appeal, because the District Court's decision in this case does not fall within any of those statutory provisions.  Indeed, although this Court has jurisdiction to review tax refund suits decided by the Court of Federal Claims, see 28 U.S.C. §§ 1295 and 1346(a)(1), it does not have jurisdiction of an appeal in a case such as this one, where the Government brought suit in a federal district court to collect unpaid taxes.  *See* 28 U.S.C. §§ 1291, 1292 (c) and (d), 1295.  Rather, such a case is governed, as relevant here, by 28 U.S.C. §§ 1291 and 1294.  *Id.*

Under 28 U.S.C. § 1291, "[t]he courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States."  Moreover, 28 U.S.C. § 1294 provides that "appeals from

152339916

-7-

reviewable decisions of the district and territorial courts shall be

taken . . . [f]rom a district court of the United States to the court of

appeals for the circuit embracing the district."   28 U.S.C. § 1294(1).

The decision at issue here was entered by the United States District

Court for the Southern District of Mississippi, and that district is located

(*i.e.*, "embrace[d]") within the Fifth judicial circuit.   28 U.S.C. § 41.

Accordingly, jurisdiction for this appeal (as well as venue) lies in the

United States Court of Appeals for the Fifth Circuit.

Under 28 U.S.C. § 1631, this Court "shall, if it is in the interest of

justice," transfer this appeal "to any other court in which the . . . appeal

could have been brought at the time it was filed or noticed."   In this

case, that court is the Fifth Circuit, and the United States therefore asks

this Court to transfer the appeal to the Fifth Circuit.

The Government notes that Kuyrkendall's informal opening brief is

due on April 22, 2017.   To preserve judicial resources and promote the

efficient resolution of this case, we request that briefing be held in

abeyance pending the disposition of the instant motion.

152339915

-8-

Counsel for the Government sought the views of Kuyrkendall on this motion, and he opposes the motion to transfer venue.

## CONCLUSION

For the foregoing reasons, this appeal should be transferred to the Fifth Circuit, and the current briefing schedule should be held in abeyance while this Court considers this motion.

Respectfully submitted,

DAVID A. HUBBERT
*Acting Assistant Attorney General*

/s/ Norah E. Bringer

JONATHAN S. COHEN          (202) 514-2970
NORAH E. BRINGER          (202) 307-6224
*Attorneys*
*Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*
Norah.E.Bringer@usdoj.gov

Dated: March 16, 2017

15233991.6

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

UNITED STATES,                          )
          Plaintiff-Appellee          )
                           )
          v.                    )    No. 17-1713
                           )
WILEY R. KUYRKENDALL,                    )
          Defendant-Appellant          )
                           )
                           )
                           )
GREENBRIAR HOLDINGS, *et al.*,          )
          Defendants                  )
_____)

## DECLARATION

I, Norah E. Bringer, of the Department of Justice, Washington,
D.C., state as follows:

1. I am an attorney employed in the Appellate Section of the Tax
Division, United States Department of Justice, and in that capacity I
have been assigned the primary responsibility for handling the
above-captioned case on behalf of the appellee.

15233991.6

2. The facts set forth in the accompanying motion are true to the best of my knowledge and belief.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.   Executed on March 16, 2017, in Washington, D.C.

/s/ Norah E. Bringer
NORAH E. BRINGER

15233991.6

## CERTIFICATE OF SERVICE

It is hereby certified that, on March 16, 2017, I caused the

foregoing documents to be electronically filed with the Clerk of Court for

the United States Court of Appeals for the Federal Circuit using the

appellate CM/ECF system.

I further certify that I have caused the foregoing documents to be

mailed by first-class mail, in an envelope addressed to the appellant at

the following address:

> Mr. Wiley R. Kuyrkendall
> 200 Grandview Court
> Pearl, MS 39208

> /s/ Norah E. Bringer
> Norah E. Bringer
> *Attorney*

15233991.6





WASHINGTON, D. C.
July, 1948

## NEW TITLE 28—UNITED STATES CODE
## JUDICIARY AND JUDICIAL PROCEDURE

Not since 1911 has Congress passed a bill of such epochal importance to the bench and bar as H.R. 3214 revising laws relating to the Federal judiciary and judicial procedure.

This revision of Title 28 of the United States Code ranks in importance with the Judiciary Act of 1789, the Revised Statutes of 1873–74 and the Judicial Code of 1911.

As a special service to those who administer justice from the bench and at the bar, this pamphlet includes the most authoritative and complete legislative history yet published in connection with a Federal law. Special attention is directed to the table of contents in which is enumerated historical and interpretive aids to a study of the new Title 28 as set out in this pamphlet.

### OUTLINE OF HISTORY

Early in 1944 work on the revision of Title 28 was commenced under the direction of the House Committee on Revision of the Laws. The work was done by the West Publishing Company, of St. Paul, Minnesota, and the Edward Thompson Company, of Brooklyn, New York, compilers of the United States Code. The editorial staffs of these two companies were augmented by expert revisers and consultants, and assisted by an Advisory Committee of distinguished judges and lawyers.

A copyrighted Feature of the U. S. Code Congressional Service

1

NEW TITLE 28—UNITED STATES CODE

The Advisory Committee held its first meeting at Brooklyn, New York, on February 5, 1945, and reviewed the work then completed which comprised Part I of the proposed title.

On May 28, 1945, the Advisory Committee met at Hershey, Pennsylvania, and reviewed the work then completed which comprised Parts I–IV of the proposed title.

Congressman Keogh, Chairman of the House Committee on Revision of the Laws, introduced H. R. 3498 in the seventy-ninth Congress, on June 19, 1945, incorporating Part I of revised Title 28. The bill was referred to such Committee, but no Committee action was taken.

On December 3, 1945 the Advisory Committee met at Washington, D. C., and reviewed the completed revision.

The fourth and final meeting of the Advisory Committee was held at Washington, D. C., on April 1–3, 1946, at which time further recommendations and proposed changes were reviewed.

On July 24, 1946, Congressman Keogh reported an original bill, H. R. 7124, in the seventy-ninth Congress, containing the completed revision, which was committed to the Committee of the Whole House on the State of the Union. House Report No. 2646, July 24, 1946, to accompany the bill, was printed and issued by the House Committee on Revision of the Laws, but the seventy-ninth Congress ended before any further action was taken.

The late Congressman Robsion, Chairman of Subcommittee No. 1 of the House Judiciary Committee, introduced H. R. 2055 in the Eightieth Congress, a successor bill to H. R. 7124, and incorporating laws enacted subsequently to the introduction of H. R. 7124 in the prior Congress. The bill was referred to the House Judiciary Committee which, in the reorganization of Congressional committees, had absorbed the previous House Committee on Revision of the Laws.

Subcommittee No. 1 of the House Judiciary Committee held a hearing on H. R. 2055, on March 7, 1947.

On April 22, 1947, the House Judiciary Committee reported favorably on H. R. 2055, but recommended a substitute bill, H. R. 3214, incorporating additional changes.

Congressman Robsion introduced H. R. 3214 in the Eightieth Congress on April 25, 1947, which was referred to the House Judiciary Committee, and committed to the Committee of the Whole House on the State of the Union. House Report No. 308, April 25, 1947, to accompany H. R. 3214, 80th Congress, was printed and issued by the House Judiciary Committee.

H. R. 3214, with amendments, was passed in the House on July 7, 1947, and was referred to the Senate Judiciary Committee.

ii

JUDICIARY AND JUDICIAL PROCEDURE

A subcommittee of the Senate Judiciary Committee, with Senator Donnell of Missouri as Chairman, held hearings on H. R. 3214, on April 22–24, 1948.

On June 9, 1948, the Senate Judiciary Committee reported out H. R. 3214, with amendments, accompanied by Senate Report No. 1559.

The bill, with amendments, was passed by the Senate on June 12, 1948, followed by a motion to reconsider. The motion to reconsider was withdrawn on June 15, 1948, and on June 16, 1948, the House concurred in the Senate amendments. As finally passed, the bill incorporated all laws affecting Title 28 up to and including January 5, 1948.

### EFFECTIVE DATE

This new Title 28, United States Code, becomes effective on September 1, 1948.

iii

The following are facsimile signatures appended to
H.R. 3214 — Title 28, United States Code,
Judiciary and Judicial Procedure.

———

*Speaker of the House of Representatives.*

*President of the Senate pro tempore.*

Approved
June 25 1948

Harry Truman

12:25 P. M. E.D.T.

# United States Code

## Congressional Service

### 80th Congress — Second Session

### 1948

### New

## Title 28, United States Code
## Judiciary and Judicial Procedure

### With
### Official Legislative History
### and
### Reviser's Notes

St. Paul, Minn.                    Brooklyn, N. Y.
West Publishing Co.        Edward Thompson Co.

345.2
U4
copy.2

Copyright, 1948

By

West Publishing Co. & Edward Thompson Company

U.S.Cong.Serv. '48

# CONTENTS

———

| | Page |
|---|---|
| President and Cabinet - - - - - - - - - - - - - - | VII |
| Senate - - - - - - - - - - - - - - - - - - | IX |
| House of Representatives - - - - - - - - - - - - | XIII |
| Delegates and Resident Commissioners - - - - - - - | XXIII |
| Senate Judiciary Committee - - - - - - - - - - - | XXIV |
| House of Representatives Judiciary Committee - - - - | XXV |
| Advisory Committee - - - - - - - - - - - - - - | XXVI |
| Judicial Conference Committee - - - - - - - - - - | XXVII |
| Revision Staff - - - - - - - - - - - - - - - - - | XXVIII |
| Acknowledgment - - - - - - -,- - - - - - - - - -. | XXIX |

### THE CONGRESS

Act June 25, 1948, C. 646, 62 Stat. —— (H.R. 3214).

Section 1.  New Title 28, United States Code - - - - 1487

Sections 2–39.  Miscellaneous Provisions

Section 2.  Preserving status of courts, judges and employees, rights and proceedings - - 1639

Sections 3–31.  Amendments of other laws - - - 1640

Section 32.  Definitions; names of courts and titles of judges - - - - - - - - - - 1647

Section 33.  Prohibiting inference of legislative construction - - - - - - - - - - - 1647

Section 34.  Separability provision - - - - - - 1647

Section 35.  Repealing two sections of the Canal Zone Code - - - - - - - - - - 1647

Section 36.  Amendment of Internal Revenue Code, section 1141(a) - - - - - - - - 1647

Section 37.  Amendment of Act August 7, 1946, Chapter 864 - - - - - - - - - 1648

Section 38.  Effective date - - - - - - - - - 1648

Section 39.  Repeal of laws - - - - - - - - - 1649

### LEGISLATIVE HISTORY

Senate Report No. 1559 - - - - - - - - - - - - - - 1675

House Report No. 308 - - - - - - - - - - - - - - 1692

Preliminary Statement:

Scope of Revision - - - - - - - - - - - - - 1692

History of the Judicial Code - - - - - - - - 1693

Staff of experts assembled - - - - - - - - - 1694

# CONTENTS

|  | Page |
|---|---|
| Advisory Committee | 1694 |
| Judicial Conference Committee | 1694 |
| Supreme Court Committee | 1695 |
| Committee meetings | 1695 |
| Cooperation with Bench and Bar | 1695 |
| Cooperation with Federal agencies | 1695 |
| Classification and numbering | 1696 |
| Style | 1696 |
| Consolidation of sections | 1696 |
| Examples of changes in law | 1696 |
| Amendments and repeals | 1698 |
| Reviser's notes and tables | 1699 |
| Report by the Attorney General | 1699 |
| Reviser's notes | 1701 |

Hearing by Subcommittee No. 1 of House Judiciary Committee ..... 1940
Statement of—
Hon. Edward J. Devitt, a Representative in Congress from the State of Minnesota ..... 1942
Hon. Eugene J. Keogh, a Representative in Congress from the State of New York ..... 1944
Justin Miller, president, National Association of Broadcasters ..... 1950
Hon. Albert B. Maris, United States Circuit Judge for the Third Circuit, Philadelphia ..... 1957
William W. Barron, Chief Reviser, West Publishing Co. ..... 1961
James William Moore, Professor of Law, Yale University ..... 1965
Letter from Floyd E. Thompson, former Chief Justice of the Illinois Supreme Court ..... 1971
Letter from Harvey T. Reid, Editor in chief, West Publishing Co. ..... 1971
Statement submitted by Hon. John B. Sanborn, United States Circuit Judge for the Eighth Circuit ..... 1972
Statement submitted by Hon. Walter P. Armstrong, former President of the American Bar Association ..... 1973
Letter from John T. Cahill, attorney at law, New York City ..... 1973
Statement of—
Hon. Harold I. Baynton, special assistant to the Attorney General ..... 1974
Hon. Fred E. Strine, Criminal Division, Department of Justice ..... 1975
Leland Tolman, Administrative Office of the United States Court ..... 1976

IV

## CONTENTS

| | Page |
|---|---|
| Meldrim Thomson, Editor in chief, Edward Thompson Co. | 1977 |
| Robert F. Klepinger, attorney at law, Washington, D. C. | 1978 |
| Charles J. Zinn, Law Revision Counsel, Committee on the Judiciary | 1980 |
| Letter from Hon. John J. Parker, United States Circuit Judge for the Fourth Judicial Circuit | 1982 |
| Statement of John F. X. Finn, New York, former special counsel for the House Committee on Revision of the Laws and member of the New York State Law Revision Commission | 1982 |
| Congressional Record; debate and discussion | 1986 |
| Remarks of Representative Sam Hobbs of Alabama | 1986 |
| House floor discussion and action | 1992 |
| Senate floor discussion and action | 2019 |
| Final House floor discussion and action | 2030 |

## TABLES

| | |
|---|---|
| Table 1—United States Code | 2041 |
| Table 2—Canal Zone Code | 2047 |
| Table 3—District of Columbia Code | 2047 |
| Table 4—Judicial Code of 1911 | 2048 |
| Table 5—Acts by popular name | 2051 |

## INDEX

| | |
|---|---|
| Index | 2053 |

**PRESIDENT**                   Harry S. Truman

## CABINET

| | |
|---|---|
| SECRETARY OF STATE | George C. Marshall |
| SECRETARY OF THE TREASURY | John W. Snyder |
| SECRETARY OF DEFENSE | James V. Forrestal |
| ATTORNEY GENERAL | Tom C. Clark |
| POSTMASTER GENERAL | Jesse M. Donaldson |
| SECRETARY OF THE INTERIOR | Julius Albert Krug |
| SECRETARY OF AGRICULTURE | Charles Franklin Brannan |
| SECRETARY OF COMMERCE | Charles Sawyer |
| SECRETARY OF LABOR | |

VII

# SENATE

| | |
|---|---|
| PRESIDENT PRO TEMPORE | Arthur H. Vandenberg |
| SECRETARY | Carl A. Loeffler |
| PARLIAMENTARIAN | Charles L. Watkins |
| SERGEANT AT ARMS | Edward F. McGinnis |
| POSTMASTER | J. W. Clóverdale |
| CHAPLAIN | Rev. Peter Marshall, D.D. |

---

| | |
|---|---|
| MAJORITY LEADER | Wallace H. White, Jr. |
| MAJORITY WHIP | Kenneth S. Wherry |
| MINORITY LEADER | Alben W. Barkley |
| MINORITY WHIP | Scott W. Lucas |

| | Party | City |
|---|---|---|
| **ALABAMA** | | |
| Hill, Lister | D | Montgomery |
| Sparkman, John J. | D | Huntsville |
| **ARIZONA** | | |
| Hayden, Carl | D | Phoenix |
| McFarland, Ernest W. | D | Florence |
| **ARKANSAS** | | |
| McClellan, John L. | D | Camden |
| Fulbright, J. William | D | Fayetteville |
| **CALIFORNIA** | | |
| Downey, Sheridan | D | Laguana Beach |
| Knowland, William F. | R | Oakland |
| **COLORADO** | | |
| Johnson, Edwin C. | D | Craig |
| Millikin, Eugene D. | R | Denver |
| **CONNECTICUT** | | |
| McMahon, Brien | D | South Norwalk |
| Baldwin, Raymond E. | R | Stratford |
| **DELAWARE** | | |
| Buck, C. Douglass | R | Wilmington |
| Williams, John J. | R | Millsboro |
| **FLORIDA** | | |
| Pepper, Claude | D | Tallahassee |
| Holland, Spessard L. | D | Bartow |
| **GEORGIA** | | |
| George, Walter F. | D | Vienna |
| Russell, Richard B. | D | Winder |
| **IDAHO** | | |
| Taylor, Glen H. | D | Pocatello |
| Dworshak, Henry C. | R | Burley |
| **ILLINOIS** | | |
| Lucas, Scott W. | D | Havana |
| Brooks, C. Wayland | R | Chicago |

IX

## SENATE

| | Party | City |
|---|---|---|
| **INDIANA** | | |
| Capehart, Homer E. | R | Washington |
| Jenner, William E. | R | Bedford |
| **IOWA** | | |
| Wilson, George A. | R | Des Moines |
| Hickenlooper, Bourke B. | R | Cedar Rapids |
| **KANSAS** | | |
| Capper, Arthur | R | Topeka |
| Reed, Clyde M. | R | Parsons |
| **KENTUCKY** | | |
| Barkley, Alben W. | D | Paducah |
| Cooper, John Sherman | R | Somerset |
| **LOUISIANA** | | |
| Feazel, W. C. | D | Monroe |
| Ellender, Allen J. | D | Houma |
| **MAINE** | | |
| White, Wallace H., Jr. | R | Auburn |
| Brewster, Owen | R | Dexter |
| **MARYLAND** | | |
| Tydings, Millard E. | D | Havre de Grace |
| O'Conor, Herbert R. | D | Annapolis |
| **MASSACHUSETTS** | | |
| Saltonstall, Leverett | R | Chestnut Hill |
| Lodge, Henry Cabot Jr. | R | Beverly |
| **MICHIGAN** | | |
| Vandenberg, Arthur H. | R | Grand Rapids |
| Ferguson, Homer | R | Detroit |
| **MINNESOTA** | | |
| Ball, Joseph H. | R | St. Paul |
| Thye, Edward J. | R | Northfield R. F. D. |
| **MISSISSIPPI** | | |
| Eastland, James O. | D | Ruleville |
| Stennis, John C. | D. | DeKalb |
| **MISSOURI** | | |
| Donnell, Forrest C. | R | Webster Grove |
| Kem, James P. | R | Kansas City |
| **MONTANA** | | |
| Murray, James E. | D | Butte |
| Ecton, Zales N. | R | Manhattan |
| **NEBRASKA** | | |
| Butler, Hugh | R | Omaha |
| Wherry, Kenneth S. | R | Pawnee City |
| **NEVADA** | | |
| McCarran, Pat | D | Reno |
| Malone, George W. | R | Reno |
| **NEW HAMPSHIRE** | | |
| Bridges, Styles | R | Concord |
| Tobey, Charles W. | R | Temple |

x

## SENATE

| NEW JERSEY | Party | City |
|---|---|---|
| Hawkes, Albert W. | R | Montclair |
| Smith, H. Alexander | R | Princeton |
| **NEW MEXICO** | | |
| Hatch, Carl A. | D | Clovis |
| Chavez, Dennis | D | Albuquerque |
| **NEW YORK** | | |
| Wagner, Robert F. | D | New York City |
| Ives, Irving M. | R | Norwich |
| **NORTH CAROLINA** | | |
| Umstead, William B. | D | Durham |
| Hoey, Clyde R. | D | Shelby |
| **NORTH DAKOTA** | | |
| Langer, William | R | Bismarck |
| Young, Milton R. | R | Berlin |
| **OHIO** | | |
| Taft, Robert A. | R | Cincinnati |
| Bricker, John W. | R | Upper Arlington |
| **OKLAHOMA** | | |
| Thomas, Elmer | D | Medicine Park |
| Moore, E. H. | R | Tulsa |
| **OREGON** | | |
| Cordon, Guy | R | Roseburg |
| Morse, Wayne | R | Eugene |
| **PENNSYLVANIA** | | |
| Myers, Francis J. | D | Philadelphia |
| Martin, Edward | R | Washington |
| **RHODE ISLAND** | | |
| Green, Theodore Francis | D | Providence |
| McGrath, J. Howard | D | Providence |
| **SOUTH CAROLINA** | | |
| Maybank, Burnet R. | D | Charleston |
| Johnston, Olin D. | D | Spartanburg |
| **SOUTH DAKOTA** | | |
| Gurney, Chan | R | Yankton |
| Bushfield, Harlan J. | R | Miller |
| **TENNESSEE** | | |
| McKellar, Kenneth | D | Memphis |
| Stewart, Tom | D | Winchester |
| **TEXAS** | | |
| Connally, Tom | D | Marlin |
| O'Daniel, W. Lee | D | Fort Worth |
| **UTAH** | | |
| Thomas, Elbert D. | D | Salt Lake City |
| Watkins, Arthur V. | R | Orem |
| **VERMONT** | | |
| Aiken, George D. | R | Putney |
| Flanders, Ralph E. | R | Springfield |

XI

## SENATE

| | Party | City |
|---|---|---|
| **VIRGINIA** | | |
| Byrd, Harry Flood | D | Berryville |
| Robertson, A. Willis | D | Lexington |
| **WASHINGTON** | | |
| Magnuson, Warren G. | D | Seattle |
| Cain, Harry P. | R | Tacoma |
| **WEST VIRGINIA** | | |
| Kilgore, Harley M. | D | Beckley |
| Revercomb, Chapman | R | Charleston |
| **WISCONSIN** | | |
| Wiley, Alexander | R | Chippewa Falls |
| McCarthy, Joseph R. | R | Appleton |
| **WYOMING** | | |
| O'Mahoney, Joseph C. | D | Cheyenne |
| Robertson, Edward V. | R | Cody |

Republicans - - - - - - 51
Democrats - - - - - - - 45

XII

# HOUSE OF REPRESENTATIVES

| | |
|---|---|
| SPEAKER | Joseph W. Martin, Jr. |
| CLERK | John Andrews |
| PARLIAMENTARIAN | Lewis Deschler |
| SERGEANT AT ARMS | William F. Russell |
| DOORKEEPER | M. L. Meletio |
| POSTMASTER | Frank W. Collier |
| CHAPLAIN | Rev. James Shera Montgomery, D.D. |

---

| | |
|---|---|
| MAJORITY LEADER | Charles A. Halleck |
| MAJORITY WHIP | Leslie C. Arends |
| MINORITY LEADER | Sam Rayburn |
| MINORITY WHIP | John W. McCormack |

| | Party | Dist. | City |
|---|---|---|---|
| **ALABAMA** | | | |
| Boykin, Frank W. | D | 1 | Mobile |
| Grant, George M. | D | 2 | Troy |
| Andrews, George W. | D | 3 | Union Springs |
| Hobbs, Sam | D | 4 | Selma |
| Rains, Albert | D | 5 | Gadsden |
| Jarman, Pete | D | 6 | Livingston |
| Manasco, Carter | D | 7 | Jasper |
| Jones, Robert E., Jr. | D | 8 | Scottsboro |
| Battle, Laurie C. | D | 9 | Birmingham |
| **ARIZONA** | | | |
| Harless, Richard F. | D | At L. | Phoenix |
| Murdock, John R. | D | At L. | Tempe |
| **ARKANSAS** | | | |
| Gathings, E. C. | D | 1 | West Memphis |
| Mills, Wilbur D. | D | 2 | Kensett |
| Trimble, James W. | D | 3 | Berryville |
| Cravens, Fadjo | D | 4 | Fort Smith |
| Hays, Brooks | D | 5 | Little Rock |
| Norrell, W. F. | D | 6 | Monticello |
| Harris, Oren | D | 7 | El Dorado |
| **CALIFORNIA** | | | |
| Lea, Clarence F. | D | 1 | Santa Rosa |
| Engle, Clair | D | 2 | Red Bluff |
| Johnson, Leroy | R | 3 | Stockton |
| Havenner, Franck R. | D | 4 | San Francisco |
| Welch, Richard J. | R | 5 | San Francisco |
| Miller, George P. | D | 6 | Alameda |
| Allen, John J. Jr. | R | 7 | Oakland |
| Anderson, Jack Z. | R | 8 | San Juan Bautista |
| Gearhart, Bertrand W. | R | 9 | Fresno |
| Elliott, Alfred J. | D | 10 | Tulare |

XIII

**HOUSE OF REPRESENTATIVES**

| CALIFORNIA—Continued | Party | Dist. | City |
|---|---|---|---|
| Bramblett, Ernest K. | R | 11 | Pacific Grove |
| Nixon, Richard M. | R | 12 | Whittier |
| Poulson, Norris | R | 13 | Los Angeles |
| Douglas, Helen Gahagan | D | 14 | Los Angeles |
| McDonough, Gordon L. | R | 15 | Los Angeles |
| Jackson, Donald L. | R | 16 | Santa Monica |
| King, Cecil R. | D | 17 | Los Angeles |
| Bradley, Willis W. | R | 18 | Long Beach |
| Holifield, Chet | D | 19 | Montebello |
| Hinshaw, Carl | R | 20 | Pasadena |
| Sheppard, Harry R. | D | 21 | Yucaipa |
| Phillips, John | R | 22 | Banning |
| Fletcher, Charles K. | R | 23 | San Diego |
| **COLORADO** | | | |
| Carroll, John A. | D | 1 | Denver |
| Hill, William S. | R | 2 | Fort Collins |
| Chenoweth, J. Edgar | R | 3 | Trinidad |
| Rockwell, Robert F. | R | 4 | Paonia |
| **CONNECTICUT** | | | |
| Miller, William J. | R | 1 | Weathersfield |
| Seely-Brown, Horace, Jr. | R | 2 | Pomfret |
| Foote, Ellsworth B. | R | 3 | North Branford |
| Lodge, John Davis | R | 4 | Westport |
| Patterson, James T. | R | 5 | Naugatuck |
| Sadlak, Antoni N. | R | At L. | Rockville |
| **DELAWARE** | | | |
| Boggs, J. Caleb | R | At L. | Wilmington |
| **FLORIDA** | | | |
| Peterson, J. Hardin | D | 1 | Lakeland |
| Price, Emory H. | D | 2 | Jacksonville |
| Sikes, Robert L. F. | D | 3 | Crestview |
| Smathers, George A. | D | 4 | Miami |
| Hendricks, Joe | D | 5 | De Land |
| Rogers, Dwight L. | D | 6 | Fort Lauderdale |
| **GEORGIA** | | | |
| Preston, Prince H., Jr. | D | 1 | Statesboro |
| Cox, E. E. | D | 2 | Camilla |
| Pace, Stephen | D | 3 | Americus |
| Camp, A. Sidney | D | 4 | Newnan |
| Davis, James C. | D | 5 | Decatur |
| Vinson, Carl | D | 6 | Milledgeville |
| Lanham, Henderson | D | 7 | Rome |
| Wheeler, W. M. (Don) | D | 8 | Douglas |
| Wood, John S. | D | 9 | Canton |
| Brown, Paul | D | 10 | Elberton |
| **IDAHO** | | | |
| Goff, Abe McGregor | R | 1 | Moscow |
| Sanborn, John | R | 2 | Hagerman |

<div align="center">XIV</div>

## HOUSE OF REPRESENTATIVES

| ILLINOIS | Party | Dist. | City |
|---|---|---|---|
| Dawson, William L. | D | 1 | Chicago |
| Vail, Richard B. | R | 2 | Chicago |
| Busbey, Fred E. | R | 3 | Chicago |
| Gorski, Martin | D | 4 | Chicago |
| Sabath, Adolph J. | D | 5 | Chicago |
| O'Brien, Thomas J. | D | 6 | Chicago |
| Gordon, Thomas S. | D | 8 | Chicago |
| Twyman, Robert J. | R | 9 | Chicago |
| Church, Ralph E. | R | 10 | Evanston |
| Reed, Chauncey W. | R | 11 | West Chicago |
| Mason, Noah M. | R | 12 | Oglesby |
| Allen, Leo E. | R | 13 | Galena |
| Johnson, Anton J. | R | 14 | Macomb |
| Chiperfield, Robert B. | R | 15 | Canton |
| Dirksen, Everett M. | R | 16 | Pekin |
| Arends, Leslie C. | R | 17 | Melvin |
| Jenison, Edward H. | R | 18 | Paris |
| McMillen, Rolla C. | R | 19 | Decatur |
| Simpson, Sid | R | 20 | Carrollton |
| Price, Melvin | D | 22 | East St. Louis |
| Vursell, Charles W. | R | 23 | Salem |
| Clippinger, Roy | R | 24 | Carmi |
| Bishop, C. W. (Runt) | R | 25 | Carterville |
| Stratton, William G. | R | At L. | Morris |

| INDIANA | Party | Dist. | City |
|---|---|---|---|
| Madden, Ray J. | D | 1 | Gary |
| Halleck, Charles A. | R | 2 | Rensselaer |
| Grant, Robert A. | R | 3 | South Bend |
| Gillie, George W. | R | 4 | Fort Wayne |
| Harness, Forest A. | R | 5 | Kokomo |
| Johnson, Noble J. | R | 6 | Terre Haute |
| Landis, Gerald W. | R | 7 | Linton |
| Mitchell, E. (Edward) A. | R | 8 | Evansville |
| Wilson, Earl | R | 9 | Huron |
| Harvey, Ralph | R | 10 | New Castle |
| Ludlow, Louis | D | 11 | Indianapolis |

| IOWA | Party | Dist. | City |
|---|---|---|---|
| Martin, Thomas E. | R | 1 | Iowa City |
| Talle, Henry O. | R | 2 | Decorah |
| Gwynne, John W. | R | 3 | Waterloo |
| LeCompte, Karl M. | R | 4 | Corydon |
| Cunningham, Paul | R | 5 | Des Moines |
| Dolliver, James I. | R | 6 | Fort Dodge |
| Jensen, Ben F. | R | 7 | Exira |
| Hoeven, Charles B. | R | 8 | Alton |

6 U.S.Cong.Serv. '48—2        XV

## HOUSE OF REPRESENTATIVES

| | Party | Dist. | City |
|---|---|---|---|
| **KANSAS** | | | |
| Cole, Albert M. | R | 1 | Holton |
| Scrivner, Errett P. | R | 2 | Kansas City |
| Meyer, Herbert A. | R | 3 | Independence |
| Rees, Edward H. | R | 4 | Emporia |
| Hope, Clifford R. | R | 5 | Garden City |
| Smith, Wint | R | 6 | Mankato |
| **KENTUCKY** | | | |
| Gregory, Noble J. | D | 1 | Mayfield |
| Whitaker, John A. | D | 2 | Russelville |
| Morton, Thruston Ballard | R | 3 | Glenview |
| Chelf, Frank L. | D | 4 | Lebanon |
| Spence, Brent | D | 5 | Fort Thomas |
| Chapman, Virgil | D | 6 | Paris |
| Meade, W. Howes | R | 7 | Paintsville |
| Bates, Joe B. | D | 8 | Greenup |
| Lewis, William | R | 9 | London |
| **LOUISIANA** | | | |
| Hébert, F. Edward | D | 1 | New Orleans |
| Boggs, Hale | D | 2 | New Orleans |
| Domengeaux, James | D | 3 | Lafayette |
| Brooks, Overton | D | 4 | Shreveport |
| Passman, Otto E. | D | 5 | Monroe |
| Morrison, James H. | D | 6 | Hammond |
| Larcade, Henry D. Jr. | D | 7 | Opelousas |
| Allen, A. Leonard | D | 8 | Winnfield |
| **MAINE** | | | |
| Hale, Robert | R | 1 | Portland |
| Smith, Margaret Chase | R | 2 | Skowhegan |
| Fellows, Frank | R | 3 | Bangor |
| **MARYLAND** | | | |
| Miller, Edward T. | R | 1 | Easton |
| Meade, Hugh A. | D | 2 | Baltimore |
| Garmatz, Edward A. | D | 3 | Baltimore |
| Fallon, George H. | D | 4 | Baltimore |
| Sasscer, Lansdale G. | D | 5 | Upper Marlboro |
| Beall, J. Glenn | R | 6 | Frostburg |
| **MASSACHUSETTS** | | | |
| Heselton, John W. | R | 1 | Deerfield |
| Clason, Charles R. | R | 2 | Springfield |
| Philbin, Philip J. | D | 3 | Clinton |
| Donohue, Harold D. | D | 4 | Worcester |
| Rogers, Edith Nourse | R | 5 | Lowell |
| Bates, George J. | R | 6 | Salem |
| Lane, Thomas J. | D | 7 | Lawrence |
| Goodwin, Angier L. | R | 8 | Melrose |
| Nicholson, Donald W. | R | 9 | Wareham |
| Herter, Christian A. | R | 10 | Boston |
| Kennedy, John F. | D | 11 | Boston |

XVI

## HOUSE OF REPRESENTATIVES

| | Party | Dist. | City |
|---|---|---|---|
| **MASSACHUSETTS—Continued** | | | |
| McCormack, John W. | D | 12 | Dorchester |
| Wigglesworth, Richard B. | R | 13 | Milton |
| Martin, Joseph W. Jr. | R | 14 | North Attleboro |
| **MICHIGAN** | | | |
| Sadowski, George G. | D | 1 | Detroit |
| Michener, Earl C. | R | 2 | Adrian |
| Shafer, Paul W. | R | 3 | Battle Creek |
| Hoffman, Clare E. | R | 4 | Allegan |
| Jonkman, Bartel J. | R | 5 | Grand Rapids |
| Blackney, William W. | R | 6 | Flint |
| Wolcott, Jesse P. | R | 7 | Port Huron |
| Crawford, Fred L. | R | 8 | Saginaw |
| Engel, Albert J. | R | 9 | Muskegon |
| Woodruff, Roy O. | R | 10 | Bay City |
| Potter, Charles E. | R | 11 | Cheboygan |
| Bennett, John B. | R | 12 | Ontonagon |
| Coffin, Howard A. | R | 13 | Detroit |
| Youngblood, Harold F. | R | 14 | Detroit |
| Dingell, John D. | D | 15 | Detroit |
| Lesinski, John | D | 16 | Dearborn |
| Dondero, George A. | R | 17 | Royal Oak |
| **MINNESOTA** | | | |
| Andresen, August H. | R | 1 | Red Wing |
| O'Hara, Joseph P. | R | 2 | Glencoe |
| MacKinnon, George | R | 3 | Minneapolis |
| Devitt, Edward J. | R | 4 | St. Paul |
| Judd, Walter H. | R | 5 | Minneapolis |
| Knutson, Harold | R | 6 | Manhattan Beach |
| Andersen, H. Carl | R | 7 | Tyler |
| Blatnik, John A. | D | 8 | Chisholm |
| Hagen, Harold C. | R | 9 | Crookston |
| **MISSISSIPPI** | | | |
| Rankin, John E. | D | 1 | Tupelo |
| Whitten, Jamie L. | D | 2 | Charleston |
| Whittington, William M. | D | 3 | Greenwood |
| Abernethy, Thomas G. | D | 4 | Okolona |
| Winstead, Arthur | D | 5 | Philadelphia |
| Colmer, William M. | D | 6 | Pascagoula |
| Williams, John Bell | D | 7 | Raymond |
| **MISSOURI** | | | |
| Arnold, Wat | R | 1 | Kirksville |
| Schwabe, Max | R | 2 | Columbia |
| Cole, William C. | R | 3 | St. Joseph |
| Bell, C. Jasper | D | 4 | Blue Springs |
| Reeves, Albert L. Jr. | R | 5 | Kansas City |
| Bennett, Marion T. | R | 6 | Springfield |
| Short, Dewey | R | 7 | Galena |
| Banta, Parke M. | R | 8 | Arcadia |
| Cannon, Clarence | D | 9 | Elsberry |

XVII

## HOUSE OF REPRESENTATIVES

| MISSOURI—Continued | Party | Dist. | City |
|---|---|---|---|
| Bakewell, Claude I. | R | 11 | St. Louis |
| Ploeser, Walter C. | R | 12 | Chesterfield, R. F. D. |
| Karsten, Frank M. | D | 13 | St. Louis |
| **MONTANA** | | | |
| Mansfield, Mike | D | 1 | Missoula |
| D'Ewart, Wesley A. | R | 2 | Wilsall |
| **NEBRASKA** | | | |
| Curtis, Carl T. | R | 1 | Minden |
| Buffett, Howard H. | R | 2 | Omaha |
| Stefan, Karl | R | 3 | Norfolk |
| Miller, A. L. | R | 4 | Kimball |
| **NEVADA** | | | |
| Russell, Charles H. | R | At L. | Ely |
| **NEW HAMPSHIRE** | | | |
| Merrow, Chester E. | R | 1 | Center Ossipee |
| Cotton, Norris | R | 2 | Lebanon |
| **NEW JERSEY** | | | |
| Wolverton, Charles A. | R | 1 | Merchantville |
| Hand, T. Millet | R | 2 | Cape May City |
| Auchincloss, James C. | R | 3 | Rumson |
| Mathews, Frank A. Jr. | R | 4 | Riverton |
| Eaton, Charles A. | R | 5 | Watchung |
| Case, Clifford P. | R | 6 | Rahway |
| Thomas, J. Parnell | R | 7 | Allendale |
| Canfield, Gordon | R | 8 | Paterson |
| Towe, Harry L. | R | 9 | Rutherford |
| Hartley, Fred A. Jr. | R | 10 | Kearny |
| Sundstrom, Frank L. | R | 11 | East Orange |
| Kean, Robert W. | R | 12 | Livingston |
| Norton, Mary T. | D | 13 | Jersey City |
| Hart, Edward J. | D | 14 | Jersey City |
| **NEW MEXICO** | | | |
| Fernandez, Antonio M. | D | At L. | Santa Fe |
| Lusk, Georgia L. | D | At L. | Santa Fe |
| **NEW YORK** | | | |
| Macy, W. Kingsland | R | 1 | Islip |
| Hall, Leonard W. | R | 2 | Oyster Bay |
| Latham, Henry J. | R | 3 | Queens Village |
| McMahon, Gregory | R | 4 | Ozone Park |
| Ross, Robert Tripp | R | 5 | Jackson Heights |
| Nodar, Robert Jr. | R | 6 | Maspeth |
| Delaney, John J. | D | 7 | Brooklyn |
| Pfeifer, Joseph L. | D | 8 | Brooklyn |
| Keogh, Eugene J. | D | 9 | Brooklyn |
| Somers, Andrew L. | D | 10 | Brooklyn |
| Heffernan, James J. | D | 11 | Brooklyn |
| Rooney, John J. | D | 12 | Brooklyn |
| O'Toole, Donald L. | D | 13 | Brooklyn |
| Multer, Abraham J. | D | 14 | Brooklyn |

XVIII

## HOUSE OF REPRESENTATIVES

| NEW YORK—Continued | Party | Dist. | City |
|---|---|---|---|
| Celler, Emanuel | D | 15 | Brooklyn |
| Buck, Ellsworth B. | R | 16 | Staten Island |
| Coudert, Frederic R. Jr. | R | 17 | New York City |
| Marcantonio, Vito | A. L. | 18 | New York City |
| Klein, Arthur G. | D | 19 | New York City |
| Bloom, Sol | D | 20 | New York City |
| Javits, Jacob K. (Jack) | R | 21 | New York City |
| Powell, Adam C. Jr. | D | 22 | New York City |
| Lynch, Walter A. | D | 23 | New York City |
| Isacson, Leo | A. L. | 24 | New York City |
| Buckley, Charles A. | D | 25 | New York City |
| Potts, David M. | R | 26 | New York City |
| Gwinn, Ralph W. | R | 27 | Bronxville |
| Gamble, Ralph A. | R | 28 | Larchmont |
| St. George, Katharine | R | 29 | Tuxedo Park |
| LeFevre, Jay | R | 30 | New Paltz |
| Kearney, Bernard W. (Pat) | R | 31 | Gloversville |
| Byrne, William T. | D | 32 | Loudonville |
| Taylor, Dean P. | R | 33 | Troy |
| Kilburn, Clarence E. | R | 34 | Malone |
| Fuller, Hadwen C. | R | 35 | Parish |
| Riehlman R. Walter | R | 36 | Tully |
| Hall, Edwin Arthur | R | 37 | Binghamton |
| Taber, John | R | 38 | Auburn |
| Cole, W. Sterling | R | 39 | Bath |
| Keating, Kenneth B. | R | 40 | Rochester |
| Wadsworth, James W. | R | 41 | Geneseo |
| Andrews, Walter G. | R | 42 | Buffalo |
| Elsaesser, Edward J. | R | 43 | Buffalo |
| Butler, John C. | R | 44 | Buffalo |
| Reed, Daniel A. | R | 45 | Dunkirk |
| **NORTH CAROLINA** | | | |
| Bonner, Herbert C. | D | 1 | Washington |
| Kerr, John H. | D | 2 | Warrenton |
| Barden, Graham A. | D | 3 | New Bern |
| Cooley, Harold D. | D | 4 | Nashville |
| Folger, John H. | D | 5 | Mount Airy |
| Durham, Carl T. | D | 6 | Chapel Hill |
| Clark, J. Bayard | D | 7 | Fayetteville |
| Deane, Charles B. | D | 8 | Rockingham |
| Doughton, Robert L. | D | 9 | Laurel Springs |
| Jones, Hamilton C. | D | 10 | Charlotte |
| Bulwinkle, Alfred L. | D | 11 | Gastonia |
| Redden, Monroe M. | D | 12 | Hendersonville |
| **NORTH DAKOTA** | | | |
| Lemke, William | R | At L. | Fargo |
| Robertson, Charles R. | R | At L. | Bismarck |

XIX

## HOUSE OF REPRESENTATIVES

| OHIO | Party | Dist. | City |
|---|---|---|---|
| Elston, Charles H. | R | 1 | Cincinnati |
| Hess, William E. | R | 2 | Cincinnati |
| Burke, Raymond H. | R | 3 | Hamilton |
| McCulloch, William M. | R | 4 | Piqua |
| Clevenger, Cliff | R | 5 | Bryan |
| McCowen, Edward O. | R | 6 | Wheelersburg |
| Brown, Clarence J. | R | 7 | Blanchester |
| Smith, Frederick C. | R | 8 | Marion |
| Ramey, Homer A. | R | 9 | Toledo |
| Jenkins, Thomas A. | R | 10 | Ironton |
| Brehm, Walter E. | R | 11 | Logan |
| Vorys, John M. | R | 12 | Columbus |
| Weichel, Alvin F. | R | 13 | Sandusky |
| Huber, Walter B. | D | 14 | Akron |
| Griffiths, P. W. | R | 15 | Marietta |
| Carson, Henderson H. | R | 16 | Canton |
| McGregor, J. Harry | R | 17 | West Lafayette |
| Lewis, Earl R. | R | 18 | St. Clairsville |
| Kirwan, Michael J. | D | 19 | Youngstown |
| Feighan, Michael A. | D | 20 | Cleveland |
| Crosser, Robert | D | 21 | Cleveland |
| Bolton, Frances P. | R | 22 | Lyndhurst |
| Bender, George H. | R | At L. | Cleveland Heights |
| **OKLAHOMA** | | | |
| Schwabe, George B. | R | 1 | Tulsa |
| Stigler, William G. | D | 2 | Stigler |
| Albert, Carl | D | 3 | McAlester |
| Johnson, Glen D. | D | 4 | Okemah |
| Monroney, A. S. Mike | D | 5 | Oklahoma City |
| Morris, Toby | D | 6 | Lawton |
| Peden, Preston E. | D | 7 | Altus |
| Rizley, Ross | R | 8 | Guymon |
| **OREGON** | | | |
| Norblad, Walter | R | 1 | Astoria |
| Stockman, Lowell | R | 2 | Pendleton |
| Angell, Homer D. | R | 3 | Portland |
| Ellsworth, Harris | R | 4 | Roseburg |
| **PENNSYLVANIA** | | | |
| Gallagher, James | R | 1 | Philadelphia |
| McGarvey, Robert N. | R | 2 | Philadelphia |
| Scott, Hardie | R | 3 | Philadelphia |
| Maloney, Franklin J. | R | 4 | Philadelphia |
| Sarbacher, George W. Jr. | R | 5 | Philadelphia |
| Scott, Hugh D. Jr. | R | 6 | Philadelphia |
| Chadwick, E. Wallace | R | 7 | Moylan |
| Lichtenwalter, Franklin H. | R | 8 | Allentown |
| Dague, Paul B. | R | 9 | Downingtown |
| Scoblick, James P. | R | 10 | Archbald |
| Jenkins, Mitchell | R | 11 | Trucksville |

xx

## HOUSE OF REPRESENTATIVES

| PENNSYLVANIA—Continued | Party | Dist. | City |
|---|---|---|---|
| Fenton, Ivor D. | R | 12 | Mahanoy City |
| Muhlenberg, Frederick A. | R | 13 | Sinking Springs (R. F. D.) |
| Gillette, Wilson D. | R | 14 | Towanda |
| Rich, Robert F. | R | 15 | Woolrich |
| McConnell, Samuel K. Jr. | R | 16 | Penn Wynne |
| Simpson, Richard M. | R | 17 | Huntingdon |
| Kunkel, John C. | R | 18 | Harrisburg |
| Gavin, Leon H. | R | 19 | Oil City |
| Walter, Francis E. | D | 20 | Easton |
| Gross, Chester H. | R | 21 | Manchester (R. F. D.) |
| Van Zandt, James E. | R | 22 | Altoona |
| Crow, William J. | R | 23 | Uniontown |
| Morgan, Thomas E. | D | 24 | Fredericktown |
| Graham, Louis E. | R | 25 | Beaver |
| Tibbott, Harve | R | 26 | Ebensburg |
| Kelley, Augustine B. | D | 27 | Greensburg |
| Kearns, Carroll D. | R | 28 | Farrell |
| McDowell, John | R | 29 | Wilkinsburg |
| Corbett, Robert J. | R | 30 | Bellevue |
| Fulton, James G. | R | 31 | Dormont (Pittsburgh) |
| Eberharter, Herman P. | D | 32 | Pittsburgh |
| Buchanan, Frank | D | 33 | McKeesport |

### RHODE ISLAND
| | Party | Dist. | City |
|---|---|---|---|
| Forand, Aime J. | D | 1 | Cumberland |
| Fogarty, John E. | D | 2 | Harmony |

### SOUTH CAROLINA
| | Party | Dist. | City |
|---|---|---|---|
| Rivers, L. Mendel | D | 1 | Charleston |
| Riley, John J. | D | 2 | Sumter |
| Dorn, W. J. Bryan | D | 3 | Greenwood |
| Bryson, Joseph R. | D | 4 | Greenville |
| Richards, James P. | D | 5 | Lancaster |
| McMillan, John L. | D | 6 | Florence |

### SOUTH DAKOTA
| | Party | Dist. | City |
|---|---|---|---|
| Mundt, Karl E. | R | 1 | Madison |
| Case, Francis | R | 2 | Custer |

### TENNESSEE
| | Party | Dist. | City |
|---|---|---|---|
| Phillips, Dayton E. | R | 1 | Elizabethton |
| Jennings, John E., Jr. | R | 2 | Knoxville |
| Kefauver, Estes | D | 3 | Chattanooga |
| Gore, Albert | D | 4 | Carthage |
| Evins, Joe L. | D | 5 | Smithville |
| Priest, J. Percy | D | 6 | Nashville |
| Courtney, Wirt | D | 7 | Franklin |
| Murray, Tom | D | 8 | Jackson |
| Cooper, Jere | D | 9 | Dyersburg |
| Davis, Clifford | D | 10 | Memphis |

XXI

**HOUSE OF REPRESENTATIVES**

| | Party | Dist. | City |
|---|---|---|---|
| **TEXAS** | | | |
| Patman, Wright | D | 1 | Texarkana |
| Combs, J. M. | D | 2 | Beaumont |
| Beckworth, Lindley | D | 3 | Gladewater (R. F. D.) |
| Rayburn, Sam | D | 4 | Bonham |
| Wilson, J. Frank | D | 5 | Dallas |
| Teague, Olin E. | D | 6 | College Station |
| Pickett, Tom | D | 7 | Palestine |
| Thomas, Albert | D | 8 | Houston |
| Thompson, Clark W. | D | 9 | Galveston |
| Johnson, Lyndon B. | D | 10 | Johnson City |
| Poage, W. R. | D | 11 | Waco |
| Lucas, Wingate H. | D | 12 | Grapevine |
| Gossett, Ed | D | 13 | Wichita Falls |
| Lyle, John E. | D | 14 | Corpus Christi |
| West, Milton H. | D | 15 | Brownsville |
| Regan, Ken | D | 16 | Midland |
| Burleson, Omar | D | 17 | Anson |
| Worley, Eugene | D | 18 | Shamrock |
| Mahon, George H. | D | 19 | Colorado City |
| Kilday, Paul J. | D | 20 | San Antonio |
| Fisher, O. C. | D | 21 | San Angelo |
| **UTAH** | | | |
| Granger, Walter K. | D | 1 | Cedar City |
| Dawson, William A. | R | 2 | Layton |
| **VERMONT** | | | |
| Plumley, Charles A. | R | At L. | Northfield |
| **VIRGINIA** | | | |
| Bland, Schuyler Otis | D | 1 | Newport News |
| Hardy, Porter Jr. | D | 2 | Norfolk |
| Gary, J. Vaughan | D | 3 | Richmond |
| Abbitt, Watkins M. | D | 4 | Appomattox |
| Stanley, Thomas B. | D | 5 | Stanleytown |
| Harrison, Burr P. | D | 7 | Winchester |
| Smith, Howard W. | D | 8 | Alexandria |
| Flannagan, John W. Jr. | D | 9 | Bristol |
| **WASHINGTON** | | | |
| Jones, Homer R. | R | 1 | Bremerton |
| Jackson, Henry M. | D | 2 | Everett |
| Mack, Russell V. | R | 3 | Hoquiam |
| Holmes, Hal | R | 4 | Ellensburg |
| Horan, Walt | R | 5 | Wenatchee |
| Tollefson, Thor C. | R | 6 | Tacoma |
| **WEST VIRGINIA** | | | |
| Love, Francis J. | R | 1 | Wheeling |
| Snyder, Melvin C. | R | 2 | Kingwood |
| Rohrbough, Edward G. | R | 3 | Glenville |

XXII

HOUSE OF REPRESENTATIVES

| WEST VIRGINIA—Continued | Party | Dist. | City |
|---|---|---|---|
| Ellis, Hubert S. | R | 4 | Huntington |
| Kee, John | D | 5 | Bluefield |
| Hedrick, E. H. | D | 6 | Beckley |
| WISCONSIN | | | |
| Smith, Lawrence H. | R | 1 | Racine |
| Davis, Glenn R. | R | 2 | Waukesha |
| Stevenson, William H. | R | 3 | La Crosse |
| Brophy, John C. | R | 4 | Milwaukee |
| Kersten, Charles J. | R | 5 | Milwaukee |
| Keefe, Frank B. | R | 6 | Oshkosh |
| Murray, Reid F. | R | 7 | Ogdensburg |
| Byrnes, John W. | R | 8 | Green Bay |
| Hull, Merlin | R | 9 | Black River Falls |
| O'Konski, Alvin E. | R | 10 | Mercer |
| WYOMING | | | |
| Barrett, Frank A. | R | At L. | Lusk |

Republicans _ _ _ _ _ _ 244
Democrats  _ _ _ _ _ _ 186
American  Labor  _ _ _ _ _ 2

## DELEGATES AND RESIDENT COMMISSIONERS

| ALASKA | Party | City |
|---|---|---|
| Delegate | | |
| Bartlett, E. L. | D | Juneau |
| HAWAII | | |
| Delegate | | |
| Farrington, Joseph R. | R | Honolulu |
| PUERTO RICO | | |
| Resident Commissioner | | |
| Fernos-Isern, A. | P-D | San Juan |

XXIII

# JUDICIARY COMMITTEE

## SENATE

ALEXANDER WILEY—*Chairman*

| | |
|---|---|
| WILLIAM LANGER | PAT McCARRAN |
| HOMER FERGUSON | HARLEY M. KILGORE |
| CHAPMAN REVERCOMB | JAMES O. EASTLAND |
| E. H. MOORE | WARREN G. MAGNUSON |
| FORREST C. DONNELL | J. W. FULBRIGHT |
| JOHN SHERMAN COOPER | J. HOWARD McGRATH |

Robert B. Young, *Clerk*

Maurice W. Covert

Joseph A. Davis

Richard Arens,

J. Carlisle Ruddy

*Professional Staff Members*

## SUBCOMMITTEE ON REVISION OF LAWS

FORREST C. DONNELL, *Chairman*

E. H. MOORE          J. HOWARD McGRATH

XXIV

# JUDICIARY COMMITTEE

# HOUSE OF REPRESENTATIVES

*Under Whose Authority and Direction the United States Code and Supplements are edited and published. 1 U.S.C. § 52 and Reorganization Act of 1946, Aug. 2, 1946, ch. 753, Tit. 1, 60 Stat. 814*

EARL C. MICHENER, Michigan—*Chairman*

CHAUNCEY W. REED _ _ _ _ _ _ _ _ _ Illinois
JOHN W. GWYNNE _ _ _ _ _ _ _ _ _ _ Iowa
LOUIS E. GRAHAM _ _ _ _ _ _ _ _ Pennsylvania
FRANK FELLOWS _ _ _ _ _ _ _ _ _ _ Maine
EARL R. LEWIS _ _ _ _ _ _ _ _ _ _ Ohio
JOHN JENNINGS, JR. _ _ _ _ _ _ _ _ Tennessee
CLIFFORD P. CASE _ _ _ _ _ _ _ _ New Jersey
E. WALLACE CHADWICK _ _ _ _ _ Pennsylvania
ALBERT L. REEVES, JR. _ _ _ _ _ _ Missouri
KENNETH B. KEATING _ _ _ _ _ _ New York
EDWARD J. DEVITT _ _ _ _ _ _ _ Minnesota
ELLSWORTH B. FOOTE _ _ _ _ _ Connecticut
WILLIAM M. McCULLOCH _ _ _ _ _ _ _ Ohio
J. CALEB BOGGS _ _ _ _ _ _ _ _ Delaware
EMANUEL CELLER _ _ _ _ _ _ _ New York
FRANCIS E. WALTER _ _ _ _ _ _ Pennsylvania
SAM HOBBS _ _ _ _ _ _ _ _ _ _ Alabama
WILLIAM T. BYRNE _ _ _ _ _ _ _ New York
ESTES KEFAUVER _ _ _ _ _ _ _ _ Tennessee
JOSEPH R. BRYSON _ _ _ _ _ _ South Carolina
FADJO CRAVENS _ _ _ _ _ _ _ _ Arkansas
THOMAS J. LANE _ _ _ _ _ _ _ Massachusetts
MARTIN GORSKI _ _ _ _ _ _ _ _ _ Illinois
MICHAEL A. FEIGHAN _ _ _ _ _ _ _ Ohio
FRANK L. CHELF _ _ _ _ _ _ _ _ Kentucky
ED GOSSETT _ _ _ _ _ _ _ _ _ _ _ Texas

C. Murray Bernhardt, *Clerk*
Velma Smedley, *Ass't Clerk*

## SUBCOMMITTEE NO. 1

CHAUNCEY W. REED, *Acting Chairman*

| | |
|---|---|
| JOHN JENNINGS, JR. | EMANUEL CELLER |
| E. WALLACE CHADWICK | FRANK L. CHELF |
| J. CALEB BOGGS | ED GOSSETT |

**XXV**

# ADVISORY COMMITTEE

*This Committee considered and revised the various drafts of Title 28,*
*Judiciary and Judicial Procedure, during the course of preparation.*

HON. FLOYD E. THOMPSON, *Chairman*
Poppenhusen, Johnston, Thompson & Raymond
Chicago, Illinois
Former Chief Justice, Illinois Supreme Court

HON. JUSTIN MILLER
Washington, D. C.
Former Associate Justice, United States Court of Appeals
For the District of Columbia

HON. JOHN B. SANBORN
St. Paul, Minnesota
Judge, U. S. Circuit Court of Appeals
Eighth Circuit

HON. WALTER P. ARMSTRONG
Armstrong McCadden, Allen, Braden & Goodman
Memphis, Tennessee
Former President American Bar Association

HON. JOHN DICKINSON
Philadelphia, Pennsylvania
General Counsel, The Pennsylvania Railroad Company

## Judicial Consultant

HON. JOHN J. PARKER
Charlotte, North Carolina
Senior Circuit Judge, U. S. Circuit Court of Appeals
Fourth Circuit

XXVI

# JUDICIAL CONFERENCE COMMITTEE ON

# REVISION OF THE JUDICIAL CODE

*Appointed by the Chief Justice of the United States*

**HON. ALBERT BRANSON MARIS,** *Chairman*
Philadelphia, Pennsylvania
Judge, U. S. Circuit Court of Appeals, 3rd Circuit

**HON. CLARENCE G. GALSTON**
Brooklyn, New York
Judge, U. S. District Court, Eastern District of New York

**HON. WILLIAM F. SMITH**
Newark, New Jersey
Judge, U. S. District Court, District of New Jersey

**XXVII**

# REVISION STAFF

*Supplementing the Combined Editorial Staff of Edward Thompson Co.
and West Publishing Co.*

WILLIAM W. BARRON

Reviser

Former Chief of Appellate Section
Department of Justice
Washington, D. C.

FRANK J. PARKER

Assistant United States Attorney
for the Eastern District of
New York

## Special Consultants

JAMES W. MOORE

Professor of Law
Yale University
Chief Research Assistant to
Committee on Rules of Civil Procedure

HON. ALEXANDER HOLTZOFF

Washington, D. C.
Judge, U. S. District Court
for the District of Columbia

XXVIII

# Acknowledgment

The Publishers hereby wish to record grateful appreciation to the Bench and Bar, as well as to the various Bar Associations and Law Schools, for valuable and practical assistance and cooperation throughout the preparation of this historic new Title of the United States Code, relating to the Judiciary and Judicial Procedure.

# The Congress

## Laws of 80th Congress
## Second Session

†

xxx

# Title 28, United States Code Judiciary and Judicial Procedure

---

## CHAPTER 646—PUBLIC LAW 773

### AN ACT

To revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary".

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That:

Title 28 of the United States Code, entitled "Judicial Code and Judiciary" is hereby revised, codified, and enacted into law, and may be cited as "Title 28, United States Code, section —", as follows:

## TITLE 28

## JUDICIARY AND JUDICIAL PROCEDURE

| Part | | Sec. |
|---|---|---|
| I. | ORGANIZATION OF COURTS | 1 |
| II. | UNITED STATES ATTORNEYS AND MARSHALS | 501 |
| III. | COURT OFFICERS AND EMPLOYEES | 601 |
| IV. | JURISDICTION AND VENUE | 1251 |
| V. | PROCEDURE | 1651 |
| VI. | PARTICULAR PROCEEDINGS | 2201 |

### PART I—ORGANIZATION OF COURTS

| Chapter | | Sec. |
|---|---|---|
| 1. | Supreme Court | 1 |
| 3. | Courts of appeals | 41 |
| 5. | District courts | 81 |
| 7. | Court of Claims | 171 |
| 9. | Court of Customs and Patent Appeals | 211 |
| 11. | Customs Court | 251 |
| 13. | Assignment of judges to other courts | 291 |
| 15. | Conferences and councils of judges | 331 |
| 17. | Resignation and retirement of judges | 371 |
| 19. | Distribution of reports and digests | 411 |
| 21. | General provisions applicable to courts and judges | 451 |

6 U.S.CONG.SERV. '48—3          1487

## § 130. Wisconsin

Wisconsin is divided into two judicial districts to be known as the Eastern and Western districts of Wisconsin.

### Eastern District

(a) The Eastern District comprises the counties of Brown, Calumet, Dodge, Door, Florence, Fond du Lac, Forest, Green Lake, Kenosha, Kewaunee, Langlade, Manitowoc, Marinette, Marquette, Milwaukee, Oconto, Outagamie, Ozaukee, Racine, Shawano, Sheboygan, Walworth, Washington, Waukesha, Waupaca, Waushara, and Winnebago.

Court for the Eastern District shall be held at Green Bay, Milwaukee, and Oshkosh.

### Western District

(b) The Western District comprises the counties of Adams, Ashland, Barron, Bayfield, Buffalo, Burnett, Chippewa, Clark, Columbia, Crawford, Dane, Douglas, Dunn, Eau Claire, Grant, Green, Iowa, Iron, Jackson, Jefferson, Juneau, La Crosse, Lafayette, Lincoln, Marathon, Monroe, Oneida, Pepin, Pierce, Polk, Portage, Price, Richland, Rock, Rusk, Saint Croix, Sauk, Sawyer, Taylor, Trempealeau, Vernon, Vilas, Washburn, and Wood.

Court for the Western District shall be held at Eau Claire, La Crosse, Madison, Superior, and Wausau.

## § 131. Wyoming

Wyoming and those portions of Yellowstone National Park situated in Montana and Idaho constitute one judicial district.

Court shall be held at Casper, Cheyenne, Evanston, Lander, and Sheridan.

## § 132. Creation and composition of district courts

(a) There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district.

(b) Each district court shall consist of the district judge or judges for the district in active service. Justices or judges designated or assigned shall be competent to sit as judges of the court.

(c) Except as otherwise provided by law, or rule or order of court, the judicial power of a district court with respect to any action, suit or proceeding may be exercised by a single judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges.

## § 133. Appointment and number of district judges

The President shall appoint, by and with the advice and consent of the Senate, district judges for the several judicial districts, as follows:

### 1521

Justice, the Solicitor General, the General Counsel for the Department of the Treasury, the Solicitor of the Department of the Interior, the Commissioner of Patents, and the Interstate Commerce Commission.

He may also procure and distribute three complete sets to the Secretary of the Senate for use of the Senate and to the Clerk of the House of Representatives for use of the House.

The Director of the Administrative Office of the United States Courts may procure and distribute a complete set of such publications to each judge of the United States and to the Court of Claims, Court of Customs and Patent Appeals, Customs Court, Tax Court, and each place where a court of appeals or district court is regularly held.

Whenever any such court, office, or officer has a partial set of any such reports or digests already purchased or owned by the United States, the Attorney General or the Director, as the case may be, shall distribute only sufficient volumes to make a complete set thereof.

Distribution under this section shall not be made to any place where court is held in a building not owned by the United States, unless the volumes are committed to the custody of a United States officer there.

### § 414.  Transmitttal of books to successors

All government publications and law books furnished to justices and judges of the United States and of the Territorial Courts, United States attorneys, clerks of courts, and other officers of the United States shall be transmitted to their successors in office. All permanent or bound books and publications furnished under this chapter except those books furnished to the Library of Congress for international exchange shall remain the property of the United States and shall be marked plainly, "The Property of the United States".

### § 415.  Court of Claims decisions

At the end of every term of the Court of Claims the clerk thereof shall distribute one copy of each decision of such court to: (1) The heads of departments, (2) General Counsel for Treasury Department, (3) Comptroller General of the United States, (4) Commissioner of the General Land Office, (5) Commissioner of Indian Affairs, (6) Chiefs of bureaus, and (7) Officers charged with adjustment of claims against the United States.

### CHAPTER 21—GENERAL PROVISIONS APPLICABLE TO COURTS AND JUDGES

Sec.
451.  Definitions.
452.  Courts always open; powers unrestricted by terms.
453.  Oath of justices and judges.

**1536**

Sec.
454.   Practice of law by justices and judges.
455.   Interest of justice or judge.
456.   Traveling expenses of justices and judges.
457.   Records; obsolete papers.
458.   Relative of justice or judge ineligible to appointment.
459.   Administration of oaths and acknowledgments.
460.   Application to Alaska, Canal Zone and Virgin Islands.

## § 451. Definitions

As used in this title:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the district courts of the United States for the districts of Hawaii and Puerto Rico, the Court of Claims, the Court of Customs and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

The terms "district court" and "district court of the United States" mean the courts constituted by chapter 5 of this title.

The term "judge of the United States" includes judges of the courts of appeals, district courts, Court of Claims, Court of Customs and Patent Appeals, Customs Court and any court created by Act of Congress, the judges of which are entitled to hold office during good behavior.

The term "justice of the United States" includes the Chief Justice of the United States and the associate justices of the Supreme Court.

The term "district" and "judicial district" mean the districts enumerated in Chapter 5 of this title.

The term "department" means one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government.

The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

## § 452. Courts always open; powers unrestricted by terms

All courts of the United States shall be deemed always open for the purpose of filing proper papers, issuing and returning process, and making motions and orders.

The continued existence or expiration of a term of court in no way affects the power of the court to do any act or take any proceeding.

TITLE 28, UNITED STATES CODE

Yellowstone National Park in Montana and Idaho is derived from said section 27. Other provisions of said section are incorporated in sections 631 and 632 of this title.

A provision of section 196 of title 28, U.S.C., 1940 ed., for furnishing rooms and accommodations at Casper was omitted as obsolete, upon advice of the Director of the Administrative Office of the United States Courts that Federal accommodations are now available there.

Provisions of section 196 of title 28, U.S.C., 1940 ed., for appointment of deputies and maintenance of offices by the clerk and marshal were omitted as covered by sections 541, 542, and 751 of this title.

### Section 132—Section Revised

Based on title 28, U.S.C., 1940 ed., § 1, and section 641 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions (Apr. 30, 1900, ch. 339, § 86, 31 Stat. 158; Mar. 3, 1909, ch. 269, § 1, 35 Stat. 838; Mar. 3, 1911, ch. 231, § 1, 36 Stat. 1087; July 30, 1914, ch. 216, 38 Stat. 580; July 19, 1921, ch. 42, § 313, 42 Stat. 119; Feb. 12, 1925, ch. 220, 43 Stat. 890; Dec. 13, 1926, ch. 6, § 1, 44 Stat. 19).

Section consolidates section 1 of title 28, U.S.C., 1940 ed., and section 641 of title 48, U.S.C., 1940 ed., with changes in phraseology necessary to effect the consolidation.

Subsection (c) is derived from section 641 of title 48, U.S.C., 1940 ed., which applied only to the Territory of Hawaii. The revised section, by extending it to all districts, merely recognizes established practice.

Other portions of section 1 of title 28, U.S.C., 1940 ed., are incorporated in sections 133 and 134 of this title. The remainder of section 641 of title 48, U.S.C., 1940 ed., is incorporated in sections 91 and 133 of this title.

### Section 133—Section Revised [5]

Based on title 28, U.S.C., 1940 ed., § 1 and notes; sections 641, 643, 863, and 864 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions; District of Columbia, 1940 ed., § 11–301 (Apr. 12, 1900, ch. 191, §§ 34, 35, 31 Stat. 84, 85; Apr. 30, 1900, ch. 339, § 86, 31 Stat. 158; Mar. 3, 1901, ch. 854, § 60, 31 Stat. 1199; Mar. 3, 1909, ch. 269, § 1, 35 Stat. 838; Mar. 3, 1911, ch. 231, § 1, 36 Stat. 1087; Jan. 7, 1913, ch. 6, 37 Stat. 648; July 30, 1914, ch. 216, 38 Stat. 580; Mar. 3, 1915, ch. 100, § 1, 38 Stat. 961; Apr. 11, 1916, ch. 64, § 1, 39 Stat. 48; Feb. 26, 1917, ch. 120, 39 Stat. 938; Mar. 2, 1917, ch. 145, §§ 41, 42, 39 Stat. 965, 966; Feb. 26, 1919, ch. 50, § 1, 40 Stat. 1183; Mar. 4, 1921, ch. 161, § 1, 41 Stat. 1412; July 9, 1921, ch. 42, § 313, 42 Stat. 119; Sept. 14, 1922, ch. 306, § 1, 42 Stat. 837; Jan. 16, 1925, ch. 83, § 3, 43 Stat. 752; Feb. 12, 1925, ch. 220, 43 Stat. 890; Feb. 13, 1925, ch. 229, §§ 1, 13, 43 Stat. 936, 942; Feb. 16, 1925, ch. 233, §§ 2, 3, 43 Stat. 946; Mar. 2, 1925, ch. 397, §§ 1–3, 43 Stat. 1098; Mar. 3,

[5] Provisions for one district judge in the Southern District of Indiana were inserted in this section by Senate amendment. See Senate Report No. 1559.

1732

CLOSED,FKB,TRIAL_SET

# U.S. District Court
## Southern District of Mississippi (Northern (Jackson))
## CIVIL DOCKET FOR CASE #: 3:14-cv-00751-CWR-FKB

| | |
|---|---|
| United States of America v. Kuyrkendall et al | Date Filed: 09/25/2014 |
| Assigned to: District Judge Carlton W. Reeves | Date Terminated: 11/21/2016 |
| Referred to: Magistrate Judge F. Keith Ball | Jury Demand: Defendant |
| Case in other court: Fifth Circuit, 17-60031 | Nature of Suit: 870 Taxes |
| Cause: 26:7403 Suit to Enforce Federal Tax Lien | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

**United States of America**     represented by     **Robert E. Dozier-Federal Gov**
U. S. DEPARTMENT OF
JUSTICE - Tax Division
555 Fourth Street, N. W., Room
6211
Washington, DC 22101
202/514-6073
Fax: 202/514-9868
Email:
robert.e.dozier@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wiley R. Kuyrkendall**     represented by     **Wiley R. Kuyrkendall**
200 Grandview Court
Pearl, MS 39208
601-965-9552
PRO SE

**Wayne E. Ferrell , Jr.**
WAYNE E. FERRELL, JR.,
ATTORNEY
P. O. Box 24448

Jackson, MS 39225-4448
601/969-4700
Fax: 601/969-7514
Email:
wferrell@airlawonline.com
*TERMINATED: 12/09/2014*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Greenbriar Holdings**

**Defendant**

**Glacier Systems**

**Defendant**

**Chris Irby**                    represented by    **Bailey R. Fair**
                                                   WATKINS & EAGER, PLLC
                                                   P. O. Box 650
                                                   400 East Capitol Street (39201)
                                                   Jackson, MS 39205-0650
                                                   601/965-1944
                                                   Fax: 601/965-1901
                                                   Email: bfair@watkinseager.com
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Chris Irby Insurance Agency,**   represented by    **Bailey R. Fair**
**Inc.**                                            (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Defendant**

**Teresa L. Hathorn**
*formerly known as*
Teresa A. Kuyrkendall

**Defendant**

**Teresa J. McCann**
*TERMINATED: 08/03/2016*
*formerly known as*
Teresa J. Kuyrkendall
*TERMINATED: 08/03/2016*

**Defendant**

**Judy Fortenberry**
*Tax Collector of Rankin County,*
*Mississippi*

represented by **Craig Lawson Slay-County Gov**
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government St., Suite A
Brandon, MS 39042
601/825-1475
Email: cslay@rankincounty.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mississippi Department of Employment Security**

represented by **Paul H. Kimble-State Gov**
MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY
P. O. Box 1699
Jackson, MS 39215-1699
601/321-6499
Fax: 601/321-6532
Email: pkimble@mdes.ms.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mississippi Department of Revenue**

represented by **John S. Stringer-State Gov**
MISSISSIPPI DEPARTMENT OF REVENUE
P. O. Box 22828
Jackson, MS 39225-2828
601/923-7410
Fax: 601/923-7423
Email: john.stringer@dor.ms.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2014 | 1 | COMPLAINT against Chris Irby Insurance Agency, Inc., Judy Fortenberry, Glacier Systems, Greenbriar Holdings, Teresa L. |

**Attachment 7 - page 3 of 13**

| | | |
|---|---|---|
| | | Hathorn, Chris Irby, Wiley R. Kuyrkendall, Teresa J. McCann, Mississippi Department of Employment Security, Mississippi Department of Revenue, filed by United States of America. (Attachments: # 1 Exhibit 1 - Notice and Judgment, # 2 Exhibit 2 - Notice and Judgment, # 3 Exhibit 3 - Witnessed Affidavit and Notice of Managing Director's Powers of Greenbriar Holdings, # 4 Exhibit 4 - Witnessed Affidavit and Notice of Managing Director's Powers of Glacier Systems, # 5 Civil Cover Sheet, # 6 Cover Letter)(cwl) Modified on 10/14/2014 (cwl). (Entered: 09/25/2014) |
| 10/14/2014 | 2 | Summons Issued as to Chris Irby Insurance Agency, Inc., Judy Fortenberry, Glacier Systems, Greenbriar Holdings, Teresa L. Hathorn, Chris Irby, Wiley R. Kuyrkendall, Teresa J. McCann, Mississippi Department of Employment Security, Mississippi Department of Revenue. (cwl) (Entered: 10/14/2014) |
| 10/15/2014 | 3 | AMENDED COMPLAINT *of the United States* against All Defendants, filed by United States of America. (Attachments: # 1 Exhibit 1 (Criminal Judgment Lien), # 2 Exhibit 2 (Criminal Judgment Lien), # 3 Exhibit 3 (Greenbriar Holdings Affidavit), # 4 Exhibit 4 (Glacier Systems Affidavit))(Dozier, Robert) (Entered: 10/15/2014) |
| 11/07/2014 | 4 | MOTION for Extension of Time to File Answer by Wiley R. Kuyrkendall (Ferrell, Wayne) (Entered: 11/07/2014) |
| 11/07/2014 | | TEXT ONLY ORDER granting 4 Motion for Extension of Time to Answer. Wiley R. Kuyrkendall answer due 12/15/2014. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Magistrate Judge F. Keith Ball on 11/7/14. (WS) (Entered: 11/07/2014) |
| 11/10/2014 | 5 | ANSWER to 3 Amended Complaint, by Judy Fortenberry.(Slay - County Gov, Craig) (Entered: 11/10/2014) |
| 11/12/2014 | 6 | NOTICE of Appearance by Bailey R. Fair on behalf of Chris Irby (Fair, Bailey) (Entered: 11/12/2014) |
| 11/12/2014 | 7 | NOTICE of Appearance by Bailey R. Fair on behalf of Chris Irby Insurance Agency, Inc. (Fair, Bailey) (Entered: 11/12/2014) |
| 11/12/2014 | 8 | MOTION for Extension of Time to File Answer re 3 Amended Complaint, by Chris Irby (Fair, Bailey) (Entered: 11/12/2014) |
| 11/12/2014 | 9 | MOTION for Extension of Time to File Answer re 3 Amended Complaint, by Chris Irby Insurance Agency, Inc. (Fair, Bailey) |

| | | |
|---|---|---|
| | | (Entered: 11/12/2014) |
| 11/12/2014 | | TEXT ONLY ORDER granting <u>8</u> and <u>9</u> -- Motions for Extension of Time to Answer. Chris Irby answer due 12/5/2014; Chris Irby Insurance Agency, Inc. answer due 12/5/2014. NO FURTHER WRITTEN ORDER WILL ISSUE FROM THE COURT. Signed by Magistrate Judge F. Keith Ball on 11/12/14. (WS) (Entered: 11/12/2014) |
| 11/21/2014 | <u>10</u> | Rule 16(a) Initial Order Telephonic Case Management Conference set for 2/19/2015 02:30 PM before Magistrate Judge F. Keith Ball. No later than seven (7) days prior to the TCMC, a confidential memorandum AND a proposed Case Management Order shall be submitted via e-mail to ball_chambers@mssd.uscourts.gov. The plaintiffs counsel shall set up the conference and contact the Court at 601-608-4460. (JEJ) (Entered: 11/21/2014) |
| 11/24/2014 | <u>11</u> | ANSWER to <u>3</u> Amended Complaint, by Mississippi Department of Revenue.(Stringer - State Gov, John) (Entered: 11/24/2014) |
| 11/24/2014 | <u>12</u> | ANSWER to <u>3</u> Amended Complaint, by Mississippi Department of Employment Security.(Kimble - State Gov, Paul) (Entered: 11/24/2014) |
| 11/25/2014 | <u>13</u> | SUMMONS Returned Executed by United States of America Wiley R. Kuyrkendall served on 10/23/2014, answer due 12/15/2014. (Dozier, Robert) (Entered: 11/25/2014) |
| 11/25/2014 | <u>14</u> | SUMMONS Returned Executed by United States of America Chris Irby served on 10/24/2014, answer due 12/5/2014. (Dozier, Robert) (Entered: 11/25/2014) |
| 11/25/2014 | <u>15</u> | SUMMONS Returned Executed by United States of America Teresa L. Hathorn served on 11/10/2014, answer due 12/1/2014. (Dozier, Robert) (Entered: 11/25/2014) |
| 11/25/2014 | <u>16</u> | SUMMONS Returned Executed by United States of America Judy Fortenberry served on 10/24/2014, answer due 11/14/2014. (Dozier, Robert) (Entered: 11/25/2014) |
| 11/25/2014 | <u>17</u> | SUMMONS Returned Executed by United States of America Mississippi Department of Revenue served on 10/22/2014, answer due 11/12/2014. (Dozier, Robert) (Entered: 11/25/2014) |
| 11/25/2014 | <u>18</u> | SUMMONS Returned Executed by United States of America Mississippi Department of Employment Security served on |

CM/ECF LIVE - U.S. District Court: Mississippi Southern District          https://ecf.mssd.uscourts.gov/cgi-bin/DktRpt.pl?58400834185901...

| | | |
|---|---|---|
| | | 10/22/2014, answer due 11/12/2014. (Dozier, Robert) (Entered: 11/25/2014) |
| 12/01/2014 | 19 | MOTION to Withdraw as Attorney by Wiley R. Kuyrkendall (Ferrell, Wayne) (Entered: 12/01/2014) |
| 12/05/2014 | 20 | ANSWER to 3 Amended Complaint, by Chris Irby Insurance Agency, Inc..(Fair, Bailey) (Entered: 12/05/2014) |
| 12/05/2014 | 21 | ANSWER to 3 Amended Complaint, by Chris Irby.(Fair, Bailey) (Entered: 12/05/2014) |
| 12/09/2014 | 22 | NOTICE Quit Claiming of the Two Properties by Wiley R. Kuyrkendall (Attachments: # 1 Exhibit A, # 2 Exhibit B)(cwl) (Entered: 12/09/2014) |
| 12/09/2014 | | TEXT ONLY ORDER granting 19 Motion to Withdraw as Attorney. Attorney Wayne E. Ferrell, Jr terminated. Should no counsel appear on Defendant Kuyrkendall's behalf by January 9, 2015, the Court will assume that Defendant Kuyrkendall is proceeding pro se, without counsel. NO FURTHER WRITTEN ORDER WILL ISSUE. Signed by Magistrate Judge F. Keith Ball on 12/9/14 (Copy of Text Only Order mailed to Kuyrkendall's address as listed on 19 Certificate of Service.) (YWJ) (Entered: 12/09/2014) |
| 12/15/2014 | 23 | ANSWER to 3 Amended Complaint, by Wiley R. Kuyrkendall.(cwl) (Entered: 12/15/2014) |
| 01/23/2015 | 24 | SUMMONS Returned Executed by United States of America Chris Irby Insurance Agency, Inc. served on 10/24/2014, answer due 12/5/2014. (Dozier, Robert) (Entered: 01/23/2015) |
| 01/23/2015 | 25 | Summons Returned Unexecuted by United States of America as to Teresa J. McCann. (Dozier, Robert) (Entered: 01/23/2015) |
| 01/23/2015 | 26 | MOTION for Extension of Time to Serve Process *on (1) Teresal J. McCann (2) Greenbriar Holdings and (3) Glacier Systems* by United States of America (Attachments: # 1 Exhibit 1 (Declaration of Robert E. Dozier))(Dozier, Robert) (Entered: 01/23/2015) |
| 01/23/2015 | 27 | MEMORANDUM in Support re 26 MOTION for Extension of Time to Serve Process *on (1) Teresa J. McCann (2) Greenbriar Holdings and (3) Glacier Systems* filed by United States of America (Dozier, Robert) (Entered: 01/23/2015) |

| 01/26/2015 | 28 | ORDER granting 26 Motion for Extension of Time to Serve Process. Signed by Magistrate Judge F. Keith Ball on 1/26/15. (YWJ) (Entered: 01/26/2015) |
|---|---|---|
| 02/19/2015 | | Minute Entry for proceedings held before Magistrate Judge F. Keith Ball: Telephonic Case Management Conference held on 2/19/2015 in Jackson, MS. Appearing: Robert Dozier, Wiley Kuyrkendall, Bailey Fair, Craig Slay, Paul Kimble and John Stringer. (JEJ) (Entered: 03/09/2015) |
| 03/06/2015 | 29 | NOTICE of Service of *Federal Rule of Civil Procedure 25(a)(1)* Disclosure by Mississippi Department of Revenue (Stringer - State Gov, John) (Entered: 03/06/2015) |
| 03/06/2015 | 30 | NOTICE of Service of *Rule 26(a)(1) Initial* Disclosure by Chris Irby (Fair, Bailey) (Entered: 03/06/2015) |
| 03/06/2015 | 31 | NOTICE of Service of *Rule 26(a)(1) Initial* Disclosure by Chris Irby Insurance Agency, Inc. (Fair, Bailey) (Entered: 03/06/2015) |
| 03/09/2015 | 32 | CASE MANAGEMENT ORDER. Motions for Amended Pleadings due by 3/23/2015; Motions for Joinder of Parties due by 3/23/2015; Designate Experts Plaintiff Deadline due by 7/22/2015; Designate Experts for Defendant Deadline due by 8/21/2015; Discovery due by 10/21/2015; Motions due by 11/4/2015; Pretrial Conference set for 3/11/2016, time to be determined, in Courtroom 5B (Jackson) Reeves before District Judge Carlton W. Reeves; Jury Trial set for a two-week term of court commencing 4/4/2016 09:00 AM in Courtroom 5B (Jackson) Reeves before District Judge Carlton W. Reeves; Settlement Conference set for 10/1/2015 09:00 AM before Magistrate Judge F. Keith Ball. Seven (7) days before the settlement conference, the parties must submit via e-mail to ball_chambers@mssd.uscourts.gov an updated CONFIDENTIAL SETTLEMENT MEMORANDUM. All parties are required to be present at the conference unless excused by the Court. If a party believes the scheduled settlement conference would not be productive and should be cancelled, the party is directed to inform the Court via e-mail of the grounds for their belief at least seven (7) days prior to the conference. Signed by Magistrate Judge F. Keith Ball on 3/9/15. (JEJ) (Entered: 03/09/2015) |
| 03/12/2015 | 33 | NOTICE of Service of *Initial* Disclosure by Judy Fortenberry (Slay - County Gov, Craig) (Entered: 03/12/2015) |

**Attachment 7 - page 7 of 13**

| 03/24/2015 | 34 | MOTION for Extension of Time to Serve Process *On or Obtain Dismissals of (1) Teresa J. McCann (2) Greenbriar Holdings and (3) Glacier Systems* by United States of America (Dozier, Robert) (Entered: 03/24/2015) |
| 03/24/2015 | 35 | MEMORANDUM in Support re 34 MOTION for Extension of Time to Serve Process *On or Obtain Dismissals of (1) Teresa J. McCann (2) Greenbriar Holdings and (3) Glacier Systems* filed by United States of America (Dozier, Robert) (Entered: 03/24/2015) |
| 03/27/2015 | 36 | ORDER granting 34 Motion for Extension of Time to Serve Process. Signed by Magistrate Judge F. Keith Ball on 3/27/15. (WS) (Entered: 03/27/2015) |
| 04/02/2015 | 37 | Pre-Discovery Disclosure by Wiley R. Kuyrkendall (cwl) (Entered: 04/02/2015) |
| 06/15/2015 | 38 | STIPULATION of Dismissal as to Glacier Systems and Greenbriar Holdings by Wiley R. Kuyrkendall (cwl) Modified on 6/15/2015 (cwl). (Entered: 06/15/2015) |
| 09/23/2015 | | TEXT-ONLY ORDER cancelling settlement conference set for October 1, 2015. No further written order shall issue from the Court. Signed by Magistrate Judge F. Keith Ball on 9/23/2015. (JEJ) (Entered: 09/23/2015) |
| 10/28/2015 | 39 | MOTION for Entry of Default *as to Teresa L. Hathorn (Fomerly Teresa A. Kuyrkendall)* by United States of America (Attachments: # 1 Exhibit A (Declaration of Robert E. Dozier)) (Dozier, Robert) (Entered: 10/28/2015) |
| 10/29/2015 | 40 | Clerk's ENTRY OF DEFAULT as to Teresa L. Hathorn. (cwl) (Entered: 10/29/2015) |
| 10/29/2015 | 41 | SERVICE by Publication filed by United States of America. Last publication date 5/22/2015. (Dozier, Robert) (Entered: 10/29/2015) |
| 10/29/2015 | 42 | MOTION for Entry of Default *as to Teresa J. McCann* by United States of America (Attachments: # 1 Exhibit (Declaration of Robert E. Dozier))(Dozier, Robert) (Entered: 10/29/2015) |
| 10/29/2015 | 43 | Clerk's ENTRY OF DEFAULT as to Teresa J. McCann (cwl) (Entered: 10/29/2015) |
| 11/04/2015 | 44 | MOTION for Summary Judgment *of the United States of America* by United States of America (Attachments: # 1 Exhibit 1 |

| | | |
|---|---|---|
| | | (Declaration of IRS Advisor Katherine F. Young), # 2 Exhibit 2-1 (Compressed Transcript of Deposition of Wiley R. Kuyrkendall -- October 21, 2015), # 3 Exhibit 2-2 (Exhibits 1-10 to Deposition), # 4 Exhibit 2-3 (Exhibits 11-29 to Deposition), # 5 Exhibit 2-4(Exhibits 30-40 to Deposition), # 6 Exhibit 3 (IRS Form 4340 -2001 Tax Year), # 7 Exhibit 4 (IRS Form 4340-2002 Tax Year), # 8 Exhibit 5 (IRS Account Transcript -2001), # 9 Exhibit 6 (IRS Account Transcript 2002), # 10 Exhibit 7-1, # 11 Exhibit 7-2, # 12 Exhibit 7-3, # 13 Exhibit 7-4, # 14 Exhibit 7-5, # 15 Exhibit 7-6, # 16 Exhibit 7-7, # 17 Exhibit 7-8, # 18 Exhibit 7-9, # 19 Exhibit 7-10, # 20 Exhibit 7-11, # 21 Exhibit 7-12, # 22 Exhibit 8-1, # 23 Exhibit 8-2, # 24 Exhibit 8-3, # 25 Exhibit 8-4, # 26 Exhibit 8-5, # 27 Exhibit 8-6, # 28 Exhibit 8-7, # 29 Exhibit 9)(Dozier, Robert) (Entered: 11/04/2015) |
| 11/04/2015 | 45 | MEMORANDUM in Support re 44 MOTION for Summary Judgment *of the United States of America* filed by United States of America (Dozier, Robert) (Entered: 11/04/2015) |
| 11/04/2015 | 46 | MOTION for Default Judgment as to *Teresa L. Hathorn and Teresa J. McCann* by United States of America (Dozier, Robert) (Entered: 11/04/2015) |
| 11/04/2015 | 47 | MEMORANDUM in Support re 46 MOTION for Default Judgment as to *Teresa L. Hathorn and Teresa J. McCann* filed by United States of America (Dozier, Robert) (Entered: 11/04/2015) |
| 11/04/2015 | 48 | MOTION to Dismiss by Wiley R. Kuyrkendall (MGB) (Entered: 11/05/2015) |
| 11/04/2015 | 49 | MEMORANDUM in Support re 48 MOTION to Dismiss filed by Wiley R. Kuyrkendall (MGB) (Entered: 11/05/2015) |
| 11/11/2015 | 50 | RESPONSE to Motion re 44 MOTION for Summary Judgment *of the United States of America* filed by Chris Irby Insurance Agency, Inc. (Fair, Bailey) (Entered: 11/11/2015) |
| 11/11/2015 | 51 | MEMORANDUM IN SUPPORT re 50 Response to Motion, re 44 MOTION for Summary Judgment filed by Chris Irby Insurance Agency, Inc. (Fair, Bailey) (Entered: 11/11/2015) |
| 11/23/2015 | 52 | RESPONSE in Opposition re 48 MOTION to Dismiss *by Wiley R. Kuyrkendall* filed by United States of America (Attachments: # 1 Exhibit 1 (Declaration of Robert E. Dozier))(Dozier, Robert) (Entered: 11/23/2015) |

**Attachment 7 - page 9 of 13**

| | | |
|---|---|---|
| 11/23/2015 | 53 | MEMORANDUM IN SUPPORT re 52 Response in Opposition to Motion, 48 Motion *to Dismiss by Wiley R. Kuyrkendall* filed by United States of America (Dozier, Robert) (Entered: 11/23/2015) |
| 11/24/2015 | 54 | Response in Opposition re 44 MOTION for Summary Judgment *of the United States of America* by United States of America (Attachments: # 1 Exhibit 1 (Declaration of IRS Advisor Katherine F. Young), # 2 Exhibit 2-1 (Compressed Transcript of Deposition of Wiley R. Kuyrkendall -- October 21, 2015), # 3 Exhibit 2-2 (Exhibits 1-10 to Deposition), # 4 Exhibit 2-3 (Exhibits 11-29 to Deposition), # 5 Exhibit 2-4(Exhibits 30-40 to Deposition), # 6 Exhibit 3 (IRS Form 4340 -2001 Tax Year), # 7 Exhibit 4 (IRS Form 4340-2002 Tax Year), # 8 Exhibit 5 (IRS Account Transcript -2001), # 9 Exhibit 6 (IRS Account Transcript 2002), # 10 Exhibit 7-1, # 11 Exhibit 7-2, # 12 Exhibit 7-3, # 13 Exhibit 7-4, # 14 Exhibit 7-5, # 15 Exhibit 7-6, # 16 Exhibit 7-7, # 17 Exhibit 7-8, # 18 Exhibit 7-9, # 19 Exhibit 7-10, # 20 Exhibit 7-11, # 21 Exhibit 7-12, # 22 Exhibit 8-1, # 23 Exhibit 8-2, # 24 Exhibit 8-3, # 25 Exhibit 8-4, # 26 Exhibit 8-5, # 27 Exhibit 8-6, # 28 Exhibit 8-7, # 29 Exhibit 9)(Dozier, Robert) filed by Wiley R. Kuyrkendall (cwl) (Entered: 11/25/2015) |
| 11/25/2015 | 55 | Judicial NOTICE of the Laws of the United States, the Constitution of the United States, Stare Decisis, Precedents and Holdings of the Constitutional Courts Arising Under Article III by Wiley R. Kuyrkendall. (cwl) (Entered: 11/25/2015) |
| 11/25/2015 | 56 | Judicial NOTICE of the Internal Revenue Laws Codified in Title 26 of the United States Code by Wiley R. Kuyrkendall. (cwl) (Entered: 11/25/2015) |
| 11/25/2015 | 57 | STIPULATION re 46 MOTION for Default Judgment as to *Teresa L. Hathorn and Teresa J. McCann Comprising Stipulation Between the United States of America and Teresa L. Hathorn Confirming Hathorn Has No Claims to Parcel 1 and Parcel 2* by United States of America (Dozier, Robert) (Entered: 11/25/2015) |
| 12/04/2015 | 58 | Rebuttal re 54 Response in Opposition,,,, *to Motion for Summary Judgment of the United States of America* filed by United States of America (Dozier, Robert) (Entered: 12/04/2015) |
| 12/21/2015 | 59 | MOTION to Withdraw 46 MOTION for Default Judgment as to *Teresa L. Hathorn and Teresa J. McCann* by United States of America (Dozier, Robert) (Entered: 12/21/2015) |

**Attachment 7 - page 10 of 13**

| | | |
|---|---|---|
| 12/21/2015 | 60 | MEMORANDUM in Support re 59 MOTION to Withdraw 46 MOTION for Default Judgment as to *Teresa L. Hathorn and Teresa J. McCann* filed by United States of America (Dozier, Robert) (Entered: 12/21/2015) |
| 12/23/2015 | 61 | ORDER granting 59 United States' Motion to Withdraw Motion for Entry of Default Judgment as to Teresa L. Hathorn. Signed by District Judge Carlton W. Reeves on 12/23/2015. (EJ) (Entered: 12/23/2015) |
| 02/24/2016 | | TEXT-ONLY ORDER postponing the Pretrial Conference pending a ruling on the pending Motion for Summary Judgment and Motion to Dismiss. Counsel are not required to forward a Proposed Pretrial Order until further notice from this Court. NO FURTHER WRITTEN ORDER SHALL BE ISSUED. Signed by District Judge Carlton W. Reeves on 2/24/2016. (JS) (Entered: 02/24/2016) |
| 03/21/2016 | | TEXT-ONLY ORDER continuing the current trial date pending a ruling on the Motion for Summary Judgment and Motion to Dismiss. The Court will reset the trial date based on the parties' availability, if necessary. (Copy of NEF mailed to defendant at address listed on docket sheet.) NO FURTHER WRITTEN ORDER SHALL ISSUE. Signed by District Judge Carlton W. Reeves on 3/21/2016.(EJ) (Entered: 03/21/2016) |
| 08/03/2016 | 62 | ORDER granting 46 Motion for Default Judgment Signed by District Judge Carlton W. Reeves on 8/3/16 (MGB) (Entered: 08/03/2016) |
| 08/03/2016 | 63 | FINAL JUDGMENT in favor of United States of America against Teresa J. McCann. Default Judgment is entered in favor of the plaintiff and any rights and claims to the property at issue are extinguished. Signed by District Judge Carlton W. Reeves on 8/3/16 (MGB) (Entered: 08/03/2016) |
| 10/19/2016 | 64 | ORDER granting 44 Motion for Summary Judgment; denying 48 Motion to Dismiss. Signed by District Judge Carlton W. Reeves on 10/19/2016 (cwl) (Entered: 10/19/2016) |
| 11/02/2016 | | *ORE TENUS* MOTION for Extension of Time to submit a proposed Decree of Foreclosure and Order of Sale and a proposed Final Judgment on or before 11/04/16 by United States of America. (N.M.) (Entered: 11/02/2016) |

CM/ECF LIVE - U.S. District Court: Mississippi Southern District    https://ecf.mssd.uscourts.gov/cgi-bin/DktRpt.pl?58400834185901...

| | | |
|---|---|---|
| 11/02/2016 | | TEXT-ONLY ORDER granting *ore tenus* Motion for Extension of Time to submit a proposed Decree of Foreclosure and Order of Sale and a proposed Final Judgment by United States of America. Documents are due on 11/07/16. NO FURTHER WRITTEN ORDER SHALL ISSUE. Signed by District Judge Carlton W. Reeves on 11/02/16. (N.M.) (Entered: 11/02/2016) |
| 11/08/2016 | | TEXT-ONLY ORDER acknowledging receipt of proposed Final Judgment and proposed Decree of Foreclosure and Order of Sale submitted by the United States. (Copy of documents and NEF mailed to Defendant Wiley R. Kuyrkendall at the address reflected on the docket sheet.) Defendant must file any objections to entry of the proposed judgment and order on or before 11/18/2016. NO FURTHER WRITTEN ORDER SHALL ISSUE. Signed by District Judge Carlton W. Reeves on 11/08/16. (N.M.) (Entered: 11/08/2016) |
| 11/18/2016 | <u>65</u> | Response in Opposition re TEXT-ONLY ORDER acknowledging receipt of proposed Final Judgment and proposed Decree of Foreclosure and Order of Sale submitted by the United States. (Copy of documents and NEF mailed to Defendant Wiley R. Kuyrkendall at the address reflected on the docket sheet.) Defendant must file any objections to entry of the proposed judgment and order on or before 11/18/2016. NO FURTHER WRITTEN ORDER SHALL ISSUE. Signed by District Judge Carlton W. Reeves on 11/08/16. (N.M.) filed by Wiley R. Kuyrkendall (cwl) (Entered: 11/18/2016) |
| 11/18/2016 | <u>66</u> | MEMORANDUM IN SUPPORT re <u>65</u> Response in Opposition to Proposed Judgment and ORder of Judge Reeves. filed by Wiley R. Kuyrkendall (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D)(cwl) (Entered: 11/18/2016) |
| 11/21/2016 | <u>67</u> | ORDER on defendant's Objections to Proposed Final Judgment. Signed by District Judge Carlton W. Reeves on 11/21/2016 (cwl) (Entered: 11/21/2016) |
| 11/21/2016 | <u>68</u> | FINAL JUDGMENT entered. Signed by District Judge Carlton W. Reeves on 11/21/2016 (cwl) (Entered: 11/21/2016) |
| 11/21/2016 | <u>69</u> | DECREE of Foreclosure and Order of Sale as to Parcel 2. Signed by District Judge Carlton W. Reeves on 11/21/2016 (cwl) (Entered: 11/21/2016) |
| 01/19/2017 | <u>70</u> | NOTICE OF APPEAL as to <u>69</u> Decree of Foreclosure, <u>68</u> Judgment by Wiley R. Kuyrkendall. Filing fee $ 505, receipt |

**Attachment 7 - page 12 of 13**

CM/ECF LIVE - U.S. District Court: Mississippi Southern District          https://ecf.mssd.uscourts.gov/cgi-bin/DktRpt.pl?58400834185901...

| | | |
|---|---|---|
| | | number 34643043080. (cwl) (Entered: 01/19/2017) |
| 01/19/2017 | | DOCKET ANNOTATION as to # 70 : Transcript Order Form mailed to Wiley R. Kuyrkendall. 200 Grandview Court, Pearl, MS 39208. (cwl) (Entered: 01/19/2017) |
| 01/25/2017 | | USCA Case Number 17-60031 for 70 Notice of Appeal filed by Wiley R. Kuyrkendall. (cwl) (Entered: 01/25/2017) |
| 01/25/2017 | | Certified and Electronically Transmitted Record on Appeal to US Court of Appeals and waiting for acceptance re 70 Notice of Appeal. A separate docket entry will be made once the record is accepted and may then be requested by the parties. (cwl) (Entered: 01/25/2017) |
| 02/02/2017 | | DOCKET ANNOTATION as to # 70 In error the appeal in this case was transmitted to the 5th Circuit Court of Appeals. Case is today being re-transmitted to the U. S. Court of Appeals for the Federal Circuit. The Appeal should retain same file date it was received in the District Court. (cwl) (Entered: 02/02/2017) |
| 02/06/2017 | 71 | CERTIFIED COPY OF USCA JUDGMENT/MANDATE DISMISSING as to 70 Notice of Appeal filed by Wiley R. Kuyrkendall (ISSUED AS MANDATE 2/6/17) (Attachments: # 1 Cover Letter)(MGB) (Entered: 02/06/2017) |
| 03/08/2017 | 72 | USCA for the Federal Circuit Case No. 17-1713 as to Wiley R. Kuyrkendall (Attachments: # 1 Envelope) (cwl) (Entered: 03/08/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/28/2017 12:11:45 | | |
| PACER Login: | ▉▉▉▉▉▉▉ | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:14-cv-00751-CWR-FKB |
| Billable Pages: | 7 | Cost: | 0.70 |

FORM 1.  Notice of Appeal to the United States Court of Appeals for the Federal Circuit from a          Form 1
    Judgment or Order of a UNITED STATES DISTRICT COURT                                                 Rev. 03/16

## United States District Court

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
JAN 19 2017
ARTHUR JOHNSTON
BY _____ DEPUTY

### for the

**Southern** _____ **District of** Mississippi

The United States _____,    **Plaintiff,**

                                v.              Case No.  3-14-cv-751 _____

Wiley Randolph Kuyrkendall _____,    **Defendant.**

## NOTICE OF APPEAL

Notice is hereby given that   Wiley Randolph Kuyrkendall

(name all parties * taking the appeal) in the above named case hereby appeal to the United States

Court of Appeals for the Federal Circuit  Final Judgment Summary Judgment and Decree of Foreclosure

(from the final judgment) ((from an order) (describe the order)) entered in this action on   Nov 21, 2016

_____ (Signature of appellant or attorney)

Wiley Randolph Kuyrkendall, 200 Grandview Court, Pearl, Mississippi 39208

rf4c@hushmail.com

(Address of appellant or attorney and e-mail address)

▲

*See Fed. R. App. P. 3(c) for permissible ways of identifying appellants.

**Attachment 8 – page 1 of 1**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

United States      v.      Wiley R. Kuyrkendall, et al.

No.      17-1713

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3. Counsel must immediately file an updated Entry of Appearance if representation changes, including a change in contact information. Electronic filers must also report a change in contact information to the PACER Service Center. Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

☐ Pro Se      ☒ As counsel for:      United States

                                            Name of party

I am, or the party I represent is (select one):

☐ Petitioner      ☐ Respondent      ☐ Amicus curiae      ☐ Cross Appellant

☐ Appellant      ☒ Appellee      ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant      ☐ Respondent or appellee

| | |
|---|---|
| Name: | Norah E. Bringer |
| Law Firm: | U.S. Department of Justice, Tax Division, Appellate Section |
| Address: | Post Office Box 502 |
| City, State and Zip: | Washington, D.C. 20044 |
| Telephone: | (202) 307-6224 |
| Fax #: | (202) 514-8456 |
| E-mail address: | appellate.taxcivil@usdoj.gov; norah.e.bringer@usdoj.gov |

Statement to be completed by counsel only (select one):

☒ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only): ☐ Yes      ☒ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

Date   Mar 8, 2017      Signature of pro se or counsel   /s Norah E. Bringer

cc:   Wiley R. Kuyrkendall

Attachment 9 – page 1 of 2

Form 30

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on   March 8, 2017
by:

☒ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Norah E. Bringer | s/ Norah E. Bringer |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | U.S. Department of Justice, Tax Division, Appellate Section |
| Address | Post Office Box 502 |
| City, State, Zip | Washington, D.C. 20044 |
| Telephone Number | (202) 307-6224 |
| Fax Number | (202) 514-8456 |
| E-Mail Address | appellate.taxcivil@usdoj.gov; norah.e.bringer@usdoj.gov |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

**Attachment 9 – page 2 of 2**

**General Docket**
**United States Court of Appeals for the 5th Circuit**

| | |
|---|---|
| **Court of Appeals Docket #: 17-60031** | **Docketed: 01/20/2017** |
| **Nature of Suit:** 1870 Tax Suits (Tax from DC) | **Termed: 02/06/2017** |
| **USA v. Wiley Kuyrkendall** | |
| **Appeal From:** Southern District of Mississippi, Jackson | |
| **Fee Status:** Fee Paid | |

**Case Type Information:**
   1) United States Civil
   2) United States
   3)

**Originating Court Information:**
   **District:** 0538-3 : 3:14-CV-751
   **Originating Judge:** Carlton W. Reeves, U.S. District Judge
   **Date Filed:** 09/25/2014

| **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|
| 01/19/2017 | 01/19/2017 |

**Prior Cases:**
   None

**Current Cases:**
   None

**Panel Assignment:**     Not available

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br>       Plaintiff - Appellee | Robert E. Dozier<br>Direct: 202-514-6073<br>Email: robert.e.dozier@usdoj.gov<br>Fax: 202-514-9868<br>[NTC Government]<br>U.S. Department of Justice<br>Tax Division<br>P.O. Box 14193<br>Ben Franklin Station<br>Washington, DC 20044-0000 |
| v. | |
| WILEY R. KUYRKENDALL<br>       Defendant - Appellant | Wiley R. Kuyrkendall<br>Direct: 601-965-9552<br>[NTC Pro Se]<br>200 Grandview Court<br>Pearl, MS 39208 |

**Attachment 10 - page 1 of 4**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

WILEY R. KUYRKENDALL,

       Defendant - Appellant

**Attachment 10 - page 2 of 4**

https://ecf.ca5.uscourts.gov/cmecf/servlet/TransportRoom

| 01/20/2017 | 1 pg, 140.24 KB | US CIVIL CASE docketed. NOA filed by Appellant Mr. Wiley R. Kuyrkendall [17-60031] (MAS) |
| 01/25/2017 | 2 pg, 88.09 KB | INITIAL CASE CHECK by Attorney Advisor complete, Action: Case OK to Process. [8409121-2] Initial AA Check Due satisfied. [17-60031] (MAS) |
| 01/25/2017 | | ELECTRONIC RECORD ON APPEAL REQUESTED FROM DISTRICT COURT for 3:14-CV-751. Electronic ROA due on 02/09/2017. [17-60031] (MAS) |
| 01/26/2017 | | ELECTRONIC RECORD ON APPEAL FILED. Exhibits on File in District Court? No. Electronic ROA deadline satisfied. [17-60031] (MRB) |
| 01/26/2017 | 4 pg, 93.63 KB | BRIEFING NOTICE ISSUED A/Pet's Brief Due on 03/07/2017 for Appellant Wiley R. Kuyrkendall. [17-60031] (MRB) |
| 02/02/2017 | 1 pg, 70.35 KB | LETTER OF ADVISEMENT. Reason: Advising the appellant that the appeal will continue in this court. If he wishes to dismiss the appeal here, he must file a motion to dismiss with this court. [17-60031] (CB) |
| 02/06/2017 | 2 pg, 40.68 KB | MOTION filed by Appellant Mr. Wiley R. Kuyrkendall to dismiss appeal pursuant to Fed. R. App. P. 42 [8418572-2]. Date of service: 02/02/2017 [17-60031] (CB) |
| 02/06/2017 | 2 pg, 155.58 KB | CLERK ORDER granting motion to dismiss appeal pursuant to Fed. R. App. P. 42 filed by Appellant Mr. Wiley R. Kuyrkendall [8418572-2] [17-60031] (CB) |

**Attachment 10 – page 3 of 4**

Clear All

⦿ **Documents and Docket Summary**
○ **Documents Only**

⌐ **Include Page Numbers**

**Selected Pages:** 0      **Selected Size:** 0 KB

View Selected

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 5th Circuit - Appellate - 03/22/2017 12:14:35 | | | |
| **PACER Login:** | rw1679:3045868:0 | **Client Code:** | |
| **Description:** | Docket Report (full) | **Search Criteria:** | 17-60031 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**General Docket**
**United States Court of Appeals for the Federal Circuit**

| | |
|---|---|
| Court of Appeals Docket #: 17-1713 | Docketed: 03/01/2017 |
| Nature of Suit: 870 Tax Suits (US Plaintiff) | Termed: 04/28/2017 |
| US v. Kuyrkendall | |
| Appeal From: United States District Court for the Southern District of Mississippi | |
| Fee Status: fee paid | |

**Case Type Information:**
  1) Civil US
  2) -
  3) -

**Originating Court Information:**
  District: 0538-3 : 3:14-cv-00751-CWR-FKB
  Trial Judge: Carlton W. Reeves, United States District Judge
  Date Filed: 09/25/2014

| Date NOA Filed: | Date Rec'd COA: |
|---|---|
| 01/19/2017 | 02/21/2017 |

**Prior Cases:**
  None

**Current Cases:**
  None

---

| | |
|---|---|
| UNITED STATES<br>       Plaintiff - Appellee | Norah Bringer<br>Direct: 202-307-6224<br>Email: norah.e.bringer@usdoj.gov<br>[LD NTC Government]<br>U.S. Department of Justice<br>Tax Division, Appellate Section<br>Ben Franklin Station<br>PO Box 502<br>Washington, DC 20044<br><br>Jonathan S. Cohen, Attorney<br>Direct: 202-514-2970<br>Email: appellate.taxcivil@usdoj.gov<br>Fax: 202-514-8456<br>[COR NTC Government]<br>Department of Justice<br>Tax Division<br>PO Box 502<br>Ben Franklin Station<br>Washington, DC 20044 |
| v. | |
| WILEY R. KUYRKENDALL<br>       Defendant - Appellant | Wiley R. Kuyrkendall, -<br>Direct: 601-965-9552<br>[NTC Pro Se]<br>200 Grandview Court<br>Pearl, MS 39208 |
| GREENBRIAR HOLDINGS<br>       Defendant | |
| GLACIER SYSTEMS<br>       Defendant | |
| CHRIS IRBY<br>       Defendant | |

**Attachment 11 - page 1 of 5**

CHRIS IRBY INSURANCE AGENCY, INC.
        Defendant

TERESA L. HATHORN, fka Teresa A. Kuyrkendall
        Defendant

JUDY FORTENBERRY, Tax Collector of Rankin County,
Mississippi
        Defendant

MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY
        Defendant

MISSISSIPPI DEPARTMENT OF REVENUE
        Defendant

UNITED STATES,

        Plaintiff - Appellee

v.

WILEY R. KUYRKENDALL,

        Defendant - Appellant

GREENBRIAR HOLDINGS, GLACIER SYSTEMS, CHRIS IRBY, CHRIS IRBY INSURANCE AGENCY, INC., TERESA L. HATHORN, fka Teresa A. Kuyrkendall, JUDY FORTENBERRY, Tax Collector of Rankin County, Mississippi, MISSISSIPPI DEPARTMENT OF EMPLOYMENT SECURITY, MISSISSIPPI DEPARTMENT OF REVENUE,

        Defendants

| 03/01/2017 | 🗋 1<br>29 pg, 1.01 MB | Appeal docketed. Received: 02/21/2017. [411721]<br>Entry of Appearance due 03/15/2017. Appellant/Petitioner's Informal brief is due 03/22/2017. |
|---|---|---|
| 03/08/2017 | 🗋 2<br>2 pg, 154.48 KB | Entry of appearance for Norah E. Bringer as principal counsel for Appellee US. Service: 03/08/2017 by US mail, email. [413532] |
| 03/15/2017 | 🗋 3<br>3 pg, 613.34 KB | Entry of appearance for Wiley Randolph Kuyrkendall as pro se appellant. Service: 03/13/2017 by US mail. [416321] |
| 03/15/2017 | 📁 5<br>5 pg, 793.8 KB | Docketing Statement for the Appellant Wiley R. Kuyrkendall [no action taken by clerk - form not required]. Service: 03/13/2017 by US mail. [416328] |
| 03/15/2017 | 📁 8<br>3 pg, 422.69 KB | MOTION of Appellant Wiley R. Kuyrkendall requesting 'formal briefing schedule'. *Any response is due within 10 days of service* [Consent: not addressed]. Service: 03/17/2017 by clerk. [416516] |
| 03/16/2017 | 📁 4<br>3 pg, 509.59 KB | Certificate of Interest for the Appellant Wiley R. Kuyrkendall [form is incomplete - no action taken by clerk as form is not required]. Service: 03/13/2017 by US mail. [416325] |
| 03/16/2017 | 📁 6<br>2 pg, 154.54 KB | Entry of appearance for Jonathan S. Cohen as of counsel for Appellee US. Service: 03/16/2017 by US mail, email. [416375] |
| 03/16/2017 | 📁 7<br>11 pg, 93.13 KB | CORRECTED ENTRY: MOTION of Appellee US to terminate appeal through transfer to USCA 5th Circuit. [Consent: opposed]. Service: 03/16/2017 by US mail, email. [416384]--[Edited 03/17/2017 by SJ - Reason: to add additional reliefs] |
| 03/17/2017 | 📁 9<br>2 pg, 69.21 KB | ORDER filed. The briefing schedule is stayed pending disposition of the motions. See Fed. Cir. R. 31(c). Service: 03/17/2017 by clerk. [416554] |
| 03/30/2017 | 📁 10<br>127 pg, 37.78 MB | RESPONSE of Appellant Wiley R. Kuyrkendall to the motion to terminate appeal [7] filed by Appellee US in 17-1713. Service: 03/29/2017 by US mail. [420369] |
| 04/28/2017 | 📁 11<br>3 pg, 79.93 KB | ORDER filed. The stay of proceedings is lifted. The motion to transfer [7] is granted. This case and all filings [8] are transferred pursuant to 28 U.S.C. § 1631 to the United States Court of Appeals for the Fifth Circuit. ISSUED AS A MANDATE: April 28, 2017. (Per Curiam). Service: 04/28/2017 by clerk. [427760] |

[ Clear All ]

● Documents and Docket Summary
○ Documents Only

● Include Page Numbers

Selected Pages: [0]     Selected Size: [0 KB]     (Max: 30 MB)

[ View Selected ]

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 05/10/2017 21:31:08 | | |
| PACER Login: | rw1679:3045868:0 | Client Code: |
| Description: | Docket Report (filtered) | Search Criteria: | 17-1713 |
| Billable Pages: | 2 | Cost: | 0.20 |

**Attachment 11 – page 5 of 5**

**General Docket**
**United States Court of Appeals for the Fifth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 17-60335 | **Docketed:** 05/01/2017 |

**Nature of Suit:** 1870 Tax Suits (Tax from DC)
USA v. Wiley Kuyrkendall
**Appeal From:** Southern District of Mississippi, Jackson
**Fee Status:** Fee Paid

---

**Case Type Information:**
    1) United States Civil
    2) United States
    3)

---

**Originating Court Information:**
    **District:** 0538-3 : 3:14-CV-751
    **Originating Judge:** Carlton W. Reeves, U.S. District Judge
    **Date Filed:** 09/25/2014

| **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|
| 05/01/2017 | 05/01/2017 |

---

**Prior Cases:**
    17-60031   **Date Filed:** 01/20/2017   **Date Disposed:** 02/06/2017   **Disposition:** Dismissed

**Current Cases:**
    None

---

**Panel Assignment:**    Not available

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br>    Plaintiff - Appellee | Norah Bringer<br>Direct: 202-307-6224<br>Email: norah.e.bringer@usdoj.gov<br>[COR LD NTC Government]<br>U.S. Department of Justice<br>Tax Division, Appellate Section<br>P.O. Box 502<br>Washington, DC 20044<br><br>Robert E. Dozier<br>Direct: 202-514-6073<br>Email: robert.e.dozier@usdoj.gov<br>Fax: 202-514-9868<br>[NTC Government]<br>U.S. Department of Justice<br>Tax Division<br>P.O. Box 14193<br>Ben Franklin Station<br>Washington, DC 20044-0000 |
| v. | |
| WILEY R. KUYRKENDALL<br>    Defendant - Appellant | Wiley R. Kuyrkendall<br>Direct: 601-965-9552<br>[NTC Pro Se]<br>200 Grandview Court<br>Pearl, MS 39208 |

**Attachment 12 - page 1 of 4**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

WILEY R. KUYRKENDALL,

      Defendant - Appellant

**Attachment 12 - page 2 of 4**

| 05/01/2017 | 3 pg, 69.04 KB | TRANSFER CASE docketed. Filing order of the Federal Circuit transferring the case to this Court. [17-60335] (CB) |
| 05/04/2017 | 1 pg, 177.82 KB | APPEARANCE FORM for the court's review. Lead Counsel? Yes. [17-60335] (Norah Bringer ) |
| 05/05/2017 | 2 pg, 81.96 KB | INITIAL CASE CHECK by Attorney Advisor complete, Action: Case OK to Process. [8490413-2] Initial AA Check Due satisfied. [17-60335] (CB) |
| 05/05/2017 | | ELECTRONIC RECORD ON APPEAL REQUESTED FROM DISTRICT COURT for 3:14-CV-751. Electronic ROA due on 05/22/2017. [17-60335] (CB) |
| 05/05/2017 | | APPEARANCE FORM FILED by Attorney(s) Norah Bringer for party(s) Appellee USA, in case 17-60335 [17-60335] (LEF) |
| 05/09/2017 | | ELECTRONIC RECORD ON APPEAL FILED. Exhibits on File in District Court? No. Electronic ROA deadline satisfied. [17-60335] (MVM) |
| 05/09/2017 | 4 pg, 106.7 KB | BRIEFING NOTICE ISSUED A/Pet's Brief Due on 06/19/2017 for Appellant Wiley R. Kuyrkendall. [17-60335] (MVM) |

Clear All

■ Documents and Docket Summary
○ Documents Only

☐ Include Page Numbers

Selected Pages: 0          Selected Size: 0 KB

View Selected

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 5th Circuit - Appellate - 06/08/2017 12:33:34 | | |
| **PACER Login:** | rw1679:3045868:0 | **Client Code:** |
| **Description:** | Docket Report (full) | **Search Criteria:** 17-60335 |
| **Billable Pages:** | 1 | **Cost:** 0.10 |

**Attachment 12 – page 4 of 4**

## NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO.: 17-60335

United States                                    vs.  Wiley R. Kuyrkendall

(Short Title)
The Clerk will enter my appearance as Counsel for **United States of America**

(Please list names of all parties represented, attach additional pages if necessary.)
**The party(s) I represent IN THIS COURT**    ☐ Petitioner(s)    ☐ Respondent(s)    ☐ Amicus Curiae

☐ Appellant(s)    ☑ Appellee(s)    ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

s/ Norah E. Bringer                              norah.e.bringer@usdoj.gov
(Signature)                                      (e-mail address)

Norah E. Bringer                                 NY 4688479
(Type or print name)                             (State/Bar No.)

Attorney                                         ☐ Male    ☑ Female
(Title, if any)

Tax Division, Appellate Section
(Firm or Organization)
Address    Post Office Box 502

City & State Washington, D.C.                    Zip 20044

Primary Tel. (202) 307-6224    Cell Phone: _____
NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel only will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.
Name of Lead Counsel: Norah E. Bringer
A. Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

B. Inquiry of Counsel. To your knowledge:
(1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?    ☐ Yes    ☑ No
(2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?    ☐ Yes    ☑ No
(3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?    ☐ Yes    ☑ No
(4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case No.
If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

Name of Court or Agency_____

Status of Appeal (if any)_____
Other Status (if not appealed)_____
NOTE: Attach sheet to give further details.    **Attachment 13 - page 1 of 1**    DKT-5A REVISED February 2017

## NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO. **17-60304**

United States of America        vs. Eric Pae

(Short Title)

The Clerk will enter my appearance as Counsel for **United States of America**

(Please list names of all parties represented, attach additional pages if necessary.)

**The party(s) I represent IN THIS COURT**  ☐ Petitioner(s)   ☐ Respondent(s)   ☐ Amicus Curiae

☐ Appellant(s)   ☑ Appellee(s)   ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

s/ Gaines H. Cleveland                          gaines.cleveland@usdoj.gov

(Signature)                                     (e-mail address)

Gaines H. Cleveland                             MS Bar # 6300

(Type or print name)                            (State/Bar No.)

Assistant United States Attorney                ☑ Male      ☐ Female

(Title, if any)

United States Attorney's Office

(Firm or Organization)

Address        1575 20th Avenue

City & State Gulfport, MS                                Zip 39501

Primary Tel. 228-563-1560     Cell Phone: 228-224-6909

NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel **only** will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.

**Name of Lead Counsel:** Gaines H. Cleveland

A.  Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

B.  Inquiry of Counsel. To your knowledge:

(1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?
☐ Yes   ☑ No

(2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?
☐ Yes   ☑ No

(3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?
☐ Yes   ☑ No

(4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case **yes, criminal case**

If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

Name of Court or Agency

Status of Appeal (if any)

Other Status (if not appealed)

NOTE: Attach sheet to give further details.        **Attachment 14 - page 1 of 1**        DKT-5A REVISED February 2017

# NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO.  17-60306

United States of America                        vs. Vanna Ly

(Short Title)
The Clerk will enter my appearance as Counsel for  United States of America

(Please list names of all parties represented, attach additional pages if necessary.)
**The party(s) I represent IN THIS COURT**  ☐ Petitioner(s)  ☐ Respondent(s)  ☐ Amicus Curiae

☐ Appellant(s)    ☑ Appellee(s)    ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

_____           gaines.cleveland@usdoj.gov
(Signature)                        (e-mail address)

Gaines H. Cleveland              MS Bar # 6300
(Type or print name)              (State/Bar No.)

Assistant United States Attorney
(Title, if any)                   ☑ Male        ☐ Female

United States Attorney's Office
(Firm or Organization)
Address        1575 20th Avenue

City & State  Gulfport, MS                          Zip 39501

Primary Tel.  228-563-1560    Cell Phone: 228-224-6909
NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel only will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.
**Name of Lead Counsel:** Andrea C. Jones
A.  Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

B.  Inquiry of Counsel.  To your knowledge:
(1)  Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?
☐ Yes    ☑ No

(2)  Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?
☐ Yes    ☑ No

(3)  Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?
☐ Yes    ☑ No

(4)  Does this case qualify for calendaring priority under 5th Cir. R. 47.7?  If so, cite the type of case  yes, criminal case
If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

Name of Court or Agency_____

Status of Appeal (if any)_____

Other Status (if not appealed)_____

NOTE: Attach sheet to give further details.    **Attachment 15 - page 1 of 1**    DKT-5A REVISED February 2017

## NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO. __17-60309__

United States of America _____ vs. Alfred Stokes _____

(Short Title)
The Clerk will enter my appearance as Counsel for __United States of America__

_____

(Please list names of all parties represented, attach additional pages if necessary.)
**The party(s) I represent IN THIS COURT**   ☐ Petitioner(s)   ☐ Respondent(s)   ☐ Amicus Curiae

☐ Appellant(s)   ☑ Appellee(s)   ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

__s/ Gaines H. Cleveland__                        __gaines.cleveland@usdoj.gov__
(Signature)                                      (e-mail address)

__Gaines H. Cleveland__                          __MS Bar # 6300__
(Type or print name)                             (State/Bar No.)

__Assistant United States Attorney__
(Title, if any)                                  ☑ Male        ☐ Female

__United States Attorney's Office__

(Firm or Organization)
Address_____ __1575 20th Avenue__

City & State__Gulfport, MS__                                    Zip__39501__

Primary Tel. __228-563-1560__   Cell Phone: __228-224-6909__

NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel **only** will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.

**Name of Lead Counsel:** __Gaines H. Cleveland__

A. Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

_____

B. Inquiry of Counsel. To your knowledge:

(1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?
☐ Yes   ☑ No

(2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?
☐ Yes   ☑ No

(3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?
☐ Yes   ☑ No

(4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case__yes, criminal case__

If answer to (1), (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

_____
_____

Name of Court or Agency_____

Status of Appeal (if any)_____

Other Status (if not appealed)_____

NOTE: Attach sheet to give further details.   **Attachment 16 - page 1 of 1**   DKT-5A REVISED February 2017

# NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO.  17-60328

United States of America                    vs.  Gabriel Oludare Adeniran

(Short Title)
The Clerk will enter my appearance as Counsel for  United States of America

(Please list names of all parties represented, attach additional pages if necessary.)
**The party(s) I represent IN THIS COURT**  ☐ Petitioner(s)   ☐ Respondent(s)   ☐ Amicus Curiae
☐ Appellant(s)   ☑ Appellee(s)   ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

s/Annette Williams                           annette.williams2@usdoj.gov
(Signature)                                  (e-mail address)

Annette Williams                            MS 9641
(Type or print name)                         (State/Bar No.)

Assistant United States Attorney             ☐ Male   ☑ Female
(Title, if any)

United States Attorney, Southern District of MS

(Firm or Organization)
Address        1575 20th Ave

City & State  Gulfport, MS                                    Zip 39501

Primary Tel. 228-563-1560    Cell Phone: _____
NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel only will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.
**Name of Lead Counsel:**  Annette Williams
A.  Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

B.  Inquiry of Counsel. To your knowledge:
(1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?  ☐ Yes  ☑ No
(2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?  ☐ Yes  ☑ No
(3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?  ☐ Yes  ☑ No
(4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case  Yes, Criminal Case
If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

Name of Court or Agency_____

Status of Appeal (if any)_____
Other Status (if not appealed)_____
NOTE: Attach sheet to give further details.   **Attachment 17 - page 1 of 1**   DKT-5A REVISED February 2017

**NOTICE OF FORM FOR APPEARANCE** (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO. __17-60332__

United States of America _____ vs. Gabriel Oludare Adeniran _____

(Short Title)

The Clerk will enter my appearance as Counsel for __United States of America__

_____

(Please list names of all parties represented, attach additional pages if necessary.)

**The party(s) I represent IN THIS COURT** ☐ Petitioner(s) ☐ Respondent(s) ☐ Amicus Curiae

☐ Appellant(s) ☑ Appellee(s) ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

s/Annette Williams _____ annette.williams2@usdoj.gov

(Signature) _____ (e-mail address)

Annette Williams _____ MS 9641

(Type or print name) _____ (State/Bar No.)

Assistant United States Attorney _____ ☐ Male ☑ Female

(Title, if any)

United States Attorney, Southern District of MS

(Firm or Organization)

Address __1575 20th Ave__

City & State __Gulfport, MS__ _____ Zip __39501__

Primary Tel. __228-563-1560__ Cell Phone: _____

NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel only will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.

Name of Lead Counsel: __Annette Williams__

A. Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

B. Inquiry of Counsel. To your knowledge:

(1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)? ☐ Yes ☑ No

(2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit? ☐ Yes ☑ No

(3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny? ☐ Yes ☑ No

(4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case __Yes, Criminal Case__

If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

Name of Court or Agency _____

Status of Appeal (if any) _____

Other Status (if not appealed) _____

NOTE: Attach sheet to give further details. **Attachment 18 - page 1 of 1** DKT-5A REVISED February 2017

# NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO. 17-60344

United States of America _____ vs. William Jovanis Sanchez-Sorto

(Short Title)

The Clerk will enter my appearance as Counsel for United States of America

(Please list names of all parties represented, attach additional pages if necessary.)

**The party(s) I represent IN THIS COURT**  ☐ Petitioner(s)  ☐ Respondent(s)  ☐ Amicus Curiae

☐ Appellant(s)  ☑ Appellee(s)  ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

s/Gaines H. Cleveland _____ gaines.cleveland@usdoj.gov

(Signature) _____ (e-mail address)

Gaines H. Cleveland _____ MS 6300

(Type or print name) _____ (State/Bar No.)

Assistant United States Attorney

(Title, if any) _____ ☐ Male  ☑ Female

United States Attorney, Southern District of MS

(Firm or Organization)

Address _____ 1575 20th Ave

City & State Gulfport, MS _____ Zip 39501

Primary Tel. 228-563-1560 ___ Cell Phone: _____

**NOTE:** When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel **only** will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.

**Name of Lead Counsel:** Gaines H. Cleveland

A. Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

B. **Inquiry of Counsel. To your knowledge:**

(1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?
☐ Yes  ☑ No

(2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?
☐ Yes  ☑ No

(3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?
☐ Yes  ☑ No

(4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case Yes, Criminal Case

If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

Name of Court or Agency _____

Status of Appeal (if any) _____

Other Status (if not appealed) _____

NOTE: Attach sheet to give further details.    **Attachment 19 - page 1 of 1**    DKT-5A REVISED February 2017

## NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO. __17-60346__

United States of America _____ vs. Darrell Ray Morris

(Short Title)
The Clerk will enter my appearance as Counsel for __United States of America__

(Please list names of all parties represented, attach additional pages if necessary.)

**The party(s) I represent IN THIS COURT**  ☐ Petitioner(s)  ☐ Respondent(s)  ☐ Amicus Curiae

☐ Appellant(s)   ☑ Appellee(s)   ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

__s/Gaines H. Cleveland__              __gaines.cleveland@usdoj.gov__
(Signature)                            (e-mail address)

__Gaines H. Cleveland__               __MS 6300__
(Type or print name)                  (State/Bar No.)

__Assistant United States Attorney__          ☐ Male    ☑ Female
(Title, if any)

__United States Attorney, Southern District of MS__

(Firm or Organization)
Address _____1575 20th Ave_____

City & State __Gulfport, MS__                    Zip __39501__

Primary Tel. __228-563-1560__  Cell Phone: _____

NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel **only** will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.

**Name of Lead Counsel:** __Gaines H. Cleveland__

A.  Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

_____

B.  Inquiry of Counsel.  To your knowledge:

(1)  Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?
☐ Yes   ☑ No

(2)  Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?
☐ Yes   ☑ No

(3)  Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?
☐ Yes   ☑ No

(4)  Does this case qualify for calendaring priority under 5th Cir. R. 47.7?  If so, cite the type of case __Yes, Criminal Case__

If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

_____

_____

Name of Court or Agency _____

Status of Appeal (if any) _____

Other Status (if not appealed) _____

NOTE:  Attach sheet to give further details.   **Attachment 20 – page 1 of 1**   DKT-5A REVISED February 2017

## NOTICE OF FORM FOR APPEARANCE (See Fifth Cir. Rule 12)

*Only attorneys admitted to the Bar of this Court may practice before the Court. Each attorney representing a party must complete a separate form. (COMPLETE ENTIRE FORM).*

Fifth Cir. Case NO. __17-60347__

United States of America _____ vs. Freddie Adams, Jr. _____

(Short Title)
The Clerk will enter my appearance as Counsel for United States of America _____

_____

(Please list names of all parties represented, attach additional pages if necessary.)
**The party(s) I represent IN THIS COURT** ☐ Petitioner(s)    ☐ Respondent(s)    ☐ Amicus Curiae

☐ Appellant(s)    ☑ Appellee(s)    ☐ Intervenor

☑ I certify that the contact information below is current and identical to that listed in my Appellate Filer Account with PACER.

s/Gaines H. Cleveland _____    gaines.cleveland@usdoj.gov
(Signature)    (e-mail address)

Gaines H. Cleveland    MS 6300
(Type or print name)    (State/Bar No.)

Assistant United States Attorney
(Title, if any)    ☐ Male    ☑ Female

United States Attorney, Southern District of MS
(Firm or Organization)
Address ___1575 20th Ave___

City & State Gulfport, MS    Zip 39501

Primary Tel. 228-563-1560 ___ Cell Phone: _____
NOTE: When more than one attorney represents a single party or group of parties, counsel should designate a lead counsel. In the event the court determines oral argument is necessary, lead counsel only will receive via e-mail a copy of the court's docket and acknowledgment form. Other counsel must monitor the court's website for the posting of oral argument calendars.
**Name of Lead Counsel:** ___Gaines H. Cleveland___
A. Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.

_____

B. Inquiry of Counsel. To your knowledge:
  (1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related issue(s)?
      ☐ Yes    ☑ No
  (2) Is there any such case now pending in a District Court (i) within this Circuit, or (ii) in a Federal Administrative Agency which would likely be appealed to the Fifth Circuit?
      ☐ Yes    ☑ No
  (3) Is there any case such as (1) or (2) in which judgment or order has been entered and the case is on its way to this Court by appeal, petition to enforce, review, deny?
      ☐ Yes    ☑ No
  (4) Does this case qualify for calendaring priority under 5th Cir. R. 47.7? If so, cite the type of case Yes, Criminal Case
If answer to (1), or (2), or (3), is yes, please give detailed information. Number and Style of Related Case:

_____

Name of Court or Agency_____

Status of Appeal (if any)_____
Other Status (if not appealed)_____
NOTE: Attach sheet to give further details.    **Attachment 21 - page 1 of 1**    DKT-5A REVISED February 2017

**Form 8**

FORM 8.  *Entry of Appearance*

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ALIMANESTIANU, et al. _____ v. _____ UNITED STATES

No. 2017-1667

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3.  Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

_____ Pro Se    ☑ As counsel for: _____ UNITED STATES
Name of party

I am, or the party I represent is (select one):

☐ Petitioner    ☐ Respondent    ☐ Amicus curiae    ☐ Cross Appellant
☐ Appellant    ☑ Appellee    ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant    ☐ Respondent or appellee

My address and telephone are:

| | |
|---|---|
| Name: | L. Misha Preheim |
| Law firm: | United States Department of Justice, Commercial Litigation Branch |
| Address: | PO Box 480, Ben Franklin Station |
| City, State and ZIP: | Washington DC 20044 |
| Telephone: | (202) 305-3087 |
| Fax #: | (202) 514-8640 |
| E-mail address: | Misha.Preheim@usdoj.gov |

Statement to be completed by counsel only (select one):

☑ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only):

☐ Yes    ☑ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

| | |
|---|---|
| 2/24/17 | /s/L. Misha Preheim |
| Date | Signature of pro se or counsel |

cc: Richard Chassin, Esq.

Attachment 22 - page 1 of 2

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __24th__ day of

_____February_____, __2017__, a copy of the foregoing

_____Entry of Appearance_____

was filed electronically.

[✓] This filing was served electronically to all parties by operation of the Court's

electronic filing system.

_____/s/L. Misha Preheim_____

[ ] I caused a copy of this filing to be served via:

[ ] hand delivery

[ ] mail

[ ] third-party commercial carrier for delivery within 3 days

[ ] electronic means, with the written consent of the party being served

To the following address:

_____

**Attachment 22 - page 2 of 2**

FORM 8. Entry of Appearance 17-1669    Document: 6    Page: 1    Filed: 03/09/2017    Form 8
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Glenn-Colusa Irrigation District _____ v. _____ United States

No. _____ 17-1669 _____

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3. Counsel must immediately file an updated Entry of Appearance if representation changes, including a change in contact information. Electronic filers must also report a change in contact information to the PACER Service Center. Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

☐ Pro Se      ☒ As counsel for:    United States

Name of party

I am, or the party I represent is (select one):

☐ Petitioner    ☐ Respondent    ☐ Amicus curiae    ☐ Cross Appellant

☐ Appellant    ☒ Appellee    ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant    ☐ Respondent or appellee

| | |
|---|---|
| Name: | Jeffrey M. Lowry |
| Law Firm: | United States Department of Justice |
| Address: | PO Box 480, Ben Franklin Station |
| City, State and Zip: | Washington, DC 20044 |
| Telephone: | (202) 305-3067 |
| Fax #: | (202) 514-8624 |
| E-mail address: | jeffrey.m.lowry@usdoj.gov |

Statement to be completed by counsel only (select one):

☒ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only): ☐ Yes    ☒ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

Date    Mar 9, 2017 _____    Signature of pro se or counsel    /s/ Jeffrey M. Lowry _____

cc: _____

Attachment 23 – page 1 of 2

Reset Fields

FORM 30. Certificate of Service

<div align="right">Form 30<br/>Rev. 03/16</div>

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  3/9/2017
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Jeffrey M. Lowry | /s/ Jeffrey M. Lowry |
|---|---|
| **Name of Counsel** | **Signature of Counsel** |

| | |
|---|---|
| Law Firm | United States Department of Justice |
| Address | PO Box 480, Ben Franklin Station |
| City, State, Zip | Washington, DC 20044 |
| Telephone Number | (202) 305-3067 |
| Fax Number | (202) 514-8624 |
| E-Mail Address | jeffrey.m.lowry@usdoj.gov |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.



**Attachment 23 - page 2 of 2**

**Form 8**

FORM 8.  Entry of Appearance

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SALINE ASSOCIATES NO. I _____ v. _____ UNITED STATES

No. 2017-1688

# ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3.  Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

_____ Pro Se     ☑ As counsel for: _____ UNITED STATES
Name of party

I am, or the party I represent is (select one):

☐ Petitioner     ☐ Respondent     ☐ Amicus curiae     ☐ Cross Appellant
☐ Appellant     ☑ Appellee     ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant     ☐ Respondent or appellee

My address and telephone are:

| | |
|---|---|
| Name: | Matthew P. Roche |
| Law firm: | United States Department of Justice, Commercial Litigation Branch |
| Address: | PO Box 480, Ben Franklin Station |
| City, State and ZIP: | Washington DC 20044 |
| Telephone: | (202) 616-0466 |
| Fax #: | (202) 305-7644 |
| E-mail address: | Matthew.P.Roche@usdoj.gov |

Statement to be completed by counsel only (select one):

☑ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only):

☐ Yes     ☑ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

| | |
|---|---|
| 03/08/2017 | /s/Matthew P. Roche |
| Date | Signature of pro se or counsel |

cc: Jeff Eckland

Attachment 24 - page 1 of 1`



FORM 8. Entry of Appearance Case: 17-1695    Document: 2    Page: 1    Filed: 03/10/2017    Form 8
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Shell Oil Co. _____ v. _____ United States

No. _____ 2017-1695 _____

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3. Counsel must immediately file an updated Entry of Appearance if representation changes, including a change in contact information. Electronic filers must also report a change in contact information to the PACER Service Center. Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

☐ Pro Se        ☒ As counsel for:    United States _____

Name of party

I am, or the party I represent is (select one):

☐ Petitioner    ☐ Respondent    ☐ Amicus curiae    ☐ Cross Appellant

☒ Appellant    ☐ Appellee    ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant    ☐ Respondent or appellee

| | |
|---|---|
| Name: | Stephen C. Tosini |
| Law Firm: | U.S. Dept. of Justice, Civil Division, Commercial Litigation Branch |
| Address: | PO Box 480. Ben Franklin Station |
| City, State and Zip: | Washington, DC 20044 |
| Telephone: | 202.616.5196 |
| Fax #: | 202.514.7969 |
| E-mail address: | stephen.tosini@usdoj.gov |

Statement to be completed by counsel only (select one):

☒ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only): ☐ Yes    ☒ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

Date  Mar 10, 2017 _____    Signature of pro se or counsel  /s/ Stephen C. Tosini _____

cc:    Michael J. Kirk, Esq.

**Attachment 25 - page 1 of 2**

Reset Fields

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __10th__ day of

_____March_____, __2017__, a copy of the foregoing

_____ Entry of Appearance _____

was filed electronically.

☑ This filing was served electronically to all parties by operation of the Court's

electronic filing system.

_____ /s/ Stephen C. Tosini _____

☐ A copy of this filing was served via:

   ☐ hand delivery

   ☐ mail

   ☐ third-party commercial carrier for delivery within 3 days

   ☐ electronic means, with the written consent of the party being served

To the following address:

_____

Form 8

FORM 8.  Entry of Appearance

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

RON HADDAD, JR.    v.    UNITED STATES

No. 2017-1723

# ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3.  Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

_____ Pro Se    ☑ As counsel for:    UNITED STATES
Name of party

I am, or the party I represent is (select one):

☐ Petitioner    ☐ Respondent    ☐ Amicus curiae    ☐ Cross Appellant
☐ Appellant    ☑ Appellee    ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant    ☐ Respondent or appellee

My address and telephone are:

| | |
|---|---|
| Name: | Delisa M. Sánchez |
| Law firm: | United States Department of Justice, Commercial Litigation Branch |
| Address: | P.O. Box 480, Ben Franklin Station |
| City, State and ZIP: | Washington, D.C. 20044 |
| Telephone: | (202) 616-0337 |
| Fax #: | (202) 305-7643 |
| E-mail address: | Delisa.Sanchez@usdoj.gov |

Statement to be completed by counsel only (select one):

☑ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only):

☐ Yes    ☑ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

| | |
|---|---|
| March 13, 2017 | /s/Delisa M. Sánchez |
| Date | Signature of pro se or counsel |

cc: Ron Haddad, Jr.

**Attachment 26 - page 1 of 2**

123

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __13th__ day of

_____March_____, __2017__, a copy of the foregoing

_____Entry of Appearance_____

was filed electronically.

☐ This filing was served electronically to all parties by operation of the Court's

electronic filing system.

_____

✓ I caused a copy of this filing to be served via:

    ☐ hand delivery

    ✓ mail

    ☐ third-party commercial carrier for delivery within 3 days

    ☐ electronic means, with the written consent of the party being served

To the following address:

Ron Haddad, Jr. (410-26-424)
Federal Correction Institution
Inmate Mail/Parcels
P.O. Box 1000
Milan, MI 48160

_____/s/Delisa M. Sánchez_____

FORM 8. Entry of Appearance  Case: 17-1724    Document: 3    Page: 1    Filed: 03/29/2017    Form 8
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Ron Haddad, Jr.                    v.                    United States

No.              17-1724

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel should refer to Federal Circuit Rule 47.3. Counsel must immediately file an updated Entry of Appearance if representation changes, including a change in contact information. Electronic filers must also report a change in contact information to the PACER Service Center. Pro se petitioners and appellants should read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk within 14 days of the date of docketing and serve a copy of it on the principal attorney for each party.)

Please enter my appearance (select one):

☐ Pro Se          ☒ As counsel for:    United States

                                        Name of party

I am, or the party I represent is (select one):

☐ Petitioner      ☐ Respondent      ☐ Amicus curiae          ☐ Cross Appellant

☐ Appellant       ☒ Appellee        ☐ Intervenor

As amicus curiae or intervenor, this party supports (select one):

☐ Petitioner or appellant        ☐ Respondent or appellee

| | |
|---|---|
| Name: | Eric E. Laufgraben |
| Law Firm: | United States Department of Justice, Civil Division |
| Address: | P.O. Box 480, Ben Franklin Station |
| City, State and Zip: | Washington, DC 20044 |
| Telephone: | (202) 353-7995 |
| Fax #: | (202) 514-8624 |
| E-mail address: | Eric.E.Laufgraben@usdoj.gov |

Statement to be completed by counsel only (select one):

☒ I am the principal attorney for this party in this case and will accept all service for the party. I agree to inform all other counsel in this case of the matters served upon me.

☐ I am replacing _____ as the principal attorney who will/will not remain on the case. [Government attorneys only.]

☐ I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the United States Court of Appeals for the Federal Circuit (counsel only): ☐ Yes    ☒ No

☐ A courtroom accessible to the handicapped is required if oral argument is scheduled.

Date  March 29, 2017 _____ Signature of pro se or counsel  s/Eric E. Laufgraben _____

cc:    Ron Haddad, Jr.

**Attachment 27 - page 1 of 2**

ResetFields

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 29th day of March,

2017, a copy of the foregoing Entry of Appearance was filed electronically.

I caused a copy of this filing to be served by mail to the following address:

> RON HADDAD, JR.
> No. 410-26-424
> Federal Correctional Institution
> P.O. Box 1000
> Milan, MI 48160

<div style="text-align:center">s/Eric E. Laufgraben</div>

FILED

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2013 APR 11 PM 1: 10

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>Plaintiff, )<br><br>v. )<br><br>CHARLES T. STEVENS; BARBARA<br>F. STEVENS; BANK OF AMERICA, N.A.;<br>ST. JOHNS HOMESTEAD PROPERTY,<br>LLC; ST. JOHNS COMMERCIAL<br>RENTALS, LLC; LITTLE FALLS<br>HOLDINGS, LLC; 117 RESIDENTIAL<br>RENTALS, LLC; 127 RESIDENTIAL<br>RENTALS, LLC; and FIRST COAST<br>HOLDINGS, LLC )<br><br>Defendants. ) | Civil No.: 3:13-cv-375-J-26JBT |

## COMPLAINT

Plaintiff, United States of America, by and through its undersigned counsel, complains and alleges as follows:

1.    The United States brings this civil action to reduce to judgment Charles T. Stevens' unpaid federal income tax liabilities for tax years 1998 – 2006, and 2009, and to foreclose on the United States' federal tax liens related to Mr. Stevens' federal income tax liabilities on several parcels of real property.

2.    Pursuant to 26 U.S.C. §§ 7401 and 7403, the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of Treasury of the United States, authorized and requested this action. This action is brought at the direction of the United States Attorney General under the authority of 26 U.S.C. §§ 7401 and 7403.

9804456.1

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1340 and

1345, and 26 U.S.C. §§ 7402 and 7403.

4.      Pursuant to 28 U.S.C. §§ 1391(b) and 1396, venue is proper in this Court because

the federal tax liabilities at issue in this complaint accrued in St. Johns County, Florida, the

United States seeks to foreclose on real property located in St Johns County, Florida, and Charles

T. Stevens resides in St. Johns County, Florida.

## SUBJECT PROPERTIES

5.      The United States seeks to foreclose its federal tax liens against the following four

Subject Properties:

a.      3500 Red Cloud Trail, St. Augustine, Florida 32086 ("Red Cloud

Property") and is more particularly described as:

> Lot 49, Prairie Creek II, according to plat recorded in map book
> 12, pp. 65, 66, 67 and 68, public records of St. Johns county,
> Florida, subject however to all reservations, covenants, and
> restrictions of record.

b.      2744 U.S. 1 South, Unit C, St. Augustine, Florida 32086 ("Commercial

Property") and is more particularly described as:

> Unit C, U.S. 1 OFFICE CONDOMINIUM, together with an
> undivided 1/5th interest in the common elements appurtenant
> thereto, according to the Declaration of Condominium recorded in
> Official Records Book 723, pages 1599 through 1682, inclusive, of
> the public records of St. Johns County, Florida.

> Subject to restrictions, reservations, easements and covenants of
> record, if any. This reference to restrictions shall not operate to
> reimpose same.

2

c.    117 Barbarosa Street, St. Augustine, Florida 32086 ("117 Barbarosa

Property") and is more particularly described as:

> Lot 5, Blk 3 St. Augustine Shores UT1 Sub-division, A
> subdivision according to the plat thereof, recorded in Plat book 11,
> page 61 through 71 of the public records of St. Johns County,
> Florida.

d.    127 Barbarosa Street, St. Augustine, Florida 32086 ("127 Barbarosa

Property") and is more particularly described as:

> Lot 5, Blk 5 St. Augustine Shores UT1 Sub-division, A
> subdivision according to the plat thereof, recorded in Plat Book 11,
> page 61 through 71 of the public records of St. Johns County,
> Florida.

## PARTIES

6.    Plaintiff, the United States of America, is a sovereign body politic.

7.    Defendant Charles T. Stevens resides in St. Johns County, Florida. Mr. Stevens

has failed to file federal income tax returns for any tax year after 1997.

8.    Defendant Barbara F. Stevens is Mr. Stevens' wife; Ms. Stevens resides in St.

Johns County, Florida. Ms. Stevens is named as a party to this action under 26 U.S.C. § 7403(b)

as a party that may claim an interest in one or more of the Subject Properties.

9.    Defendant Bank of America is named as a party to this action under 26 U.S.C.

§ 7403(b) as a mortgage holder that may claim an interest in the Red Cloud Property.

10.    Defendant St. Johns Homestead Property, LLC ("St. Johns Homestead") was an

entity which was formed, owned and operated exclusively by Charles T. Stevens as a nominee

and/or alter ego for Charles T. Stevens. St. Johns Homestead is named as a party to this action

under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Red Cloud Property.

11.    Defendant St. Johns Commercial Rentals, LLC ("Commercial Rentals") was an

entity which was formed, owned and operated exclusively by Charles T. Stevens as a nominee

3

and/or alter ego for Charles T. Stevens. Commercial Rentals is named as a party to this action under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Commercial Property.

12.     Defendant Little Falls Holdings, LLC ("Little Falls") was an entity which was formed, owned and operated exclusively by Charles T. Stevens as a nominee and/or alter ego for Charles T. Stevens. Little Falls is named as a party to this action under 26 U.S.C. § 7403(b) as a party that may claim an interest in the 117 Barbarosa Property and/or the 127 Barbarosa Property.

13.     Defendant 117 Residential Rentals, LLC ("117 Residential") is a purported entity, which is not registered to do business in the State of Florida, owned/managed by Mr. Stevens and is the deed holder of the 117 Barbarosa Property. 117 Residential is named as a party to this action under 26 U.S.C. § 7403(b) as a party that may claim an interest in the 117 Barbarosa Property.

14.     Defendant 127 Residential Rentals, LLC ("127 Residential") is a purported entity, which is not registered to do business in the State of Florida, owned/managed by Mr. Stevens and is the deed holder of the 127 Barbarosa Property. 127 Residential is named as a party to this action under 26 U.S.C. § 7403(b) as a party that may claim an interest in the 127 Barbarosa Property.

15.     Defendant First Coast Holdings, LLC is an entity owned and operated by Charles T. Stevens and is named as a party to this action under 26 U.S.C. § 7403(b) as a party that may claim an interest in the 117 Barbarosa Property and/or the 127 Barbarosa Property.

4

9804436.1

## COUNT I

(Reduce Charles T. Stevens' Outstanding Federal Income Tax Liabilities to Judgment)

16.    The United States incorporates by reference the allegations contained in paragraphs 1 through 15 of this Complaint as if fully and separately restated herein.

17.    Since 1997, Mr. Stevens has consistently failed to comply with the federal tax laws. Indeed, Mr. Stevens has failed to voluntarily file a federal income tax return for any tax year after 1997. Consequently, after following notice of deficiency procedures, the IRS calculated and assessed Mr. Stevens' federal income tax liabilities for tax years 1998 through 2006, and 2009.

18.    On the dates and in the amounts set forth below, a delegate of the Secretary of Treasury made assessments against Charles T. Stevens for federal income tax liabilities, penalties, and interest for tax years 1998 through 2006, and 2009.

| Tax Year | Date Assessed | Tax Assessed | Penalties Assessed | Interest Assessed |
|----------|---------------|--------------|--------------------|--------------------|
| 1998 | 04/14/2003 | $35,506.00 | $7,988.85* $8,521.44** $1,624.68*** | $14,568.58 |
| | 12/05/2005 | -- | $355.06** | -- |
| 1999 | 05/12/2003 | $24,034.00 | $5,418.90* $4,435.41** $5,166.53*** | $7,039.24 |
| | 12/05/2005 | -- | $565.26** | |
| 2000 | 04/14/2003 | $85,126.00 | $19,153.35* $10,215.12** $4,547.01*** | $14,024.24 |
| | 12/05/2005 | -- | $11,066.38** | -- |
| 2001 | 05/03/2004 | $76,554.00 | $17,179.00* $9,780.42** $3,033.70*** | $9,891.68 |
| | 04/19/2004 | | $3,817.71** | |
| 2002 | 10/25/2004 | $33,946.00 | $7,637.85* $3,224.87** $1,134.37*** | $2,967.85 |
| | 12/04/2006 | -- | $5,261.63** | -- |

5



| 2003 | 10/17/2005 | $18,549.00 | $4,173.53*<br>$1,762.13**<br>$478.62*** | $1,859.80 |
|------|------------|------------|------------------------------------------|-----------|
|      | 12/06/2010 |            | $2,875.10** |           |
| 2004 | 07/14/2008 | $22,314.00 | $5,020.65*<br>$4,351.23**<br>$639.47*** | $7,224.34 |
|      | 12/06/2010 | --         | $1,227.27** | --        |
| 2005 | 05/12/2008 | $35,277.00 | $7,937.33*<br>$4,409.63**<br>$1,413.99*** | $7,456.43 |
|      | 12/06/2010 |            | $4,409.61** |           |
| 2006 | 11/03/2008 | $5,544.00  | $1,247.40*<br>$526.68**<br>$262.38*** | $770.31 |
|      | 12/06/2010 | --         | $859.32** | --        |
| 2009 | 04/23/2012 | $3,443.00  | $684.68*<br>$380.38** | $281.69 |

*late filing penalty – 26 U.S.C. § 6651(a)(1)
**failure to pay penalty – 26 U.S.C. § 6651(a)(2)
***estimated tax penalty – 26 U.S.C. § 6654

19.    Additionally, on various dates from 2006 through 2012, the IRS assessed collection fees against Mr. Stevens totaling $60.00, $40.00, $20.00, and $20.00 for tax years 1998, 2005, 2006, and 2009 respectively.

20.    The IRS issued Mr. Stevens notices and demands for payment of his federal income tax assessments described in paragraphs 18 and 19 above. However, despite these notices and demands for payment, Mr. Stevens failed to pay his federal income tax liabilities in full. Mr. Stevens continues to accrue interest, penalties, and statutory additions until the date of payment. As of April 8, 2013, Mr. Stevens is indebted to the United States for his federal income tax liabilities for tax years 1998 through 2006, and 2009, in the amount of $817,316.75.

6

9894486.1

## COUNT II

### (Foreclose Federal Tax Lien on the Red Cloud Property)

21.    The United States incorporates by reference the allegations contained in paragraphs 1 through 20 of this Complaint as if fully and separately restated herein.

22.    Pursuant to 26 U.S.C. §§ 6321 and 6322, liens for the unpaid federal tax liabilities described in paragraphs 18 and 19 arose on the dates of the assessments in favor of the United States and continue to encumber all property, and rights to property, belonging to Mr. Stevens or obtained thereafter.

23.    On or around November 1, 1979, Mr. and Ms. Stevens acquired the Red Cloud Property via Warranty Deed.

24.    On or around January 24, 2002, Mr. Stevens created St. Johns Homestead by filing Articles of Organizations for a Florida LLC with the Florida Secretary of State.  Mr. Stevens was the sole member and manager of St. Johns Homestead.

25.    On or around June 25, 2002, Mr. and Ms. Stevens conveyed the Red Cloud Property to Mr. Stevens' St. Johns Homestead via quitclaim deed.

26.    On or around November 25, 2003, Mr. Stevens, on behalf of St. Johns Homestead, re-conveyed the property back to himself and Ms. Stevens via quitclaim deed.

27.    On or around December 19, 2003, Mr. and Ms. Stevens obtained a $200,000.00 mortgage from Defendant Bank of America.

28.    On January 24, 2006, a delegate of the Secretary of Treasury properly filed Notices of Federal Tax Liens against Charles T. Stevens, at the Clerk of Circuit Court for St. Johns County, for his failure to pay his federal income tax liabilities for tax years 1998 through 2003.  On January 27, 2009, a delegate of the Secretary of Treasury properly filed Notices of

7

Federal Tax Liens against Charles T. Stevens, at the Clerk of Circuit Court for St. Johns County, for his failure to pay his federal income tax liabilities for tax years 2004 and 2005. On June 9, 2009, a delegate of the Secretary of Treasury properly filed Notices of Federal Tax Liens against Charles T. Stevens, at the Clerk of Circuit Court for St. Johns County, for his failure to pay additional assessments made for against him for tax year 2006. On July 9, 2012, a delegate of the Secretary of Treasury properly filed Notices of Federal Tax Liens against Charles T. Stevens, at the Clerk of Circuit Court for St. Johns County, for his failure to pay his federal income tax liabilities for tax year 2009.

29.    By quitclaim deed dated January 3, 2006, but not recorded until May 30, 2006, Mr. Stevens transferred his interest in the Red Cloud Property to his non-liable spouse Ms. Stevens.

30.    Despite Mr. Stevens' conveyance on January 3, 2006, pursuant to 26 U.S.C. §§ 6321 and 6322, on the dates and in the amounts of assessments made against Mr. Stevens from April 14, 2003 through December 5, 2005, liens arose in favor of the United States and continue to encumber the Red Cloud Property. Thus, the United States is entitled to have its tax liens foreclosed on the Red Cloud Property, have the property sold, and have the proceeds from Mr. Stevens' interest in the sale of the Red Cloud Property applied to Mr. Stevens' outstanding tax liabilities.

8

9984456.1

## COUNT III

(Foreclose Federal Tax Liens on the Commercial Property)

31.    The United States incorporates by reference the allegations contained in paragraphs 1 through 30 of this Complaint as if fully and separately restated herein.

32.    On or around July 23, 1992, Mr. and Ms. Stevens acquired the Commercial Property via Warranty Deed.

33.    On or around January 24, 2002, Mr. Stevens created Commercial Rentals by filing Articles of Organizations for a Florida LLC with the Florida Secretary of State.  Mr. Stevens was the sole member and manager of Commercial Rentals.

34.    On or around June 25, 2002, Mr. and Ms. Stevens conveyed the Commercial Property to Mr. Stevens' Commercial Rentals via quitclaim deed.

35.    Because Mr. Stevens was the only owner and manager of Commercial Rentals from January 24, 2002 through present, pursuant to 26 U.S.C. §§ 6321 and 6322 and Florida law, liens for the unpaid federal tax liabilities described in paragraphs 18 and 19 arose on the dates of the assessments in favor of the United States and continue to attach to Mr. Stevens' property, and rights to property, including his rights in the Commercial Property.

36.    At the time the above-described assessments were made against Mr. Stevens, he unilaterally owned the Commercial Property, and/or rights to the Commercial Property, as the only member and manager of Commercial Rentals, and thus, the United States is entitled to foreclose its liens against the Commercial Property.

37.    Additionally, the United States' liens attach to the Commercial Property despite Mr. Stevens' purported transfer of the property to Commercial Rentals because Commercial Rentals merely holds title to the property as a nominee of Charles T. Stevens.  Mr. Stevens is the

9

9804434.1

true and beneficial owner of the Commercial Property. Facts tending to demonstrate that
Commercial Rentals holds title to the Commercial Property as a nominee of Mr. Stevens include,
but are not limited to, the following:

a.  Mr. Stevens exercises exclusive dominion and control over the property.
At all relevant times, including before and after Commercial Rentals
obtained title to the Commercial Property, Mr. Stevens operated and
continues to operate an insurance, brokerage, and financial planning
business out of the Commercial Property. The Commercial Property has
not had any other tenants but Mr. Stevens, and Mr. Stevens functions as
both the landlord and tenant of the Commercial Property.

b.  The Commercial Property was placed in the name of Commercial Rentals
in anticipation of collection activities from the IRS. The Commercial
Property was conveyed to Commercial Rentals after Mr. Stevens had
incurred significant tax debts. Mr. Stevens failed to file federal income
tax returns for the 4 tax years before the Commercial Property was
transferred to Commercial Rentals, even though Mr. Stevens had
significant tax liabilities for those tax years.

c.  Commercial Rentals did not pay any consideration for the Commercial
Property. The quitclaim deed does not show any sum of money paid in
consideration for the transfer.

d.  There is a close relationship between Commercial Rentals and Mr.
Stevens. Indeed, Mr. Stevens exclusively formed, owned and operated
Commercial Rentals.

10

38.    Commercial Rentals is an alter ego of Charles T. Stevens.  Facts tending to demonstrate that Commercial Rentals is an alter ego of Mr. Stevens include, but are not limited to, the following:

    a.    Commercial Rentals is dominated and controlled by Mr. Stevens in such a way that Commercial Rentals is merely an alter ego used by Mr. Stevens for his benefit.  Mr. Stevens unilaterally created and operates Commercial Rentals and he is the single member/owner of Commercial Rentals.  The Commercial Property is the only asset Commercial Rentals owns, and Mr. Stevens leases the Commercial Property back to himself through Commercial Rentals.  Commercial Rentals, under the direction of Mr. Stevens, has failed to file any federal income tax returns since its creation thereby concealing, among other things, how much money, if any, Mr. Stevens pays himself in rent to Commercial Rentals.

    b.    Commercial Rentals was organized and operated to hinder, delay, and/or defraud the United States from collecting Mr. Stevens' federal income tax liabilities.  Commercial Rentals obtained title to the Commercial Property after Mr. Stevens had incurred significant tax debts.  Mr. Stevens failed to file federal income tax returns for the 4 tax years before the property was transferred to Commercial Rentals, even though Mr. Stevens had significant tax liabilities for those tax years.

    c.    Holding title only under Commercial Rentals, rather than as a alter ego of Mr. Stevens, would impose an injury to the United States as the United

11

9004456.1

States should be entitled to foreclose its tax liens against Mr. Stevens'

unilateral interested in the Commercial Property.

39.     On May 31, 2006, a delegate of the Secretary of Treasury properly filed Notices

of Federal Tax Liens against Commercial Rentals, as nominee of Charles T. Stevens, at the Clerk

of Circuit Court for St. Johns County, for Mr. Stevens' failure to pay his federal income tax

liabilities for tax years 1998 through 2003.

40.     The federal tax liens attach to the Commercial Property both because: (a) Mr.

Stevens is the only member and manager of Commercial Rentals; and (b) Commercial Rentals

holds title to the Commercial Property as the nominee or alter ego of Charles T. Stevens.  Thus,

the United States is entitled to have its tax liens foreclosed, have the Commercial Property sold,

and have the proceeds from the sale applied to Mr. Stevens' outstanding tax liabilities.

## COUNT IV

(In the Alternative to Count III, Set Aside Fraudulent Transfer and Foreclose Federal Tax Lien

on the Commercial Property)

41.     The United States incorporates by reference the allegations contained in

paragraphs 1 through 40 of this Complaint as if fully and separately restated herein.

42.     On or around June 25, 2002, Mr. and Ms. Stevens—with actual intent to hinder,

delay, or defraud the IRS under Fla. Statute § 726.105—fraudulently transferred their interest in

the Commercial Property to Mr. Stevens' Commercial Rentals, and thus, this Court should set

aside this fraudulent transfer.  Facts tending to demonstrate Mr. and Ms. Stevens' fraudulent

intent include, but are not limited to, the following:

a.     The transfer was made to an insider.  Mr. Stevens was the sole creator,

manager, and member of Commercial Rentals.

12

9884456.1

b.   Mr. Stevens retains possession and/or control of the Commercial Property. Indeed, Mr. Stevens runs his financial planning business from the Commercial Property.

c.   The transfer was made after Mr. Stevens had incurred significant tax debts. Mr. Stevens had not filed his federal income tax returns the 4 tax years before the fraudulent transfer was made to Commercial Rentals, even though he had significant tax liabilities for those tax years.

d.   Mr. Stevens attempted to conceal his assets in a separate entity, Commercial Rentals.

e.   Mr. Stevens failed to receive reasonably equivalent value for the transfer. The quitclaim deed does not show any sum of money paid in consideration for the transfer.

f.   The transfer was made at the time Mr. Stevens was insolvent or rendered insolvent as a result of the transfer.

43.   Moreover, Mr. and Ms. Stevens' fraudulent transfer should be set aside as a fraudulent conveyance under Fla. Stat. § 726.106. Mr. and Ms. Stevens fraudulently transferred the Commercial Property to Commercial Rentals after significant tax liabilities had accrued against Mr. Stevens, Mr. and Ms. Stevens did not receive reasonably equivalent value for the transfer, and Mr. Stevens was insolvent at the time the transfer was made or the transfer rendered Mr. Stevens insolvent.

44.   To the extent this Court does not foreclose the tax liens against the Commercial Property because Mr. Stevens is the only member and manager of Commercial Rentals or because Commercial Rentals is a nominee or alter ego of Charles T. Stevens, in the alternative,

13

9004456.1

this Court should set aside Mr. and Ms. Stevens' June 25, 2002 transfer of the Commercial

Property to Commercial Rentals.  At the time the above-described assessments were made

against Mr. Stevens, Mr. Stevens owned a ½ interest in the Commercial Property, and/or rights

to the Commercial Property.  Accordingly, the federal tax liens attach to the Commercial

Property, the United States is entitled to have its tax liens foreclosed, have the Commercial

Property sold, and have Mr. Stevens' interest in the proceeds from the sale applied to Mr.

Stevens' outstanding tax liabilities.

<div align="center">

### COUNT V

(Foreclose Federal Tax Liens on the 117 Barbarosa Property)

</div>

45.     The United States incorporates by reference the allegations contained in

paragraphs 1 through 44 of this Complaint as if fully and separately restated herein.

46.     On or around January 24, 2002, Mr. Stevens created Little Falls by filing Articles

of Organizations for a Florida LLC with the Florida Secretary of State.  Mr. Stevens was the sole

member and manager of Little Falls.

47.     Prior to June 25, 2002, the 117 Barbarosa Property was owned by Ms. Stevens.

48.     On June 25, 2002, Ms. Stevens conveyed her interest in the 117 Barbarosa

Property to Mr. Stevens' Little Falls via quitclaim deed.

49.     On June 15, 2006, approximately 5 months after the United States filed its first

Notices of Federal Tax Liens against Mr. Stevens, Mr. Stevens' conveyed the 117 Barbarosa

Property to 117 Residential, another purported entity of which Mr. Stevens is an owner/manager.

50.     However, because Mr. Stevens was the only owner and manager of Little Falls

from January 24, 2002 through its voluntary dissolution on June 15, 2006, pursuant to 26 U.S.C.

§§ 6321 and 6322 and Florida law, liens for the unpaid federal tax liabilities described in

<div align="center">

14

</div>

paragraphs 18 and 19 arose on the dates of the assessments in favor of the United States and attached to Little Falls' property, and rights to property, specifically, the 117 Barbarosa Property.

51.    For the tax assessments made against Mr. Stevens from April 14, 2003 through June 15, 2006, Mr. Stevens unilaterally owned the 117 Barbarosa Property, and/or rights to the 117 Barbarosa Property, as the only member and manager of Little Falls. Accordingly, the federal tax liens attached and continue to encumber the 117 Barbarosa Property. Thus, the United States is entitled to have its tax liens foreclosed, have the 117 Barbarosa Property sold, and have the proceeds from the sale applied to Mr. Stevens' outstanding tax liabilities.

## COUNT VI

### (Foreclose Federal Tax Liens on the 127 Barbarosa Property)

52.    The United States incorporates by reference the allegations contained in paragraphs 1 through 51 of this Complaint as if fully and separately restated herein.

53.    Prior to June 25, 2002, the 127 Barbarosa Property was owned by Ms. Stevens.

54.    On June 25, 2002, Ms. Stevens conveyed her interest in the 127 Barbarosa Property to Mr. Stevens' Little Falls via quitclaim deed.

55.    On June 15, 2006, approximately 5 months after the United States filed its first Notices of Federal Tax Liens against Mr. Stevens, Mr. Stevens' conveyed the 127 Barbarosa Property to 127 Residential, another purported entity that Mr. Stevens owns.

56.    However, because Mr. Stevens was the only owner and manager of Little Falls from January 24, 2002 through its voluntary dissolution on June 15, 2006, pursuant to 26 U.S.C. §§ 6321 and 6322 and Florida law, liens for the unpaid federal tax liabilities described in paragraphs 18 and 19 arose on the dates of the assessments in favor of the United States and attached to Little Falls' property, and rights to property, specifically, the 127 Barbarosa Property.

15

57.    For the tax assessments made against Mr. Stevens from April 14, 2003 through June 15, 2006, Mr. Stevens unilaterally owned the 127 Barbarosa Property, and/or rights to the 127 Barbarosa Property, as the only member and manager of Little Falls. Accordingly, the federal tax liens attached and continue to encumber the 127 Barbarosa Property. Thus, the United States is entitled to have its tax liens foreclose, have the 127 Barbarosa Property sold, and have the proceeds from the sale applied to Mr. Stevens' outstanding tax liabilities.

WHEREFORE, the Plaintiff, United States of America, prays for the following relief:

A.    That this Court enter judgment in favor of the United States, and against Charles T. Stevens, for his unpaid federal income tax liabilities for tax years 1998 through 2006, and 2009, in the amount of $817,316.75, as of April 8, 2013, plus statutory additions and interest from the date of assessment as allow by law.

B.    That this Court order, adjudge and decree that the federal tax liens of the United States of America attach to the Subject Properties described in this Complaint, that the tax liens be foreclosed, that the property be sold according to law, free and clear of the claims of the parties herein, and that the proceeds of sale be distributed in accordance with the determination of this Court with respect to the priorities of the claims of the parties herein.

C.    That the proceeds attributable to Mr. Stevens from the sales of the Subject Properties be applied towards Mr. Stevens' unpaid federal tax liabilities, as set forth more fully in this Complaint.

16

D.     That the United States of America be granted its costs incurred in this action.

E.     That this Court grant such other and further relief as it deems just and proper.

Dated: April 10, 2013

Respectfully submitted,

KATHRYN KENEALLY
Assistant Attorney General
Tax Division

By: _____
ALEXANDER J. MERTON
Alexander.J.Merton@usdoj.gov
U.S. Department of Justice
Trial Attorney, Tax Division
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0563
Facsimile: (202) 514-9868

Of Counsel:

ROBERT E. O'NEILL
United States Attorney

17

9804436.1

Attachment 28 - page 17 of 17

::ODMA/MHODMA/TAX-DMS;DC;9581020;1 - show_temp.pl        https://ecf.ncwd.uscourts.gov/cgi-bin/show_temp.pl?file=20147...

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| JAMES E. MACALPINE | ) | |
| | ) | |
| Defendant. | ) | |

<u>COMPLAINT</u>

PLAINTIFF, the United States of America, complains of defendant as follows:

1. This is a civil action in which the United States seeks a judgment against defendant James E. MacAlpine for income taxes for his 1999, 2000, 2002, 2003, 2004, 2005 and 2006 tax years.

2. The Chief Counsel for the Internal Revenue Service (IRS), a delegate of the Secretary of the Treasury, has authorized and requested this action, and the action is brought at the direction of the Attorney General of the United States pursuant to 26 U.S.C. §§ 7401 and 7402(a).

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402.

4. Venue is proper in this Court by virtue of 28 U.S.C. § 1396.

5. Plaintiff, the United States of America, is the sovereign body politic.

6. Defendant James E. MacAlpine resides within the jurisdiction of this Court.

- 2 -

7.  James E. MacAlpine is liable for federal income taxes with respect to his 1999,

2000, 2002, 2003, 2004, 2005 and 2006 tax years.  The IRS assessed these taxes on the

following dates, and the following amounts, including penalties and interest, were due

as of October 1, 2012:

| Tax Year | Assessment Date | Amount Due |
|----------|-----------------|------------|
| 1999 | 12/24/01 | $103,123.33 |
| 2000 | 12/31/01 | 105,996.02 |
| 2002 | 12/08/03 | 144,535.94 |
| 2003 | 12/06/04 | 163,609.98 |
| 2004 | 11/21/05 | 236,777.54 |
| 2005 | 3/05/07 | 403,677.81 |
| 2006 | 7/16/07 | 756,278.30 |

8.  The IRS gave Mr. MacAlpine notice and demand for payment of the

assessments set forth in paragraph 7 on the same dates that it assessed these liabilities

against him.

9.  Although the IRS gave Mr. MacAlpine notice and demand for payment of the

assessments for the tax periods set forth in paragraph 7, he has neglected or refused to

pay over in full the amounts assessed.   As a result, as of October 1, 2012, a total sum of

$1,913,999.52 remained due and owing to the United States with respect to these tax

years.  Statutory interest continues to accrue on this amount.

WHEREFORE it is prayed that this Court:

A.  Determine and adjudge that defendant James E. MacAlpine is indebted for

federal income tax, penalties, and interest liabilities with respect to his 1999, 2000, 2002,

::ODMA/MHODMA/TAX-DMS;DC;9581020;1 - show_temp.pl          https://ecf.ncwd.uscourts.gov/cgi-bin/show_temp.pl?file=20147...

- 3 -

2003, 2004, 2005, and 2006 tax years in the total amount of $1,913,999.52 plus statutory

interest from October 1, 2012;

    B.  Grant the United States its costs and attorney's fees incurred in the

commencement and prosecution of this action; and

    C. Grant such other and further relief as deemed just and proper.

Date: February 28, 2013.

                ANNE TOMPKINS
                United States Attorney

                KATHRYN KENEALLY
                Assistant Attorney General
                Tax Division

    By:  /s/ Lawrence P. Blaskopf
                LAWRENCE P. BLASKOPF
                Trial Attorney, Tax Division
                U.S. Department of Justice
                P. O. Box 227
                Ben Franklin Station
                Washington, D. C. 20044
                Tel. No. (202) 514-9642
                Fax: (202) 514-6866
                Lawrence.P.Blaskopf@usdoj.gov